UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| METUCHEN CENTER, INC. | : |
| | : |
| | : Civil Action |
| | : |
| | : No.3:20-cv-12584-FLW-TJB |
| | : |
| Plaintiffs, | : |
| vs. | : |
| | : |
| | : |
| LIBERTY MUTUAL INSURANCE | : |
| COMPANY, WEST AMERICAN | : |
| INSURANCE COMPANY, Et Als. | : |
| | : |
| | : |
| | : |
| Defendants. | : |

---

**PLAINTIFF'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

---

To:   Rachel R. Hager, Esq.
      FINAZZO COSSOLINI O'LEARY
      MEOLA & HAGER, LLC
      67 East Park Place, Suite 901
      Morristown, New Jersey 07960
      Tel: 973-343-4960
      Fax: 973-343-4970
      Attorney for Defendant

**PLEASE TAKE NOTICE** that, on January 4, 2021, at nine o'clock in the

forenoon, or as soon thereafter as undersigned counsel may be heard, the plaintiff shall

apply to the United States District Court for the District of New Jersey (Trenton) for an Order granting summary judgment in favor of the plaintiff and against the defendant in the above-captioned matter. In support of its Motion, the plaintiff shall rely on the supporting Memorandum of Law, Statement of Undisputed Material Facts, and Certification of Services, all of which are being filed herewith and incorporated herein by reference. A proposed form of Order is enclosed.

Oral argument is requested.

/s/ *Michael J. Deem*
MICHAEL J. DEEM, Esq.
R.C. SHEA & ASSOCIATES
**Counsellors At Law, P.C.**
244 Main Street – PO Box 2627
Toms River, New Jersey 08754-2627
Tel:  (732) 505-1212
Fax: (732) 505-1360
Attorney Id. # 020391998
Attorney for Plaintiff
File Number:     134473
Mdeem@rcshea.com

Dated: December 7, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants. I also caused to be sent by United States Mail, first class postage prepaid, a true and correct courtesy copy of the foregoing to the Chambers of the Honorable Freda L. Wolfson, United States District Court, District of New Jersey, Clarkson S. Fischer Federal Bldg. & U.S. Courthouse, 402 E. State Street, Trenton, New Jersey 08608.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

METUCHEN CENTER, INC.

                                          Plaintiffs,

             vs.

LIBERTY MUTUAL INSURANCE
COMPANY, WEST AMERICAN
INSURANCE COMPANY, Et Als.

                                    Defendants.

:
:
:  Civil Action
:
:  No.3:20-cv-12584-FLW-TJB
:
:
:
:
:
:
:
:
:
:
:
:
:

---

**ORDER GRANTING PLAINTIFF SUMMARY JUDGMENT**

---

      THIS MATTER having been opened to the Court by Michael J. Deem, Esq.,

of the firm of R. C. Shea & Associates, P.C., attorneys for Plaintiff, and the Court having

considered the moving papers and exhibits attached thereto and defendants' opposition,

for good cause having been shown,

      IT IS on this _____ day of _____, 2021

      **ORDERED**, that summary judgment is hereby granted to the plaintiff, and it is

further

**ORDERED** that no policy exclusion applies to bar or limit coverage for plaintiff's business interruption claim under policy BZW(20) 58 89 98 09; and it is further

**ORDERED** that the mandatory closure of the plaintiff's non-essential business constitutes direct physical loss of or damage to covered property; and it is further

**ORDERED** that a copy of this Order shall be deemed served upon all counsel of record upon being e-filed by the court.

_____

_____ Opposed

_____ Unopposed

Michael J. Deem, Esq.
R.C. SHEA & ASSOCIATES
244 Main Street – PO Box 2627
Toms River, New Jersey 08754-2627
Tel:  (732) 505-1212
Fax: (732) 505-1360
Attorney Id. # 020391998
Attorney for Plaintiff
Mdeem@rcshea.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| METUCHEN CENTER, INC. | Civil Action |
| | No.3:20-cv-12584-FLW-TJB |
| Plaintiffs, | |
| vs. | |
| LIBERTY MUTUAL INSURANCE COMPANY, WEST AMERICAN INSURANCE COMPANY, Et Als. | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

     I.    The defendant's virus exclusion, as written, is ambiguous because
          a policy holder cannot make out the boundaries of coverage. . . . . . . . . .   2

     II.   A fair and reasonable reading of the West American
          Insurance Company virus exclusion necessarily requires
          that the virus first reach the insured's property in order
          for the exclusion to bar a claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

     III.  The mandatory closure of the plaintiff's business constituted
          a "direct physical loss of or damage to its covered property." . . . . . . . .   14

     IV.  In the event the defendant takes the position that
           "direct physical loss" and "direct physical damage"
          mean the same thing then this honorable court is urged
          to not read an insurance policy in such a way that it
          renders another provision meaningless. . . . . . . . . . . . . . . . . . . . . . . . . .   15

     V.   The terms "direct physical loss of" or "damage to", as
          used in the West American insurance policy, are ambiguous
          because they have more than one legitimate meaning,
          therefore this honorable court is urged to adopt a meaning
          that is most favorable to the insured as required by law  . . . . . . . . . . . .   18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

# TABLE OF AUTHORITIES

**Cases**:

Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Ass'n.
  215 Kan. 937, 948 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Amerada Hess Corp.. v. Zurich Ins. *Co.*
  29 Fed. Appx. 800, 805 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Anderson v. Liberty Lobby, Inc.
  477 U.S. 242, 247-48 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Argent v. Brady,
  386 N.J. Super. 343 (App. Div. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 13

Atl. Mut. Ins. Co. v. Palisades Safety & Insurance Ass'n.
  364 N.J. Super. 599, 604 (App. Div. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Black Car Assistance Corp. v. New Jersey,
  351 F. Supp. 2d 284, 286 (D.N.J. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Celotex Corp. v. Catrett,
  477 U.S. 317, 322-23 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Danzeisen v. Selective Ins. Co. of America,
  298 N.J. Super. 383, 388 (App. Div. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 19

Doto v. Russo,
  140 N.J. 544, 557 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 19

Flomerfelt v. Cardiello,
  2020 N.J. 432, 447 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Germann v. Matriss,
  55 N.J. 193, 220 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Gibson v. Callaghan,
  158 N.J. 662, 670 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 19

Gil v. Clara Maas Medical Center,
  450 N.J. Super. 368, 386 (App. Div. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

Hardy v. Abdul-Matin,
    298 N.J. 95, 103-04 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Homesite Ins. v. Hindman,
    413 N.J. Super. 41, 47 (App. Div. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Manpower, Inc. v. Ins. Co. of the State of Penn.
    2009 WL 3738099, at 5 (E.D. Wis. Nov. 3, 2009) . . . . . . . . . . . . . . . . . . . . . 16

Minkov v. Reliance Ins. Co. of Philadelphia,
    54 N.J. Super. 509, 517-18 (App. Div. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . 16

National Union Fire Ins. Co. v. Transp. Ins. Co.
    336 N.J. Super. 437, 443 (App. Div. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

New Castle Co., Del. v. National Union Fire Ins. Co. of Pittsburgh, Pa.
    174 F.3d 338, 347 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Pennbarr Corp. v. Ins. Co. of North Am.
    976 F.2d. 145, 154 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Podobnik v. U.S. Postal Serv.
    409 F.3d 584, 594 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

St. Paul Mercury Ins. Co. v. FDIC,
    774 F.3d 702, 709 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

S.T. Hudson Eng'rs, Inc. v. Pa. Nat'l Mut. Cas. Co.
    388 N.J. Super. 592, 603-604 (App. Div. 2006) . . . . . . . . . . . . . . . . . . . . . . . 17

Stroehmann v. Mutual Life Ins. of N.Y.
    300 U.S. 435, 439 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Studio 417, Inc., v. Cincinnati Ins. Co.
    2020 WL 4692385, at 5 (W.D.Mo. Aug. 12, 2020) . . . . . . . . . . . . . . . . . . . . . 16

Victory Peach Group, Inc. Greater N.Y. Mutual Ins. Co.
    310 N.J. Super. 82, 87-88 (App. Div. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 19

Villa v. Short,
    195 N.J. 15, 23 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co.
   406 N.J. Super. 524, 541-542 (App. Div. 2009) . . . . . . . . . . . . . . . . . . 14, 15, 17, 21

Weedo v. Stone-E-Brick,
   81 N.J. 233, 247 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 13, 19

**Court Rules:**

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1


**Miscellaneous:**

*Blacks Law Dictionary*, 5th Ed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Merriam-Webster Dictionary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (citation omitted). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## POINT I

**THE DEFENDANT'S VIRUS EXCLUSION, AS WRITTEN, IS AMBIGUOUS BECAUSE A POLICY HOLDER CANNOT MAKE OUT THE BOUNDARIES OF COVERAGE.**

_____

When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subject to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'" Danzeisen v. Selective Ins. Co. of America, 298 N.J. Super. 383, 388 (App. Div. 1997). Additionally, when the court is called upon to interpret an ambiguous phrase in an insurance contract it should "consider whether more precise language by the insurer, had such language been included in the policy, would have put the matter beyond 'reasonable question.'" Gibson v. Callaghan, 158 N.J. 662, 670 (1999) (quoting Doto v. Russo, 140 N.J. 544, 557 (1995)).

In the case at bar, the plaintiff purchased an All Risk Policy which is a special type of insurance covering all fortuitous losses in the absence of fraud or other intentional misconduct of the insured, unless a specific provision in the insurance policy expressly excludes or limits the loss from coverage. Victory Peach Group, Inc. Greater N.Y. Mutual Ins. Co., 310 N.J. Super. 82, 87-88 (App. Div. 1998). (Ex. "A") In other words, an All Risk Policy insures all risks unless specifically excluded or limited. However, plaintiff maintains that the West American policy contains ambiguity.  Ambiguity, in the

context of an insurance policy interpretation, means that a term or contract may have more than one legitimate meaning. In <u>Weedo v. Stone-E-Brick,</u> 81 N.J. 233, 247 (1979) the court defined an ambiguity as follows, "[w]e conceive a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policy holder cannot make out the boundaries of coverage." The following relevant policy language is at issue in this case:

**SECTION I – PROPERTY**

**A.      Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Ex. "A", WAP 52)  "Covered Cause of Loss" means "direct physical loss unless the loss is excluded or limited under Section I- Property."  (Ex. "A", WAP 53)

**B. Exclusions**

**1.**   We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

. . . .

(Ex. "A", WAP 071)

**j. Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in Paragraph (1) does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion i.

**(3)** With respect to any loss or damage subject to the exclusion in Paragraph (1), such exclusion supersedes any exclusion relating to "pollutants".

(Ex. "A", WAP 073)

Defendant West American contends, as set forth in its claim denial letter, that its virus exclusion bars Plaintiff's claims because, "[t]he closing of the Athletic Apparel store was not due to physical loss or damage. The decision to suspend operations was to limit the spread of Coronavirus (COVID-19). The policy specifically excludes losses caused by or resulting from a virus and from contamination." (Exhibit "E") Such a broad exclusion does not apply to the instant situation but even if it did, the cause of Plaintiff's loss were the Closure Orders, State of Emergency, Public Health Emergency, and constructive eviction, not the coronavirus.

Insurance policy exclusions are to be strictly construed, and because insurers control the language, size of print, and placement of their obligations and coverage limitations, courts require exclusions be made in an unequivocal manner, so prominently placed and so clearly phrased that "he who runs can read." Argent v. Brady, 386 N.J. Super. 343 (App. Div. 2006) (citing Weedo v. Stone-E-Brick, Inc., 155 N.J. Super. 474, 485 (App. Div. 1997). The ambiguity of the defendant's virus exclusion is demonstrated below. The virus exclusion states the following:

**B. Exclusions**

**1.** We will not pay for **loss** or **damage** caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**. These exclusions apply whether or not the **loss** event results in widespread damage or affects a substantial area.

(Ex. "A", WAP 071)  In one breath the insurer says it will not pay for "loss" or "damage",

which on its face seems distinguishable from "physical loss" or "physical damage".  This

is significant because the opening paragraph of the "Businessowners Coverage Form"  (Ex.

"A", WAP 051) states that

> [v]arious provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered. Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the company providing this insurance.
>
> • • • •
>
> *Other words and phrases that appear in quotation marks have special meaning.* Refer to Paragraph H. Property Definitions. [emphasis added]

(Ex. "A", WAP 052)

Nowhere in the policy are the words "loss" or "damage" defined because they were never

assigned a special meaning.  Likewise nowhere in the policy are the terms "direct physical

loss" or "direct physical damage" defined, again because these terms were never assigned

a special meaning. This is disturbing.   The lack of clarify creates confusion because

throughout the policy these words and terms are used separately, independently, and

interchangeably yet they are never defined, anywhere in the policy. "Other words and phrases that appear in quotation marks have special meaning", yet the defendant's deliberate failure to define these words and terms allow it to manipulate their meanings to fit its narrative.  These undefined terms happen to be the pivotal issue in many, if not all, of these business interruption claims where the insurer alleges that its insured did not suffer a "direct physical loss of or damage to Covered Property." (Ex. "A", WAP 052)

The virus exclusion is a prime example. The exclusion section of the policy opens up with the following paragraph:

> **1.**   We will not pay for **loss** or **damage** caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**. These exclusions apply whether or not the **loss** event results in widespread damage or affects a substantial area.

As the reader can clearly see, the insurer has attempted to exclude "loss or damage caused directly or indirectly by any of the following", but this language does not exclude "direct physical loss of or damage to Covered Property". (Ex. "A', WAP 052) The insurer then went a step further and added what is known as the anti-concurrent causation clause.  This clause states that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (emphasis added) According to the insurer, in order for this anti concurrent causation clause to apply the insured must have sustained only a  "loss", but apparently not "damage" since "damage" was written-out of this anti concurrent causation clause exclusion.

6

In order to understand what the anti-concurrent causation clause means and how it applies to insurance claims, one needs to first realize that "concurrent causation" is a method of handling losses or damages that occur from more than one cause at the same time.  For example, if a windstorm and flood hit a home at the same time and cause damage, for example, then this is concurrent causation: the two events damaged the property at roughly the same time. In the insurance industry, concurrent causation occurs when a property experiences a loss from two separate causes. Issues arise when one cause is covered by the policy and the other is not. A policy may cover windstorm damage but not flood damage, for example. Depending on the policy language, damages from both causes are likely to be covered if the insurance policy has a concurrent causation clause. With a concurrent causation clause, the insurance company will be required to pay damages to the policyholder – even though one type of loss was excluded.  However, damages will not be covered, if the insured has an anti-concurrent causation clause. Under anti-concurrent causation, the insurance company would not be required to pay any damages – even though one type of loss was covered.

In the case at bar, the defendant has not demonstrated that any virus was on the insured property or that any virus caused a loss. In fact, the complaint alleged "direct physical damage". There is no evidence that the COVID-19 Virus was in the area of the insured premises or even at the insured premises at the same time as the closure order went into effect.  The excluded risks as proffered by the defendant must have produced a simultaneous loss in order for this exclusion to apply.  If they did not occur to produce a simultaneous loss then the anti-concurrent causation clause does not bar plaintiff's claim.

In addition, in first party coverage cases such as the one in the case at bar, "[i]n situations in which multiple events, one of which is covered, occur sequentially in a chain of causation to produce a loss, [New Jersey courts] have adopted the approach known as "Appleman's rule," pursuant to which the loss is covered if a covered cause of loss starts or ends the sequence of events leading to the loss. <u>Flomerfelt v. Cardiello</u>, 2020 N.J. 432, 447 (2010).  This rule applies to the case at bar.  Plaintiff has filed a first party claim for coverage under its policy and defendant has denied the plaintiff's claim.  The defendant's basis for its denial arises from the "virus exclusion" and the policy's "anti-concurrent cause of loss" clause.   However this clause does not apply because, pursuant to "Appleman's rule' a covered cause of loss ended the sequence of events leading to the loss. More specifically, the defendant stated in its denial letter to the plaintiff that, "We have determined that your Athletic apparel business was fully shutdown and has suffered loss of income due to government recommendations or restrictions on the travel of people as a preventative measure to slow the spread of COVID-19." (Ex. "E")  This "preventive measure' is what started the ball rolling.  A virus was never on or around the insured property.  The closure orders resulted in a constructive eviction which is a covered cause of loss under the subject policy because it is not specifically excluded. The "preventive measure' preceded the "constructive eviction" which ended the sequence of events leading to the loss.

For all of the foregoing reasons, the plaintiff's motion for summary judgment should be granted.

## POINT II

### A FAIR AND REASONABLE READING OF THE WEST AMERICAN INSURANCE COMPANY VIRUS EXCLUSION NECESSARILY REQUIRES THAT THE VIRUS FIRST REACH THE INSURED'S PROPERTY IN ORDER FOR THE EXCLUSION TO BAR A CLAIM

_____

In the case at bar the plaintiff's property was not contaminated by the coronavirus. Plaintiff's claimed loss is not for decontaminating its premises as a result of a coronavirus infestation. Plaintiff did not close as a result of coronavirus contamination at the premises. No one became sick with Covid-19 as a result of exposure at plaintiff's premises.

The aforementioned is significant because the defendant's virus exclusion does not say that coverage is excluded while trying to prevent the spread of a virus and it does not say that coverage is excluded when a virus is not on the insured premises. Such language is nowhere to be found in the virus exclusion, but it does exist elsewhere in the policy as will be discussed below. In fact if we were to circle-back to the defendant's denial letter it states that

> The policy provides Business Income coverage when there is a suspension of your operations at the described premises and results from a covered cause of loss. The Civil Authority Additional Coverage is only applicable when access to the described premises is prohibited when there is direct physical damage to other property, not on the described premises, from a covered cause of loss. The closing of the Athletic Apparel store was not due to physical loss or damage. The decision to suspend operations was to limit the spread of Coronavirus (COVID-19). The policy specifically excludes losses caused by or resulting from a virus and from contamination. [emphasis added]

(Statement of Facts ¶ 16)

The policy's Civil Authority Coverage is rather specific and is triggered when there is direct physical damage to other property, <u>not on the described premises</u>. (Ex. "A", WAP 061)   Under the policy's "Additional Coverage" section, sub-paragraph "**f. Business Income**" states that

> (a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of our "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss. *With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.* [emphasis s added]

(Ex. "A", WAP 058)

In the case at bar, the defendant's virus exclusion does not say it applies when there is a virus not on the described premises or elsewhere other than the insured premises. Likewise the virus exclusion does not say that is applied while trying to prevent the spread of a virus. The defendant's virus exclusion, as written, states in relevant part as follows:

> **B.    Exclusions**
> 1.  We will not pay for loss or damage caused **directly or indirectly** by any of the following.  Such loss or damage is excluded regardless of any other causes or event that contributes concurrently or in any sequence of the loss. [emphasis added]

(Ex. "A", WAP 071)

. . . .

**j. Virus Or Bacteria**

>    **(1)** Any virus, bacterium or other microorganism that induces
>    or is capable of inducing physical distress, illness or disease.

(Ex. "A", WAP 073)

The policy's virus exclusion is ambiguous because it does not define the geographic scope of the exclusion unlike Government Action exclusion and the Ordinance or Law exclusion which contain a geographic scope. Although the virus exclusion applies to "Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" it does not define at what point it applies, where it applies, or where is does not apply? Does the virus exclusion apply only within the insured premises? Does it apply within 100 feet of the insured premises or perhaps a 1,000 feet of the insured premises? Clearly the insurer knew when it wrote this policy that there was a distinction between excluding a risk that occurs on the insured premises and a risk that does not occur on the insured premises. Yet, in the case at bar the defendant chose not to include such defining language in its virus exclusion yet it chose to use such defining language in other exclusions.

This distinction leads a reasonable person to believe two things. First that the virus must reach the insured premises in order for the exclusion to apply. Second, the virus exclusion does not apply to an attempt to control or prevent the spread of a virus. We know this to be true by reading the defendant's Civil Authority Coverage discussed above and the defendant's Government Action exclusion which applies to prevent the spread of a fire. The Government Action exclusion states, in relevant part, the following:

### c.      Government Action

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to *prevent its spread*. . . . [emphasis added]

(Ex. "A", WAP 072)

The Government Action exclusion applies when a governmental authority is trying to prevent the spread of the risk, and in particular a fire. This Government Action exclusion is adequately defined to inform the insured of the scope of the exclusion and more importantly that the exclusion will apply before the risk reaches the insured's property. However, there is not a single exclusion in the subject policy that precludes coverage when a governmental entity tries to prevent the spread of a virus.  Similarly, the Ordinance or Law exclusion "applies whether the loss results from: (a) an ordinance or law that is enforced even if the property has not been damaged." (Ex. "A", WAP 071)

In the case at bar, we clearly see the insurer's intent to cover certain property beyond the described premises but up to only 100 feet.  Had the insurer defendant intended to exclude a virus that had not reached the insured's premises then it was certainly capable of delineating a precise geographic area, such as was done within the "f. Business Income" coverage or the Government Action exclusion or the Ordinance or Law exclusion.   Within the subject policy there seems to be a theme whereby the policy's various coverages are worded more precisely than many of their exclusions which is a problem.  As stated earlier,

when members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subject to technical encumbrances or to hidden pitfalls, and their policies should be construed liberally in their favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'" Danzeisen v. Selective Ins. Co. of America, 298 N.J. Super. 383, 388 (App. Div. 1997). Additionally, when the court is called upon to interpret an ambiguous phrase in an insurance contract it should "consider whether more precise language by the insurer, had such language been included in the policy, would have put the matter beyond 'reasonable question.'" Gibson v. Callaghan, 158 N.J. 662, 670 (1999) (quoting Doto v. Russo, 140 N.J. 544, 557 (1995)).   Insurance policy exclusions are to be strictly construed, and because insurers control the language, size of print, and placement of their obligations and coverage limitations, courts require exclusions be made in an unequivocal manner, so prominently placed and so clearly phrased that "he who runs can read." Argent v. Brady, 386 N.J. Super. 343 (App. Div. 2006) (citing Weedo v. Stone-E-Brick, Inc., 155 N.J. Super. 474, 485 (App. Div. 1997).

Therefore, given the construction rule that exclusions are to be narrowly construed, and the wording of the exclusion which is directed at losses resulting from viral contamination, defendant's virus exclusion does not apply to Plaintiff's loss of use. In light of the foregoing, plaintiff respectfully urges this Honorable Court to grant summary judgment in its favor.

## POINT III

### THE MANDATORY CLOSURE OF THE PLAINTIFF'S BUSINESS CONSTITUTED A "DIRECT PHYSICAL LOSS OF OR DAMAGE TO ITS COVERED PROPERTY."

On March 9, 2020, Governor Philip D. Murphy executed Executive Order 103 which declared a State of Emergency and a Public Health Emergency throughout New Jersey. (Ex."B") Thereafter, on March 21, 2020, with the execution of Executive Order 107, Governor Philip D. Murphy closed all New Jersey non-essential businesses indefinitely. (Ex. "C") Plaintiff, MCA, as a sporting good apparel company was deemed a non-essential business and ordered closed by the Governor effective March 21, 2020. (Ex. "C")

The closure of MCI caused it to lose business income because MCI employees were not permitted to access or use of the insured premises. The mandatory closure of the plaintiff's non-essential business constitutes a "physical loss" and/or "physical damage" as a reasonable person would understand these terms as used within the policy since these terms are not defined within the policy. The term "physical" has been held to be ambiguous since it can mean more than material alteration or damage, therefore it was incumbent upon the defendant(s) to clearly and specifically rule out coverage in the circumstances where it was not to be provided, something which did not occur in the case at bar. Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co., 406 N.J. Super. 524, 541-542 (App. Div. 2009). "Physical Damage" is not restricted to the physical destruction or harm to the insured property, rather it includes the loss of access, loss of use and loss of

<u>functionality</u> of the insured/ scheduled premises. <u>Wakefern Food Corp</u>, 406 N.J. Super. 543.  This is precisely the type of loss suffered by plaintiff.  Had defendant intended that its policy would not provide coverage for a State of Emergency, a Public Health Emergency, and or a Constructive Eviction then it was obligated to define its policy exclusion more clearly.  <u>Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co</u>., 406 N.J. Super. 524, 541 (App. Div. 2009)

The plaintiff's loss of use of the insured premises is precisely the type of event insured against under the subject policy.  "Physical loss" and "physical damage", although not defined in the subject policy, are clearly intended to include the physical loss of use of the insured premises.  Quite frankly, this is the only reasonable interpretation of these otherwise undefined terms. As such, summary judgment should be granted to the plaintiff.

## POINT IV

**IN THE EVENT THE DEFENDANT TAKES THE POSITION THAT "DIRECT PHYSICAL LOSS" AND "DIRECT PHYSICAL DAMAGE" MEAN THE SAME THING THEN THIS HONORABLE COURT IS URGED TO NOT READ AN INSURANCE POLICY IN SUCH A WAY THAT IT RENDERS ANOTHER PROVISION MEANINGLESS**

_____

Construction and interpretation of insurance contracts, in other words, the meaning that is given to language used in an insurance policy, is one of the most important parts of the insurance law landscape. When disputes or uncertainty arise over the meaning of words in an insurance policy, it is the court that will interpret and decide the meaning of a single word, several words, a sentence or even an entire clause or section of a policy.  <u>Atl. Mut.</u>

Ins. Co. v. Palisades Safety & Insurance Ass'n., 364 N.J. Super. 599, 604 (App. Div. 2003);

National Union Fire Iins. Co. v. Transp. Ins. Co., 336 N.J. Super. 437, 443 (App. Div.

2001)

As a starting point, West American's insurance policy covers business interruption

losses caused by "direct physical loss of or damage to" the insured's covered property.  This

Honorable court should not read an insurance policy in such a way that another provision

would be meaningless. Homesite Ins. v. Hindman, 413 N.J. Super. 41, 47 (App. Div. 2010)

(citing Hardy v. Abdul-Matin, 298 N.J. 95, 103-04 (2009)). "Or" is "used as a function

word to indicate an alternative." *Merriam-Webster Dictionary*.  The disjunctive "or"

should not be read in such a way that other words or phrases in the policy become

surplusage.  *See* Minkov v. Reliance Ins. Co. of Philadelphia, 54 N.J. Super. 509, 517-18

(App. Div. 1959).  Properly read, "physical loss" is something different than "physical

damage" when they are joined by the disjunctive "or".

> As noted, the policy covered physical losses in addition to physical
> damage, and if a physical loss could not occur without physical damage,
> then the policy would contain surplus language. However, a contract must,
> where possible, be interpreted so as to give reasonable meaning to each
> provision without rendering any portion superfluous. Thus, "direct
> physical loss" must mean something other than "direct physical damage."
> Indeed, if "direct physical loss" required physical damage, the policy
> would not cover theft, since one can steal property without physically
> damaging it.

Manpower, Inc. v. Ins. Co. of the State of Penn., 2009 WL 3738099, at 5 (E.D.

Wis. Nov. 3, 2009); *see also* Studio 417, Inc., v. Cincinnati Ins. Co., 2020 WL 4692385,

at 5 (W.D.Mo. Aug. 12, 2020) ("Defendant conflates 'loss' and 'damage' in support of

its argument that the Policies require a tangible, physical alteration. However the Court

must give meaning to both terms.")

In interpreting a contract, the meaning of a word may be indicated by and controlled by those with which they are associated. Gil v. Clara Maas Medical Center, 450 N.J. Super. 368, 386 (App. Div. 2017) (quoting Germann v. Matriss, 55 N.J. 193, 220 (1970)). "As particularly relevant in the insurance world—where scriveners often use series of similar words and phrases as the means of reaching or ensuring a particular goal—'words of a feather flock together.'" Id.

> Generally, the insured has the burden "to bring the claim within the basic terms of the policy." Where language of a policy supports two reasonable meanings, one favorable to the insured the interpretation supporting coverage will be applied. Where an insurer claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing that claim. Coverage clauses are interpreted liberally, whereas exclusions are strictly construed. Further, as with any contract, construing insurance policies requires a broad search "for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies" Finally, insurance contracts are to be interpreted so as to effectuate the reasonable expectations of the insured.

Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co., 406 N.J. Super. 524, 538-539 (App. Div. 2009), (quoting S.T. Hudson Eng'rs, Inc. v. Pa. Nat'l Mut. Cas. Co., 388 N.J. Super. 592, 603-604 (App. Div. 2006)).

Take the defendant's virus exclusion, as written, which states in relevant part.

### j. Virus Or Bacteria

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Ex. "A', WAP 073)

This exclusion purposefully included the word "or" as opposed to "and" to make it a point that any one of the three elements (virus, bacterium or other microorganism) may cause physical distress as opposed to the inclusion of the word "and" which would mean that all three elements must be the cause of the physical distress, illness <u>and</u> disease. In another example, the policy's the Civil Authority Coverage is rather specific and is triggered when there is <u>direct physical damage</u> to other property, not on the described premises. The Civil Authority Coverage does not mention the word "loss" to other property. (Ex. "A", WAP 061)

Clearly, the use of the disjunctive word "or" was purposeful and it carries a very significant and distinct meaning and application. The words "loss" or "damage" carry different meanings because they are separated by the word "or" as opposed to "and", so for the reasons set forth above, the plaintiff asks this Honorable Court to grant summary judgment in its favor.

## POINT V

**THE TERMS "DIRECT PHYSICAL LOSS OF" OR "DAMAGE TO", AS USED IN THE WEST AMERICAN INSURANCE POLICY, ARE AMBIGUOUS BECAUSE THEY HAVE MORE THAN ONE LEGITIMATE MEANING, THEREFORE; THIS HONORABLE COURT IS EMPOWERED TO ADOPT A MEANING THAT IS MOST FAVORABLE TO THE INSURED AS REQUIRED BY LAW.**

Plaintiff submits, for the reasons set forth above, that it suffered "direct physical loss" when its business was curtailed as a result of Governor Murphy's Executive Orders. The more persuasive authority supports this result. However, if this Honorable Court is

undecided as to whether it should follow the authorities cited by Plaintiff or the authorities cited by defendant concerning whether the Plaintiff suffered a "direct physical loss" then the Plaintiff's loss should still be covered because "direct physical loss or damage" as used in the defendant's policy is ambiguous.

When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subject to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'" Danzeisen v. Selective Ins. Co. of America, 298 N.J. Super. 383, 388 (App. Div. 1997). Additionally, when the court is called upon to interpret an ambiguous phrase in an insurance contract it should "consider whether more precise language by the insurer, had such language been included in the policy, would have put the matter beyond 'reasonable question.'" Gibson v. Callaghan, 158 N.J. 662, 670 (1999) (quoting Doto v. Russo, 140 N.J. 544, 557 (1995)).

In the case at bar, the plaintiff purchased an All Risk Policy which is a special type of insurance covering all fortuitous losses in the absence of fraud or other intentional misconduct of the insured, unless a specific provision in the insurance policy expressly excludes or limits the loss from coverage. Victory Peach Group, Inc. Greater N.Y. Mutual Ins. Co., 310 N.J. Super. 82, 87-88 (App. Div. 1998). In other words, an All Risk Policy insures all risks unless specifically excluded or limited. Plaintiff maintains that the policy contains ambiguity. Ambiguity, in the context of an insurance policy interpretation, means that a term or contract may have more than one legitimate meaning. In Weedo v. Stone-E-

Brick, 81 N.J. 233, 247 (1979) the court defined an ambiguity as follows: "We conceive a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policy holder cannot make out the boundaries of coverage." The following relevant policy language is at issue in this case:

> **A.    Coverage**
>
> We will pay for direct physical loss of **or** damage to the Covered Property at the premises described in the Declarations by or resulting from any Covered Cause of Loss. [emphasis added]

(Ex. "A", WAP 052)

> **3.    Covered Cause of Loss**
>
> Direct physical loss unless the loss is excluded or limited . . .

(Ex. "A", WAP 053)

> **B.    Exclusions**
> 1.   We will not pay for loss or damage caused **directly or indirectly** by any of the following.  Such loss or damage is excluded regardless of any other causes or event that contributes concurrently or in any sequence of the loss. [emphasis added]

(Ex. "A", WAP 071)

These three sections, when read together, are not in accord with one another therefore they are ambiguous. First, under "A. Coverage", the policy states that "We will pay for <u>direct physical loss of or damage to</u> the Covered Property . . . resulting from any Covered Cause of Loss." [emphasis added] (Ex. "A", WAP 052)  Next, the policy states that "Covered Causes of Loss means <u>direct physical loss</u> unless the loss is excluded or

limited in this policy." [emphasis added] Id.  Conspicuously absent from "Covered Causes of Loss" is reference to "physical damage", "indirect loss", or "indirect damage." This is important because the "Exclusions" section of the policy refers, for the first time, to "losses or damage caused directly or indirectly". [emphasis added]   Not surprisingly nowhere in the policy is "physical loss" or "physical damage" defined.  However, looking outside of the policy we know two things: first the word Loss " is a generic and relative 'term'.  It signifies the act of losing or the thing lost; it is not a word of limited, hard and fast meaning and has been held synonymous with, or equivalent to,  . . . 'deprivation' . . ." (*Blacks Law Dictionary*, 5th Ed.)  Second, the term 'physically damaged' in an insurance policy is ambiguous and must be interpreted in accordance with the reasonable expectations of the insured. Wakefern Food Corp. v. Liberty Mutual Fire Insurance Co., 406 N.J. Super. 524 (App. Div. 2009). [i]   Moreover, upon reading the language in "**B. Exclusions"** the policy leads the reader to believe that "loss or damage" may include "indirect loss or damage" as opposed to only direct loss or damage, yet the policy does not define "indirect loss' or "indirect damage."   Further confusion arises when we try to reads the policy as a whole and consider the policy's the Civil Authority Coverage which rather specific and is triggered only when there is direct physical damage to other property, not on the described premises.  The Civil Authority Coverage does not mention the word "loss" to other property. (Ex. "A", WAP 061)

Both parties have cited authorities discussing whether physical loss or damage requires some physical alteration of the property in question. The fact that there are contrary authorities construing the same insurance policy language differently is a strong

indication that the language is ambiguous. <u>New Castle Co., Del. v. National Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 174 F.3d 338, 347 (3d Cir. 1999); see also, e.g., <u>Amerada Hess Corp.. v. Zurich Ins. Co.</u>, 29 Fed. Appx. 800, 805 (3d Cir. 2002) ("The very fact that HOVIC and Zurich were able to offer conflicting, yet 'compelling' interpretations establishes the essential ambiguity in this policy."); <u>Stroehmann v. Mutual Life Ins. of N.Y.</u>, 300 U.S. 435, 439 (1937) ("Examination of the words relied upon to show an exception to the incontestability clause of the policy discloses ample cause for doubt concerning their meaning. The arguments of counsel have emphasized the uncertainty. The District Court and the Circuit Court of Appeals reached different conclusions, and elsewhere there is diversity of opinion."); <u>St. Paul Mercury Ins. Co. v. FDIC</u>, 774 F.3d 702, 709 (11th Cir. 2014) ("an important indication of ambiguity in a policy is whether nearly identical or similar language has been construed differently by other courts."); <u>Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Ass'n</u>, 215 Kan. 937, 948 (1974) ("The mere fact that there is such a contrariety of judicial opinion over what constitutes 'piloting' or 'serving as a crew member' of an airplane demonstrates, we think, the inherent ambiguity of these phrases. The parties here and the parties in all those other lawsuits have each been able to make tenable arguments for construing the same language in different ways, and the courts have done the same. We certainly can't say that the language used by the insurer here 'clearly reveals its stated purpose.'").

One thing that can be said with certainty about "direct physical loss or damage" is that the various courts interpreting this language do not speak with one voice as to what those words mean. The more authoritative opinions hold that "loss" and "damage" are

different things, and that "loss" does not require a physical alteration of the insured property.  Other opinions, which plaintiffs believes were incorrectly decided, hold that "loss" and "damage" both require some physical alteration of the property.  This is not a difference of opinion created by the argument of the parties, but differences of opinion raised by judges, whose job it is to decide what language means as a matter of law. <u>If learned judges cannot agree on what these words mean, then certainly there is more than one reasonable meaning for "direct physical loss or damage", which makes the language ambiguous.</u> Since the language is ambiguous, it must be construed in favor of the insured, and thus, in favor of coverage. <u>Villa v. Short</u>, 195 N.J. 15, 23 (2008).

The purpose of business interruption insurance is to return to the insured the profits it would have earned had the casualty not occurred.  See <u>Pennbarr Corp. v. Ins. Co. of North Am.</u>, 976 F.2d. 145, 154 (3d Cir. 1992). Plaintiff's business was interrupted by the Closure Orders. It had a reasonable expectation that if its business was interrupted by fortuitous events, defendant would make it whole. That is why the Plaintiff paid its business interruption premiums. The Closure Orders are just such a fortuitous event. Under the circumstances, defendant should honor the Plaintiff's claim.

## **CONCLUSION**

Based upon the foregoing legal arguments and supporting statement of material facts, this Honorable Court is well equipped to grant the plaintiff's motion for summary judgment.

Respectfully submitted

By /s/ *Michael J. Deem*
MICHAEL J. DEEM, ESQ
R.C. SHEA & ASSOCIATES
244 Main Street – PO Box 2627
Toms River, New Jersey 08754-2627
Tel:  (732) 505-1212 Fax: (732) 505-1360
Attorney Id. # 020391998
Mdeem@rcshea.com

---

i The Wakefern court then held that "Physical Damage" is not restricted to the physical destruction or harm to the insured property, rather it includes the loss of access, loss of use and loss of functionality of the insured's scheduled premises. Wakefern Food Corp, 406 N.J. Super. at 543.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| METUCHEN CENTER, INC. : | |
| : | Civil Action |
| : | |
| : | No.3:20-cv-12584-FLW-TJB |
| : | |
| Plaintiffs, : | |
| vs. : | |
| : | |
| : | |
| LIBERTY MUTUAL INSURANCE : | |
| COMPANY, WEST AMERICAN : | |
| INSURANCE COMPANY, Et Als. : | |
| : | |
| : | |
| : | |
| Defendants. : | |

---

**CERTIFICATIOIN OF MICHAEL J. DEEM, ESQ.
IN SUPPORT OF THE  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

MICHAEL J. DEEM, ESQ., of full age, certifies as follows:

1.       I am an attorney at law of the State of New Jersey, duly licensed and

admitted to practice in the State of New Jersey and the United States District Court for

the District of New Jersey.

2.       I am an associate with the firm of R. C. Shea & Associates, P.C., attorneys

for Plaintiff.  As such I have full knowledge of the facts and circumstances surrounding

this matter as set forth below by virtue of my review of the file maintained by my office.

3.     This Certification is in support of Plaintiff's Motion for Summary Judgement.

4.      Attached hereto as Exhibit "A" is a true, complete, and accurate copy of insurance policy number BZW 58899809 and which was in effect between October 1, 2019 and October 1, 2020.

5.     Attached hereto as Exhibit "B" is a true, complete, and accurate copy of Executive Order 103 issued by Governor Philip D. Murphy.

6.     Attached hereto as Exhibit "C" is a true, complete, and accurate copy of Executive Order 107 issued by Governor Philip D. Murphy.

7.     Attached hereto as Exhibit "D" is a true, complete, and accurate copy of the filed Complaint in the case at bar.

8.     Attached hereto as Exhibit "E" is a true, complete, and accurate copy of the April 2, 2020, denial letter issued by Liberty Mutual Insurance Company.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  December 7, 2020                    R.C. SHEA & ASSOCIATES, P.C.


                                            BY:  /s/ Michael J. Deem
                                                MICHAEL J. DEEM

# EXHIBIT "A"

# AFFIDAVIT

State of Indiana

County of Hamilton

NAME OF INSURED:      METUCHEN CENTER INC

POLICY NUMBER:      BZW 58899809

POLICY DATES:      10-01-2019 TO 10-01-2020

David Hager, archivist of

West American Insurance Company   has compared the

attached copies of the insurance policy number listed above and its

endorsements with the original records of the policy of insurance and

endorsements contained in the Company's files and that the same is a

true and exact recital of all the provisions in the said original policy and

endorsements attached thereto.

David Alan Hager

David Hager
Policy Copy Archivist

July 10, 2020

**Liberty Mutual.**
**INSURANCE**

*Coverage is Provided In:*
West American Insurance Company - a stock company

175 Berkeley St., Boston, MA 02116

**Policy Change Endorsement**

Policy Number:
**BZW (20) 58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**

Endorsement Period:
**From 10/01/2019 to 10/01/2020**

*12:01 am Standard Time
at Insured Mailing Location*

| Named Insured & Mailing Address | Agent Mailing Address & Phone No. |
|---|---|
| METUCHEN CENTER INC<br>10-12 EMBROIDERY ST<br>SAYREVILLE, NJ 08872 | (732) 548-2727<br>THE SCHENCK AGENCY INC<br>PO BOX 351<br>METUCHEN, NJ 08840-0351 |

## CHANGES TO POLICY - TRANSACTION # 2

### This Policy Change Endorsement Results In A Change In The Charges As Follows:

**No Change in Premium**

### Description of Change(s)

Added the following as Loss Payee - Bank of

America Attn: Insurance Group.

See The Revised Declarations and Declarations Schedule

| Issue Date | 10/03/19 | Authorized Representative |
|---|---|---|

*To report a claim, call your Agent or 1-844-325-2467*

DS 70 27 01 08

WAP 000002



Coverage is Provided In:
West American Insurance Company - a stock company

175 Berkeley St., Boston, MA 02116

### Policy Change Endorsement

Policy Number:
**BZW (20) 58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**

Endorsement Period:
**From 10/01/2019 to 10/01/2020**

*12:01 am Standard Time
at Insured Mailing Location*

| Named Insured | Agent |
|---|---|
| METUCHEN CENTER INC | (732) 548-2727 |
| | THE SCHENCK AGENCY INC |

## OTHER NAMED INSUREDS

DORECCO LLC

## SUMMARY OF LOCATION(S) AND PREMIUM(S)

0001 10-12 Embroidery St, Sayreville, NJ 08872-1809                    *$10,795.00*

## POLICY FORMS AND ENDORSEMENTS

This section lists the Forms and Endorsements for your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE |
|---|---|
| BP 00 03 07 13 | Businessowners Coverage Form |
| BP 01 89 03 15 | New Jersey Changes |
| BP 04 09 07 13 | Additional Insured - Mortgagee, Assignee or Receiver |
| BP 04 17 01 10 | Employment - Related Practices Exclusion |
| BP 04 19 07 13 | Amendment - Liquor Liability Exclusion - Exception for Scheduled Premises or Activities |
| BP 05 17 01 06 | Exclusion - Silica Or Silica-Related Dust |
| BP 05 23 01 15 | Cap On Losses From Certified Acts Of Terrorism |
| BP 05 77 01 06 | Fungi or Bacteria Exclusion (Liability) |
| *BP 12 03 01 10 | Loss Payable Clauses |

Issue Date          10/03/19                                    Authorized Representative

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 27 01 08**                                                                WAP 000003

**Liberty Mutual.**
**INSURANCE**

*Coverage is Provided in:*
West American Insurance Company - a stock company

175 Berkeley St., Boston, MA 02116

**Policy Change Endorsement**

Policy Number:
**BZW (20) 58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**

Endorsement Period:
**From 10/01/2019 to 10/01/2020**

*12:01 am Standard Time
at Insured Mailing Location*

| Named Insured | Agent |
|---|---|
| METUCHEN CENTER INC | (732) 548-2727 |
| | THE SCHENCK AGENCY INC |

## POLICY FORMS AND ENDORSEMENTS - CONTINUED

This section lists the Forms and Endorsements for your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE |
|---|---|
| BP 15 04 05 14 | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - With Limited Bodily Injury Exception |
| BP 70 02 01 01 | General Endorsement |
| BP 79 19 09 16 | Businessowners Property Extension Endorsement |
| BP 79 74 07 13 | Amendment of Pollution Exclusion (Premises) |
| BP 79 96 09 16 | Businessowners Liability Extension Endorsement |
| BP 80 60 01 07 | Peak Season Endorsement |
| BP 81 15 03 11 | Exclusion - Asbestos |
| BP 82 37 08 15 | Equipment Breakdown Coverage Endorsement |
| BP 88 04 03 14 | Exclusion - Professional Services (Real Estate Agents, Insurance Agents, Travel Agents, Financial Services, Computer Software, Insurance Operations) |
| BP 88 77 07 13 | Identity Theft Administrative Services and Expense Coverage |
| BP 88 78 07 13 | Business Personal Property Limit - Automatic Increase |

Issue Date     10/03/19

Authorized Representative

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 27 01 08**

WAP 000004

This page intentionally left blank.

WAP 000005



**Liberty Mutual** INSURANCE

*Coverage is Provided In:*
West American Insurance Company - a stock company

Policy Number:
**BZW(20)  58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial   Protector
Declarations    - Revised**

| Named Insured | Agent |
|---|---|
| METUCHEN CENTER INC | (732) 548-2727 |
| | THE SCHENCK AGENCY INC |

## SUMMARY OF LIMITS AND CHARGES

| Businessowners Liability Limits of Insurance | DESCRIPTION | LIMIT |
|---|---|---|
| | **Liability and Medical Expenses - Occurrence** | 1,000,000 |
| | Aggregate Limits of Insurance | |
| | Products-Completed Operations | 2,000,000 |
| | Other than Products-Completed Operations | 2,000,000 |
| | Broadened Coverage For Damage To Premises Rented To You | 1,000,000 |
| | Medical Expenses (Any One Person) | 15,000 |

| Explanation of Charges | DESCRIPTION | PREMIUM |
|---|---|---|
| | Businessowners Location(s) Total | $10,795.00 |
| | Businessowners Other Coverage(s) Total | $17.00 |
| | NJ Property - Liability Insurance Guaranty Association Surcharge | $65.06 |
| | Certified Acts of Terrorism Coverage | $32.00 |

*Total Charges:*    **$10,909.06**
*Note: This is not a bill*

*To report a claim,  call your Agent or  1-844-325-2467*

DS 70 22 01 08

WAP 000006

**Liberty Mutual.**
INSURANCE

*Coverage is Provided In:*
West American Insurance Company - a stock company

Policy Number:
**BZW(20)  58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial  Protector**
**Declarations  Schedule  -Revised**

| Named Insured | Agent |
|---|---|
| METUCHEN CENTER INC | (732) 548-2727<br>THE SCHENCK AGENCY INC |

## SUMMARY OF COVERAGES BY LOCATION

**0001   10-12 Embroidery St, Sayreville,  NJ 08872-1809**

| Property Characteristics | Description: |
|---|---|
| | **Construction:** Joisted Masonry |

**Building Coverage**

**Occupancy:** Sporting Goods or Athletic Equipment - No Guns, Ammunition or Vehicles - Wholesale

| DESCRIPTION | |
|---|---|
| Limit of Insurance - Replacement Cost | **$833,875** |
| **Covered Causes of Loss** | |
| Special Form | |
| Automatic Increase Building | **4%** |
| Deductible | **$1,000** |
| *Premium* | *$5,552.00* |

**Business Personal Property Coverage**

**Occupancy:** Sporting Goods or Athletic Equipment - No Guns, Ammunition or Vehicles - Wholesale

| DESCRIPTION | |
|---|---|
| Limit of Insurance - Replacement Cost | **$258,222** |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | **$1,000** |
| Automatic Increase Business Personal Property | **4%** |
| *Premium* | *$5,131.00* |

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 23 01 08**

WAP 000007

**Liberty Mutual.**
INSURANCE

*Coverage is Provided in:*
West American Insurance Company - a stock company

Policy Number:
**BZW(20) 58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule -Revised**

| Named Insured | Agent |
|---|---|
| METUCHEN CENTER INC | (732) 548-2727 |
| | THE SCHENCK AGENCY INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0001 10-12 Embroidery St, Sayreville, NJ 08872-1809*

| Money and Securities | DESCRIPTION | |
|---|---|---|
| | Limit of Insurance - Inside | $20,000 |
| | Limit of Insurance - Outside | $20,000 |
| | Deductible | $500 |
| | *Premium* | *$112.00* |

| Mortgage Holder(s) | BANK OF AMERICA NA ISAOA | 70 BATTERSON PARK ROAD |
|---|---|---|
| | INSURANCE DIVISION | MAIL CODE CT2-515-BB-03 |
| | | FARMINGTON, CT 06032 |
| | | Loan# |

## SUMMARY OF OTHER COVERAGES

| Employee Dishonesty Including Forgery and Alteration | DESCRIPTION | |
|---|---|---|
| | Limit of Insurance | $25,000 |
| | Number of Employees | 5 |
| | Deductible | $500 |
| | *Premium* | *Included* |

| Property Extension Endorsement | DESCRIPTION | |
|---|---|---|
| | See Endorsement | |
| | *Premium* | *$8.00* |

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 23 01 08**

WAP 000008



**Liberty Mutual.**
INSURANCE

*Coverage is Provided in:*
West American Insurance Company - a stock company

Policy Number:
**BZW(20)  58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial   Protector
Declarations   Schedule   -Revised**

| Named Insured | Agent |
|---|---|
| METUCHEN CENTER INC | (732) 548-2727<br>THE SCHENCK AGENCY INC |

## SUMMARY OF OTHER COVERAGES - continued

**Identity Recovery
Coverage for
Defined Individuals**

**DESCRIPTION**

See Endorsement

| | *Premium* | *$9.00* |
|---|---|---|
| **Businessowners Location(s) Total** | | **$10,795.00** |
| **Businessowners Other Coverage(s) Total** | | **$17.00** |
| **Businessowners Schedule Total** | | **$10,812.00** |

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 23 01 08**

WAP 000009

POLICY NUMBER
**BZW   (20)   58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*

## Named Insured Endorsement



This Endorsement Changes The Policy. Please Read it Carefully.

The complete Named Insured reads as follows:

METUCHEN CENTER INC

DORECCO LLC

**DS 88 04 03 15**

PAGE 1 OF 1

WAP 000010

This page intentionally left blank.

POLICY NUMBER:

BUSINESSOWNERS
BP 12 03 01 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 10-12 Embroidery St | | | A |
| Sayreville NJ 08872-1809 | | | |

**Description of Property**

COLLATERAL LOAN

**Loss Payee (Name & Address)**

BANK OF AMERICA  ATTN: INSURANCE
GROUP MAIL CODE: NC1-001-05-14
101 NORTH TYRON STREET
ONE INDEPENCE CENTER
CHARLOTTE, NC 28255

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

BP 12 03 01 10

© Insurance Services Office, Inc., 2009

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.



**Policyholder   Information**

| **Named Insured & Mailing Address** | **Agent Mailing Address & Phone No.** |
|---|---|
| METUCHEN CENTER INC<br>10-12 EMBROIDERY ST<br>SAYREVILLE, NJ 08872 | (732) 548-2727<br>THE SCHENCK AGENCY INC<br>PO BOX 351<br>METUCHEN, NJ 08840-0351 |



### *Dear Policyholder:*



**Your Commercial Documents**

We know you work hard to build your business. We work together with your agent, **THE SCHENCK AGENCY INC          (732) 548-2727** to help protect the things you care about. Thank you for selecting us.

THIS IS NOT A BILL

Enclosed are your insurance documents consisting of:

- Commercial Protector

To find your specific coverages, limits of liability, and premium, please refer to your Declarations page(s).

If you have any questions or changes that may affect your insurance needs, please contact your Agent at (732) 548-2727



**Reminders**

- Verify that all information is correct
- If you have any changes, please contact your Agent at (732) 548-2727
- In case of a claim, call your Agent or  1-844-325-2467

## You Need To Know

- **CONTINUED ON NEXT PAGE**

*To report a claim, call your Agent or  1-844-325-2467*

DS 70 20 01 08                                                                WAP 000014

**You Need To Know - continued**

- **NOTICE(S) TO POLICYHOLDER(S)**
  The Important Notice(s) to Policyholder(s) provide a general explanation of changes in coverage to your policy. The Important Notice(s) to Policyholder(s) is not a part of your insurance policy and it does not alter policy provisions or conditions. Only the provisions of your policy determine the scope of your insurance protection. It is important that you read your policy carefully to determine your rights, duties and what is and is not covered.

| FORM NUMBER | TITLE |
|---|---|
| CNI90 11 07 18 | Reporting A Commercial Claim 24 Hours A Day |
| NP 72 42 01 15 | Terrorism Insurance Premium Disclosure And Opportunity To Reject |
| NP 72 66 04 17 | New Jersey Earthquake Insurance Availability Notice |
| NP 74 44 09 06 | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders |
| NP 89 69 11 10 | Important Policyholder Information Concerning Billing Practices |
| NP 93 54 07 13 | Important Notice to Policyholders - Commercial Protector Coverage |
| NP 98 20 01 15 | Jurisdictional Boiler And Pressure Vessel Inspections |

- This policy will be direct billed. You may choose to combine any number of policies on one bill with your billing account. Please contact your agent for more information.

CNI 90 11 07 18

# REPORTING A COMMERCIAL CLAIM 24 HOURS A DAY

**Liberty Mutual Insurance claims professionals across the United States are ready to resolve your claim quickly and fairly, so you and your team can focus on your business. Our claims teams are specialized, experienced and dedicated to a high standard of service.**

**We're Just a Call Away - One Phone Number to Report All Commercial Insurance Claims**

Reporting a new claim has never been easier. A Liberty Mutual customer service representative is available to you 24/7 at **800-362-0000** for reporting new property, auto, liability and workers' compensation claims. With contact centers strategically located throughout the country for continuity and accessibility, we're there when we're needed!

**Additional Resource for Workers' Compensation Customers**

In many states, employers are required by law to use state-specific workers compensation claims forms and posting notices. This type of information can be found in the Policyholders Toolkit section of our website along with other helpful resources such as:

- Direct links to state workers compensation websites where you can find state-specific claim forms

- Assistance finding local medical providers

- First Fill pharmacy forms - part of our managed care pharmacy program committed to helping injured workers recover and return to work

Our Policyholder Toolkit can be accessed at **www.libertymutualgroup.com/toolkit.**

For all claims inquiries please call us at **800-362-0000.**



© 2018 Liberty Mutual Insurance

08/14/19

METUCHEN CENTER INC

10-12 EMBROIDERY ST
SAYREVILLE, NJ 08872

(732) 548-2727
THE SCHENCK AGENCY INC

PO BOX 351
METUCHEN, NJ 08840-0351

BZW (20)   58 89 98 09
From 10/01/2019 To 10/01/2020

## TERRORISM INSURANCE PREMIUM  DISCLOSURE
## AND OPPORTUNITY  TO REJECT

**This notice contains important  information  about the Terrorism  Risk Insurance Act and its effect on your policy. Please read it carefully.**

### THE TERRORISM RISK INSURANCE  ACT

The Terrorism  Risk Insurance Act, including all amendments  ("TRIA"  or the "Act"),  establishes  a program to spread the risk of catastrophic  losses from  certain  acts of terrorism  between  insurers  and the federal government.  If an individual  insurer's  losses from  certified  acts of terrorism  exceed a specified  deductible amount,  the government  will reimburse  the insurer  for a percentage  of losses (the "Federal  Share")  paid in excess  of the deductible,  but only if aggregate  industry  losses from  such acts exceed the "Program  Trig-ger".  An insurer  that has met its insurer  deductible  is not liable for any portion  of losses in excess of $100 billion  per year. Similarly,  the federal government  is not liable for any losses covered by the Act that exceed this amount.  If aggregate  insured  losses exceed $100 billion,  losses up to that amount  may be pro-rated,  as determined  by the Secretary  of the Treasury.

The Federal Share and Program  Trigger  by calendar  year are:

| Calendar  Year | Federal  Share | Program  Trigger |
|---|---|---|
| 2015 | 85% | $100,000,000 |
| 2016 | 84% | $120,000,000 |
| 2017 | 83% | $140,000,000 |
| 2018 | 82% | $160,000,000 |
| 2019 | 81% | $180,000,000 |
| 2020 | 80% | $200,000,000 |

### MANDATORY  OFFER OF COVERAGE FOR "CERTIFIED ACTS OF TERRORISM"  AND DISCLOSURE OF PRE-MIUM

TRIA requires  insurers  to make coverage  available  for any loss that occurs within  the United  States (or outside  of the U.S. in the case of U.S. missions  and certain  air carriers  and vessels),  results from  a "certified act of terrorism"   AND that is otherwise  covered  under your policy.

A "certified  act of terrorism"   means:

[A]ny act that is certified  by the Secretary  [of the Treasury ] , in consultation  with the Secretary  of Homeland  Security,  and the Attorney  General of the United  States.

**(i)**   to be an act of terrorism;

(ii) to be a violent act or an act that is dangerous to -
- **(I)** human life;
- **(II)** property; or
- **(III)** infrastructure;

(iii) to have resulted in damage within the United States, or outside of the United States in the case of -
- **(I)** an air carrier (as defined in section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or
- **(II)** the premises of a United States mission; and

(iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

## REJECTING TERRORISM INSURANCE COVERAGE - WHAT YOU MUST DO

We have included in your policy coverage for losses resulting from "certified acts of terrorism" as defined above.

THE PREMIUM CHARGE FOR THIS COVERAGE APPEARS ON THE DECLARATIONS PAGE OF THE POLICY AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOV-ERNMENT UNDER THE ACT. If we are providing you with a quote, the premium charge will also appear on your quote as a separate line item charge.

IF YOU CHOOSE TO REJECT THIS COVERAGE, PLEASE CHECK THE BOX BELOW, SIGN THE ACKNOWL-EDGMENT, AND RETURN THIS FORM TO THE ADDRESS BELOW: **Please ensure any rejection is received within thirty (30) days of the effective date of your policy** .

Before making a decision to reject terrorism insurance, refer to the Disclaimer for Standard Fire Policy States located at the end of this Notice.

☐ I hereby reject this offer of coverage. I understand that by rejecting this offer, I will have no coverage for losses arising from "certified acts of terrorism" and my policy will be endorsed accordingly.

| Policyholder/Applicant's Signature | Print Name | Date Signed |
| --- | --- | --- |
| | | |

| Named Insured | Policy Number |
| --- | --- |
| METUCHEN CENTER INC | BZW (20)  58 89 98 09 |

Policy Effective/Expiration Date

From 10/01/2019 To 10/01/2020

## IF YOU REJECTED THIS COVERAGE, PLEASE RETURN THIS FORM TO:

Attn: Commercial Lines Division - Terrorism
PO Box 66400
London, KY 40742-6400

**Note:** Certain states (currently CA, GA, IA, IL, ME, MO, NY, NC, NJ, OR, RI, WA, WI and WV) mandate coverage for loss caused by fire following a "certified act of terrorism" in certain types of insurance policies. If you reject TRIA coverage in these states on those policies, you will not be charged any additional premium for that state mandated coverage.

**The summary of the Act and the coverage under your policy contained in this notice is necessarily general in nature. Your policy contains specific terms, definitions, exclusions and conditions. In case of any conflict, your policy language will control the resolution of all coverage questions. Please read your policy carefully.**

If you have any questions regarding this notice, please contact your agent.



NP 72 66 04 17

# NEW JERSEY EARTHQUAKE INSURANCE AVAILABILITY NOTICE

All insureds and applicants are cautioned that commercial fire and extended coverage insurance policies do not provide coverage for earthquake damage.

The definition of an *earthquake:*

- is a shaking or trembling of the earth that is geologic or tectonic in nature;
- includes shock waves or tremors before, during or after a volcanic eruption; and
- can also include after-shocks that occur within a seventy-two hour period following an *earthquake.*

A typical commercial fire and extended coverage insurance policy:

- **does not** cover the cost to replace your damaged dwelling, premises or structure, such as garages, resulting from an *earthquake;*
- **does not** cover the cost to replace or repair the contents of your business if the damages result from an *earthquake;* and
- **does not** pay for any additional business expenses if your property is badly damaged or destroyed by an *earthquake.*

*Earthquake* **insurance is available through an endorsement to your policy for an additional premium. The decision to purchase earthquake insurance is one that should be carefully considered based on individual circumstances.**

Historically, an earthquake in New Jersey is a rare event, although the possibility exists that it could happen. Over the five (5) -year period from 2010 to 2015, for every $1 of *earthquake* insurance premium, 1/10 of one cent has been paid out for losses.

**Please contact your agent if you have any questions or want additional information on how you can obtain** *earthquake* **insurance.**

**This notice is a general description of coverage and does not change, modify or invalidate any of the provisions, terms or conditions of your policy or endorsements.**

NP 74 44 09 06

# U.S. TREASURY DEPARTMENT'S  OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS



No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

Please refer any questions you may have to your insurance agent.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© 2011 Liberty Mutual Insurance. All rights reserved.

NP 89 69 11 10

# IMPORTANT  POLICYHOLDER INFORMATION
# CONCERNING  BILLING PRACTICES

**Dear Valued Policyholder:** This insert provides you with important information about our policy billing practices that may affect you. Please review it carefully and contact your agent if you have any questions.

**Premium Notice:** We will mail you a policy Premium Notice separately. The Premium Notice will provide you with specifics regarding your agent, the account and policy billed, the billing company, payment plan, policy number, transaction dates, description of transactions, charges/credits, policy amount balance, minimum amount, and payment due date. This insert explains fees that may apply to and be shown on your Premium Notice.

**Available Premium Payment Plans:**

● **Annual Payment Plan:** When this plan applies, you have elected to pay the entire premium amount balance shown on your Premium Notice in full. No installment billing fee applies when the Annual Payment Plan applies.

● **Installment Payment Plan:** When this plan applies, you have elected to pay your policy premium in installments (e.g.: quarterly or monthly installments - Installment Payment Plans vary by state). As noted below, an installment fee may apply when the Installment Payment Plan applies.

The Premium Payment Plan that applies to your policy is shown on the top of your Premium Notice. Please contact your agent if you want to change your Payment Plan election.

**Installment Payment Plan Fee:** If you elected to pay your premiums in installments using the Installment Premium Payment Plan, an installment billing fee applies to each installment bill. The installment billing charge will not apply, however, if you pay the entire balance due when you receive the bill for the first installment. Because the amount of the installment charge varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Dishonored Payment Fee:** Your financial institution may refuse to honor the premium payment withdrawal request you submit to us due to insufficient funds in your account or for some other reason. If that is the case, and your premium payment withdrawal request is returned to us dishonored, a payment return fee will apply. Because the amount of the return fee varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Late Payment Fee:** If we do not receive the minimum amount due on or before the date or time the payment is due, as indicated on your Premium Notice, you will receive a policy cancellation notice effective at a future date that will also reflect a late payment fee charge. Issuance of the cancellation notice due to non-payment of a scheduled installment(s) may result in the billing and collection of all or part of any outstanding premiums due for the policy period. Late Payment Fees vary from state to state and are not applicable in some states.

**Special Note:** Please note that some states do not permit the charging of certain fees. Therefore, if your state does not allow the charging of an Installment Payment Plan, Dishonored Payment or Late Payment Fee, the disallowed fee will not be charged and will not be included on your Premium Notice.

**EFT-Automatic Withdrawals Payment Option:** When you select this option, you will not be sent Premium Notices and, in most cases, will not be charged installment fees. For more information on our EFT-Automatic Withdrawals payment option, refer to the attached policyholder plan notice and enrollment sheet.

Once again, please contact your agent if you have any questions about the above billing practice information.

**Thank you for selecting us to service your insurance needs.**

©  2010 Liberty Mutual Insurance Company. All rights reserved.

WAP 000021

NP 93 54 07 13

# IMPORTANT  NOTICE  TO  POLICYHOLDERS - COMMERCIAL  PROTECTOR  COVERAGE (BOP  2006  to  BOP  2013)



Dear Valued Policyholder,

Thank you for selecting us as your carrier for your commercial insurance. This notice contains a brief summary of the coverage changes made to your policy.

The changes outlined below are organized by individual endorsements. Please note that not all of the endorsements noted may apply to your specific policy. In addition, this notice does not reference every editorial change made to the endorsement or coverage form, only significant coverage changes.

Please read your policy and review your Declarations page for complete coverage information. No coverage is provided by this notice, nor can it be construed to replace any provisions of your policy. If there are discrepancies between your policy and this notice, the provisions of the policy shall prevail.

Should you have questions after reviewing the changes outlined below, please contact your independent agent. Thank you for your business.

**Coverage Form**

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Businessowners Coverage  Form | BP 00 03 01 06 | Businessowners Coverage  Form | BP 00 03 07 13 |

**Section I - Property**

**I.    Broadenings  Of Coverage**

● **Business Personal Property  - Coverage Radius**

The Business Personal Property coverage grant is revised to extend coverage 100 feet from the buildings or structures, or 100 feet from the described premises, whichever distance is greater.

● **Vegetated  Roofs**

Property Not Covered is revised to make an exception for lawns, trees, shrubs and plants that are part of a vegetated roof. The Limited Coverage For Fungi, Wet Rot Or Dry Rot Additional Coverage is revised to expressly state that the coverage does not apply to lawns, trees, shrubs or plants that are part of a vegetated roof.

● **Electronic Data In Building Equipment**

Property Not Covered is revised to make an exception for electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system. The Electronic Data and Interruption Of Computer Operations Additional Coverages are revised to reinforce that coverage does not apply to such electronic data, data that is integrated in and operates or controls the building's elevator, lightning, heating, ventilation, air conditionin g or security system .

● **Debris Removal**

The Limit of Insurance under the Debris Removal Additional Coverage, is increased from $10,000 to $25,000.

Further, coverage for debris removal is expanded to include the expense of removing certain debris that is not Covered Property, however, when no Covered Property sustains direct physical loss or damage, coverage for the removal of debris, is limited to $5,000.

● **Business Income Additional  Coverage - Extended Business Income**

The period of coverage under the Extended Business Income Additional Coverage is increased from 30 to 60 days.

© 2013 Liberty Mutual Insurance. All rights reserved.

NP 93 54 07 13      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 1 of 18**

WAP 000022

- **Additional Coverages - Civil Authority**

  The period of coverage for the Civil Authority Additional Coverage is increased from three weeks to four weeks.

- **Business Income From Dependent Properties Additional Coverage - Secondary Dependent Properties**

  Coverage is extended to include secondary dependent properties which are direct suppliers and recipients of the dependent property's materials or services, that are not owned or operated by a dependent property, but do not include any road, bridge, tunnel, waterway, airfield, pipeline, or any other similar area or structure.

- **Coverage Extensions - Outdoor Property**

  The Outdoor Property Coverage Extension has been revised to provide an option to increase the applicable limit, but not more than $1000 for any one tree, shrub or plant.

  The Outdoor Property Coverage Extension is also revised to include debris removal expense for trees, shrubs and plants that are the property of others, except trees, shrubs and plants owned by the landlord of an insured tenant.

- **Business Personal Property Temporarily In Portable Storage Units Coverage Extension**

  A Coverage Extension for Business Personal Property Temporarily In Portable Storage Units is introduced. Under this Coverage Extension, a 90-day coverage period is provided for Business Personal Property temporarily stored in a portable storage unit located within 100 feet of the described premises, subject to a sub-limit of $10,000 regardless of the number of storage units.

- **Dishonesty Exclusion**

  The Dishonesty Exclusion is revised to distinguish between those who have a role in the insured's business (partners, managers, employees, etc.) and others to whom property may be entrusted (a category that includes tenants and bailees, for example). With respect to the latter category, the exclusion is narrowed to apply only to theft. Further, the exception to the exclusion (which enables coverage for acts of destruction) is revised to extend applicability to authorized representativ es.

- **Exclusions - Business Income And Extra Expense**

  The exception in the Business Income And Extra Expense Coverage Exclusion with respect to coverage for loss caused by or resulting from suspension, lapse or cancellation of any license, lease or contact directly caused by the suspension of operations has been expanded so that the exception will also apply during the extension of the "period of restoration" in accordance with the terms of that coverage.

- **Property Loss Conditions - Loss Payment - Party Walls**

  A provision within The Loss Payment - Property Loss Condition has been introduced that generally addresses exposures associated with party walls and the insureds interest in that party wall.

- **Optional Coverages - Equipment Breakdown Protection Coverage**

  The Mechanical Breakdown Optional Coverage has been replaced with Equipment Breakdown Protection Coverage. If Equipment Breakdown replaces Mechanical Breakdown Coverage or is newly added to the policy, this change represents a broadening of coverage.

- **Specified Causes Of Loss Property Definition**

  Coverage for water damage under the definition of "specified causes of loss" is expanded to include accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of certain off- premises systems due to wear and tear.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## II.  Reductions in Coverage

- **Property Not Covered Animals**

  Property Not Covered has been revised to state that covered property does not include animals unless they are owned by others and being boarded by you, or your stock while inside buildings (however in both instances the covered causes of loss are limited to the "specified causes of loss" or building glass breakage, and then only if the animals are killed or their destruction is made necessary.

- **Limitations**

  The limitations regarding loss or damage to the interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust has been extended to apply to personal property in the building or structure.

- **Additional Coverages - Civil Authority**

  This coverage now requires that the damaged property triggering the exercise of civil authority be within one mile of the described premises.

- **Newly Acquired Or Constructed Property Coverage Extension**

  Under the Newly Acquired Or Constructed Property Coverage Extension, the provision that extends an additional limit of insurance to newly acquired business personal property at the described premises is removed. There is no change to the coverage for newly acquired business personal property at newly acquired locations or at newly constructed or acquired buildings at the described location.

- **Exclusions - Utility Services**

  This exclusion now applies to utility failure that originates at the described premises, when such failure involves equipment used to provide utility service supplied by an off- premises provider.

- **Employee Dishonesty Optional Coverage**

  An exclusion is introduced to the Employee Dishonesty Optional Coverage to address acts of employees learned of by the insured prior to the policy period.

## III.  Other Changes

- **Business Personal Property**

  The Business Personal Property coverage grant is revised to reinforce that business personal property is covered when located in or on the buildings or structures at the described premises.

- **Covered Causes Of Loss - Risk Of Loss**

  The term "risk of" is removed from the Covered Causes Of Loss provision.

- **Fire Department Service Charge Additional Coverage**

  The Fire Department Service Charge Additional Coverage is revised to specify that the amount of such coverage ($2,500 or a designated higher limit) applies to each premises described in the Declarations. Further, the language of the coverage provision is revised to state that the designated limit applies regardless of the number of responders or the number or type of services performed.

- **Business Income And Extra Expense Additional Coverages - Coverage Radius**

  In part, the coverage criteria for the Business Income and Extra Expense Additional Coverages relate to loss or damage to personal property in the open or in a vehicle within a certain distance from the described premises. The language relating to the coverage radius is revised to achieve more similarity between the radius outlined for insureds who are occupants of the entire premises or those who occupy only a part of the premises, and to use terminology similar to that used in the Business Personal Property coverage grant.



© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

- **Business Income From Dependent Properties Additional Coverage**

  The Business Income From Dependent Properties Additional Coverage is revised to provide coverage with respect to secondary dependent properties. Such properties are defined within this Additional Coverage.

  Additionally, the definition of dependent property excludes various utility providers; the list of utilities is updated to make reference to wastewater removal services. With respect to Business Income Coverage, loss caused by interruption in utility service is addressed in Endorsement **BP 04 57.** Refer to the item titled Utility Services - Time Element Endorsement **BP 04 57** if that endorsement is part of your policy.

- **Temporary Or Leased Employees**

  The Personal Effects Coverage Extension, the Dishonesty Exclusion and the Money And Securities Optional Coverage are revised to reinforce that employees include temporary or leased employees.

- **Ordinance Or Law Exclusion**

  The language of the Ordinance Or Law Exclusion, which relates to enforcement of an ordinance or law, is revised to also refer to compliance with an ordinance or law.

  Similar references are revised in the Increased Cost Of Construction (ICC) and Business Income From Dependent Properties Additional Coverages, Loss Payment Condition and the Period of Restoration definition. Further, the ICC Additional Coverage is revised to apply to compliance with the minimum standards of an ordinance or law.

- **Earth Movement Exclusion**

  The Earth Movement Exclusion now reinforces that it applies to earth movement caused by an act of nature or otherwise caused. In addition, the term earthquake now incorporates tremors and aftershocks.

  With respect to coverage for volcanic action (which is a limited exception to the exclusion of volcanic eruption), all such eruptions that occur within any 168-hour period constitute a single occurrence.

- **Exclusions - Virus Or Bacteria**

  The Virus Or Bacteria Exclusion has been added to this form and incorporates the function of Exclusion Of Loss Due To Virus Or Bacteria Endorsement **BP 06 01.**

- **Exclusions - Artificially Generated Electrical Current**

  The Electrical Apparatus Exclusion has been revised to incorporate various terms that reflect current understandings of technology with regard to power sources and associated systems.

- **Exclusion - Collapse**

  The Collapse Exclusion has been revised in conjunction with revisions to reinforce the Collapse Additional Coverage.

- **Exclusions - Product Errors**

  An exclusion has been added for loss or damage to any merchandise, goods or other product, caused by or resulting from error or omission in any stage of the development, production or use of the product. But if the error or omission results in a covered cause of loss, the loss or damage attributable to the ensuing covered cause of loss is covered.

- **Limits Of Insurance**

  The Limits of Insurance provision has been revised to provide that the amounts of insurance for the Increased Cost Of Construction, Business Income From Dependent Properties, Electronic Data and Interruption Of Computer Operations Additional Coverages apply in addition to the Section I - Property Limits.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



- **Building Limit - Automatic Increase**

  The Building Limit - Automatic Increase Limit of Insurance has been revised to indicate that the limit will increase by 8% unless a higher or lower annual percentage is shown in the Declarations.

- **Business Personal Property Limit - Seasonal Increase**

  The Business Personal Property Limit - Seasonal Increase provision has been revised to indicate that the Limit of Insurance for Business Personal Property will increase by 25% or by a different percentage shown in the Declarations.

- **Deductibles**

  The Deductibles provision has been revised to eliminate references to a separate glass deductible. Glass losses will now be subject to the otherwise applicable policy deductible.

- **Loss Payment Property Loss Condition**

  The Loss Payment Property Loss Condition is revised to include an illustrative example.

- **Optional Coverages - Equipment Breakdown Protection Coverage**

  The Mechanical Breakdown Optional Coverage has been replaced with Equipment Breakdown Protection Coverage. As a result we are withdrawing Equipment Breakdown Protection Endorsement **BP 04 59.** If the Equipment Breakdown Optional Coverage is replacing **BP 04 59,** there is no change in coverage.

## Section II - Liability

**I.  Broadenings of Coverage:**

- **Liquor Liability Exclusion**

  The Liquor Liability Exclusion is revised to provide that, for the purposes of the exclusion, permitting a person to bring alcoholic beverages for consumption on an insured's premises (e.g., a "Bring Your Own"), whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

- **Electronic Data Exclusion**

  An exception to the Electronic Data Exclusion is introduced to provide that the exclusion does not apply to liability for damages because of bodily injury.

- **Who Is An Insured**

  The Who Is An Insured Provision has been revised to include trusts as insureds.

**II.  Reductions in Coverage**

- **Liquor Liability Exclusion**

  The Liquor Liability Exclusion is revised to state that the Liquor Liability Exclusion applies even if the claims allege the negligence or other wrongdoing in:

  - The supervision, hiring, employment, training or monitoring of others; or

  - Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

  if the occurrence which caused the bodily injury or property damage involved that which is described in Paragraph **(1), (2)** or **(3)** of the exclusion.

**III.  Other Changes**

- **Business Liability**

  A reference to or *any offense* has been added within the insuring agreement for Business Liability with respect to an insurers right to investigate any occurrence and settle any claim or suit that may result.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

- **Coverage Extension - Supplementary Payments**

  The Coverage Extension Supplementary Payments Provision has been revised to reinforce that coverage is provided for court costs taxed against the insured but that this does not include attorney's fees or attorney expenses taxed against the insured. While this change is considered to be a reinforcement of coverage intent, it may result in a decrease in coverage in jurisdictions where courts have ruled that plaintiff's attorneys' fees or attorneys' expenses taxed against the insured can be levied as a supplementary payment.

- **War Liability Exclusion**

  The War Liability Exclusion is editorially revised.

- **Professional Services Exclusion**

  The Professional Services Exclusion has been revised to add language noting that the exclusion applies even if the claims allege negligence or other wrongdoing in the hiring, employment, training, supervision or monitoring of others by an insured, if it involved the rendering or failure to render any professional service.

- **Personal And Advertising Injury Exclusion**

  The Personal And Advertising Injury Exclusion is revised for consistency with the definition of personal and advertising injury and to reinforce that the exclusion does not apply to injuries arising out of other intellectual property rights involving the use of another's advertising idea in the insured's advertisement.

- **Electronic Data Exclusion**

  Under the Electronic Data Exclusion the definition of electronic data has been revised for consistency with the definition of electronic data under Section I - Property of the policy.

- **Recording And Distribution Of Material Or Information In Violation Of Law Exclusion**

  The Distribution of Material in Violation of Statutes Exclusion has been revised, in part, to address actions or omissions that violate not only the Fair Credit Reporting Act (FCRA), but also the Fair and Accurate Credit Transactions Act (FACTA) and any federal, state or local statutes. The title of the exclusion has been revised to Recording And Distribution Of Material Or Information In Violation Of Law to reflect the revised provision.

- **Liability And Medical Expense**

  The Liability And Medical Expense definition for Mobile Equipment has been editorially revised.

## Section III - Common Policy Conditions

**I.   Other Changes**

- **Other Insurance Condition**

  The Other Insurance Condition is editorially revised.

### Endorsements

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Windstorm Or Hail Percentage Deductibles | BP 03 12 01 06 | Windstorm Or Hail Percentage Deductibles | BP 03 12 01 10 |

**I.   Other Changes**

- This endorsement has been revised to delete the language pertaining to other causes or events that contribute concurrently or in any sequence and to add language that the endorsement does not imply or afford coverage for any loss or damage that is excluded under the Water Exclusion any other exclusion or the application of a Flood Deductible if this policy or another policy provides flood coverage.

©  2013 Liberty Mutual Insurance. All rights reserved.

**NP 93 54 07 13**          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          WAB 000027

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Employment-Related Practices Exclusion | BP 04 17 07 02 | Employment-Related Practices Exclusion | BP 04 17 01 10 |

### I.  Reductions in Coverage

- The Employment-related  Practices Exclusion has been revised to reinforce  that the exclusion ap-plies  to an injury-causing  event associated  with employment,  whether  it occurs before employ-ment, during employment  or after employment  of that person, and that coverage does not apply for injury caused by the malicious  prosecution  of a person.

  While  these changes  are each a reinforcement  of coverage intent, they may result in a decrease in coverage in jurisdictions  where courts have ruled the exclusion  to be inapplicable  in employment-related malicious  prosecution  claims and/or post-employment  claims.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Amendment  - Liquor Liability  Exclusion - Exception  For Scheduled Premises  Or Activities | BP 04 19 01 06 | Amendment  - Liquor Liability  Exclusion - Exception  For Scheduled Premises  Or Activities | BP 04 19 07 13 |

### I.  Reductions in Coverage

- The Liquor  Liability  Exclusion in this endorsement  is revised, in part, to indicate  that the causing or contributing  to the intoxication  of any person includes  causing or contributing  to the intoxication  of any person because alcoholic  beverages were permitted  to be brought  on your premises  for con-sumption  on your premises.

  This endorsement  is also revised to indicate  that the Liquor Liability  Exclusion **will apply** if an insured permits  any person to bring any alcoholic  beverages on the Named Insured's premises,  for consumption  on the Named Insured's premises,  except for the premises  described  in the Schedule of the endorsement  for consumption  on such premises.

### II.  Other Changes

- This endorsement  is revised for consistency  with revisions  made to the Liquor Liability  Exclusion  in the policy.

- Various editorial  revisions  with no impact on coverage.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Protective  Safeguards | BP 04 30 01 06 | Protective  Safeguards | BP 04 30 07 13 |

### I.  Other Changes

- This endorsement  is revised by the addition  of a symbol and description  to recognize  Automatic Commercial  Cooking Exhaust And Extinguishing  Systems.

- Various editorial  revisions  with no impact on coverage.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Business  Income Changes  - Time  Period | BP 04 41 01 06 | Business  Income Changes  - Time  Period | BP 04 41 07 13 |

### I.  Broadening of Coverage

- This endorsement  is revised to reflect changes  made to the Business  Income From Dependent Properties  Additional  Coverage in the Businessowners  Coverage Form with respect to secondary dependent  properties.

- The period  of coverage  has been increased  from three  consecutive  weeks to four  consecutive weeks.



© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

NP 93 54 07 13

WAP 000928

**II.   Other Changes**

● Various editorial revisions with no impact on coverage.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Additional Insured - Owners, Lessees Or Contractors - Scheduled Person Or Organization | BP 04 50 07 13 |

**I.   Other Changes**

● This new Additional Insured Endorsement provides coverage for Owners, lessees of buildings on policies covering contractors, and contractors on policies covering subcontractors, but only for liability for ongoing operations.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Additional Insured - Owners, State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations | BP 04 51 07 13 |

**I.   Other Changes**

● This new Additional Insured Endorsement provides coverage for Owners, lessees or Contractors who have signed a contract or agreement that requires them to be added as additional insureds, but only for liability for ongoing operations.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Additional Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations | BP 04 52 07 13 |

**I.   Other Changes**

● This new Additional Insured Endorsement provides coverage for certain premises hazards for state or federal governmental organizations issuing permits or authorization to contractors.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Utility Services - Direct Damage | BP 04 56 01 06 | Utility Services - Direct Damage | BP 04 56 07 13 |

**I.   Other Changes**

● This endorsement is revised to reinforce that transmission lines include all lines that serve in the transmission of power or communication service, including lines that may be identified as distribution lines.

● This endorsement has been revised to remove the qualification that the utility service property be located outside a covered building.

● Various editorial revisions with no impact on coverage.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

NP 93 54 07 13

WAB_000829

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Utility Services - Time Element | BP 04 57 01 06 | Utility Services - Time Element | BP 04 57 07 13 |

**I.  Broadening of Coverage**

- This endorsement is revised to provide the means to select a new category of utility service: wastewater removal property. With respect to the coverage provided under this endorsement, wastewater removal property is a utility system for removing wastewater and sewage from the described premises, other than a system designed primarily for draining storm water.

**II.  Other Changes**

- This endorsement is revised to reinforce that transmission lines include all lines that serve in the transmission of power or communication service, including lines which may be identified as distribution lines.

- This endorsement has been revised to remove the qualification that the utility service property be located outside a covered building.

- Various editorial revisions with no impact on coverage.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Functional Building Valuation | BP 04 84 01 06 | Functional Building Valuation | BP 04 84 07 13 |

**I.  Other Changes**

- This endorsement is revised to reflect the revisions made to the Ordinance Or Law Exclusion in the Businessowners Coverage Form.

- Various editorial revisions with no impact on coverage.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Computer Fraud And Fund Transfer Fraud | BP 05 47 01 06 | Computer Fraud And Fund Transfer Fraud | BP 05 47 07 13 |

**I.  Broadening of Coverage**

- This endorsement has been revised to delete the Limitation regarding the transfer of property on the basis of unauthorized instructions and that the false pretense exclusion does not apply.

**II.  Reduction of Coverage**

- An exclusion has been added for loss or damages caused by or resulting from the use or purported use of credit, debit, charge, access, convenience, identification, store valued or other cards or the information contained on such cards.

**III.  Other Changes**

- Various editorial revisions with no impact on coverage.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Photography | BP 07 83 07 13 |

**I.  Broadening of Coverage**

- This new endorsement is available for photographer risks.



© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Pharmacists | BP 08 07 01 06 | Pharmacists | BP 08 07 07 13 |

**I.    Broadening of Coverage**

- This endorsement is revised to include an exception to the Professional Services Exclusion with respect to the administering of vaccinations in accordance with applicable state or federal law.

**II.    Other Changes**

- Various editorial revisions with no impact on coverage.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Earthquake And Volcanic Eruption (Sub-Limit) | BP 10 11 07 13 |

**I.    Other Changes**

- This new endorsement extends coverage against loss by earthquake and volcanic eruption at a limit lower than the limit which applies to other covered perils. The limit of insurance for this coverage is on an annual aggregate basis.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Loss Payable Provisions | BP 12 03 01 06 | Loss Payable Clauses | BP 12 03 01 10 |

**I.    Broadening of Coverage**

- The Loss Payable Provision has been revised to add an option, Building Owner Loss Payable Clause, to identify the building owner and recognize that entity as a loss payee.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Additional Insured - Building Owners | BP 12 31 01 10 |

**I.    Other Changes**

- This new endorsement has been introduced to recognize the interest of a building owner, as an additional named insured, under a tenant's policy with respect to property damage under Section I - Property.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Additional Insured - Owners, Lessees Or Contractors - Completed Operations | BP 14 02 07 13 |

**I.    Broadening of Coverage**

- This new endorsement provides completed operations coverage for specified additional insured(s) identified in the Schedule of the endorsement.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Windstorm Or Hail Losses To Roof Surfacing - Actual Cash Value Loss Settlement | BP 14 04 07 13 |

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**I.   Other Changes**

- This new endorsement changes the Loss Payment Property Loss Condition to provide that loss or damage to roof surfacing caused by windstorm or hail will be settled on an actual cash value basis rather than a replacement cost basis.



| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| No Form | Dec entry only | Business Income And Extra Expense - Revised Period of Indemnity | Dec entry only |

**I.   Broadening of Coverage**

- Additional options of 270 and 360 days has been added.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Debris Removal Additional Insurance | BP 14 09 07 13 |

**I.   Other Changes**

- This new endorsement provides for increasing the Debris Removal limit of insurance.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Limited Exclusion - Personal And Advertising Injury - Lawyers | BP 14 15 07 13 |

**I.   Reduction of Coverage**

- This new endorsement is used to exclude personal and advertising injury arising out of the rendering of or failure to render professional services as a lawyer.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Increased Cost Of Loss And Related Expenses For Green Upgrades | BP 14 75 07 13 |

**I.   Other Changes**

- This new endorsement amends various Section I - Property coverage provisions to address green up-grades to real and personal property, and related expenses.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Communicable Disease Exclusion | BP 14 86 07 13 |

**I.   Reduction of Coverage**

- This new endorsement amends coverage to exclude bodily injury, property damage, and personal and advertising injury arising out of the actual or alleged transmission of a communicable disease.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Additional Insured - Owners, Lessees Or Contractors - With Additional Insured Requirement For Other Parties In Construction Contract | BP 14 87 07 13 |

**I.   Other Changes**

● This new endorsement provides additional insured status to those parties whom the Named Insured is obligated in writing in a contract or agreement to name as an additional insured under their policy.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Primary And Noncontributory - Other Insurance Condition | BP 14 88 07 13 |

**I.   Other Changes**

● This new endorsement provides that the coverage made available to an additional insured will be provided on a primary and noncontributory basis.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Condominium Association Coverage | BP 17 01 01 06 | Condominium Association Coverage | BP 17 01 07 13 |

**I.   Broadening of Coverage**

● This endorsement is revised to provide that coverage extends 100 feet from the building or 100 feet from the described premises, whichever distance is greater.

**II.   Other Changes**

● This endorsement is revised such that Business Personal Property is covered when located in or on the buildings or **structures** at the described premises.

● Various editorial revisions with no impact on coverage.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Condominium Commercial Unit-Owners Coverage | BP 17 02 01 06 | Condominium Commercial Unit-Owners Coverage | BP 17 02 07 13 |

**I.   Broadening of Coverage**

● This endorsement is revised to provide that coverage extends 100 feet from the building or 100 feet from the described premises, whichever distance is greater. Additionally, this endorsement is revised to include leased personal property which the Named Insured has a contractual responsibility to insure as covered Business Personal Property.

**II.   Other Changes**

● This endorsement is revised such that Business Personal Property is covered when located in or on the buildings or **structures** at the described premises.

● Various editorial revisions with no impact on coverage.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## OTHER CHANGES

- The endorsements identified below are being editorially revised to comply with ISO uniformity standards as follows:

- Various editorial revisions with no impact on coverage.

  - **BP 04 04 01 10** - Hired Auto And Non-owned Auto Liability

    This endorsement has been revised to introduce an Other Insurance provision to generally state that coverage provided by the endorsement is excess over any primary insurance covering the "hired auto" or "non-owned auto".

  - **BP 08 03 07 13** - Optical And Hearing Aid Establishments  (Editorially  Revised)

  - **BP 12 02 07 13** - Fire Department  Service Contract

- The additional insured endorsements identified below are revised to:

  - Add language, in response to growing number of states enacting anti-indemnification laws, to provide that the insurance afforded to an additional insured only applies to the extent permitted by law;

  - Provide that, if coverage provided to the additional insured is required by contract or agreement, the insurance afforded to the additional insured will not be broader than that which the Named Insured is required by the contract or agreement to provide for the additional insured; and

  - Provide that, if coverage provided to the additional insured is required by contract or agreement, the most the insurer will pay on behalf of the additional insured is the amount of insurance required by the contract or agreement or the amount of insured available under the applicable Limits Of Insurance shown in the Declarations, whichever is less. The provision also provides that the endorsement will not increase the applicable Limits Of Insurance shown in the Declarations.

    - **BP 04 02 07 13** - Additional  Insured - Managers Or Lessors Of Premises

    - **BP 04 06 07 13** - Additional  Insured - Controlling  Interest

    - **BP 04 07 07 13** - Additional  Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision  - Permits Or Authorizations  Relating To Premises

    - **BP 04 09 07 13** - Additional  Insured - Mortgagee,  Assignee Or Receiver

    - **BP 04 10 07 13** - Additional  Insured - Owners Or Other Interests From Whom Land Has Been Leased

    - **BP 04 11 07 13** - Additional  Insured - Co-owner Of Insured Premises

    - **BP 04 13 07 13** - Additional  Insured - Engineers, Architects Or Surveyors

    - **BP 04 47 07 13** - Additional  Insured - Vendors

    - **BP 04 48 07 13** - Additional  Insured - Designated Person Or Organization

    - **BP 04 49 07 13** - Additional  Insured - Engineers, Architects Or Surveyors Not Engaged By The Named Insured

    - **BP 04 50 07 13** - Additional  Insured - Owners, Lessees Or Contractors - Scheduled Person Or Organization

    - **BP 04 51 07 13** - Additional  Insured - Owners, Lessees Or Contractors - With Additional Insured Requirement In Construction  Contract

    - **BP 04 52 07 13** - Additional  Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision  - Permits Or Authorizations

    - **BP 14 02** - Additional  Insured - Owners, Lessees Or Contractors - Completed Operations



**NP 93 54 07 13**             © 2013 Liberty Mutual Insurance. All rights reserved.              WAB 000934
Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 13 of 18

- The additional insured endorsements identified below are revised to:
  - Allow for any governmental agency or subdivision (federal or state) to be named as an additional insured.
  - To address situations in which a permit many not be issued, but the governmental agency or subdivision authorizes the insured to perform operations
  - The endorsements now reference the issuing of permits or authorization to the insured.
    - **BP 04 07 07 13** - Additional Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises.
    - **BP 04 52 07 13** - Additional Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations.
- The additional insured endorsements identified below are revised to:
  - Specifically excluding completed operations coverage for an additional insured;
  - Removed the Professional Services Exclusion, as a similar exclusion is already contained in the Businessowners Coverage Form.
    - **BP 04 13 07 13** - Additional Insured - Engineers, Architects Or Surveyors
    - **BP 04 49 07 13** - Additional Insured - Engineers, Architects Or Surveyors Not Engaged By The Named Insured
    - **BP 04 51 07 13** - Additional Insured - Owners, Lessees Or Contractors - With Additional Insured Requirement In Construction Contract
- The endorsements identified below are revised to:
  - The Professional Services Exclusion has been modified to address claims alleging negligence or other wrongdoing in the hiring, employment, training, supervision or monitoring of others by an insured.
    - **BP 08 03 07 13** - Optical And Hearing Aid Establishments
    - **BP 08 07 07 13** - Pharmacists
    - **BP 14 15 07 13** - Limited Exclusion - Personal And Advertising Injury - Lawyers

## COMPANY FORMS

Only the countrywide versions of endorsements are referenced. State specific versions, where applicable, have been amended in the same manner as the countrywide version unless otherwise specified.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Businessowners Property Extension Endorsement | BP 79 19 07 10 | Businessowners Property Extension Endorsement | BP 79 19 07 13 |

**I.  Broadening of Coverage**

- Theft Of Clients' Property Coverage has been added and includes a limit of $5,000, unless a higher limit is shown in the Declarations, and a deductible of $250.

**II.  Reductions of Coverage**

- Water Back-Up And Sump Overflow language has been added which states that we will not pay when back-up, overflow or discharge is caused directly or indirectly by any flood whether caused by an act of nature or otherwise caused, and is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

WAB-000035

**III.  Other Changes**

- Revision  to the paragraph  references.

- Duplication  of language  has been eliminated.

- Debris  Removal  has been moved  to the BP 00 03 Businessowners  Coverage  Form.

- Ordinance  Or Law Coverage  has been revised  to reflect  the revisions  made in the Ordinance

- Or Law Exclusion  in the Businessowners  Coverage  Form.

- Water Back-Up  And Sump Overflow  has revisions  to the paragraph  referencing  and lead in lan-
guage, and includes  clarifying  language.



| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Amendment  Of Pollution  Exclusion (Premises) | BP 79 74 02 08 | Amendment  Of Pollution  Exclusion (Premises) | BP 79 74 07 13 |

**I.   Other Changes**

- Revision  to the paragraph  referencing.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Businessowners Liability  Extension Endorsement | BP 79 96 03 11 | Businessowners Liability  Extension Endorsement | BP 79 96 07 13 |

**I.   Broadening of Coverage**

- The definition  of "Bodily  Injury"  has been revised  to include  mental  anguish.

**II.  Other Changes**

- The definition  of Insured  Contract  has been revised  to add clarifying  language  which  states that a
contract  or agreement  shall only  be considered  and "insured  contract"  to the extent  your assump-
tion of the tort liability  is permitted  by law.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Condominium Association  Directors And Officers  Liability Coverage | BP 80 05 09 10 | Condominium Association  Directors And Officers  Liability Coverage | BP 80 05 07 13 |

**I.   Other Changes**

- Revision  to the paragraph  references.

- The Punitive  Damages  Exclusion  in **BP 80 05** has been removed,  and Amendment  - Punitive  Dam-
ages Exclusion,  **BP 81 04,** has been withdrawn.   There is no change to the coverage  provided.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Bookstore  Endorsement | BP 80 27 01 07 | Bookstore  Endorsement | BP 80 27 07 13 |

**I.   Reduction of Coverage**

- The Liquor  Liability  Exclusion  now applies  to this coverage.

**II.  Other Changes**

- Revision  to the paragraph  references.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Coverage For Pets | BP 80 33 01 07 | Coverage For Pets | BP 80 33 07 13 |

**I.   Broadening of Coverage**

- The Property Not Covered has been revised to list the exceptions to the animals not covered.

- Recovery Expense Coverage and Reward Expense Coverage have been revised to include coverage for unauthorized instructions given to transfer the animals to any person or place.

**II.   Restrictions of Coverage**

- Flood and surface water language in the Covered Causes Of Loss has been revised in keeping with the water exclusion language in **BP 00 03** Businessowners Coverage Form.

**III.   Other Changes**

- Revision to the paragraph references.

- Duplicate language has been eliminated.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Goodwill Replacement Valuation Endorsement | BP 80 41 01 07 | Goodwill Replacement Valuation Endorsement | BP 80 41 07 13 |

**I.   Broadening of Coverage**

- Coverage for Replacement Cost is no longer limited to items less than two years of age.

**II.   Other Changes**

- Revision to the paragraph referencing and lead in language.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Medical Office Endorsement | BP 80 56 06 09 | Medical Office Endorsement | BP 80 56 07 13 |

**I.   Broadening of Coverage**

- Spoilage Coverage has been increased from $5,000 to $10,000.

**II.   Other Changes**

- Revision to the paragraph references.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Businessowners Property Plus Extension Endorsement | BP 82 42 07 10 | Businessowners Property Plus Extension Endorsement | BP 82 42 07 13 |

**I.   Broadening of Coverage**

- Theft Of Clients' Property Coverage has been added and includes a limit of $5,000, unless a higher limit is shown in the Declarations, and includes a deductible of $250.

**II.   Other Changes**

- Revision to the paragraph references.

- Clarifying language has been added to the Water Back- Up And Sump Overflow.

- Duplication of language has been eliminated.

- Debris Removal has been moved to the BP 00 03 Businessowners Coverage Form.

© 2013 Liberty Mutual Insurance. All rights reserved.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Windstorm Or Hail Exclusion | BP 88 11 06 09 | Windstorm Or Hail Exclusion | BP 88 11 07 13 |

**I.   Other Changes**

- Revision to the paragraph referencing and lead in language.
- Windstorm or Hail has been deleted from the "Specified Causes Of Loss" definition.



| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Identity Recovery Coverage For Defined Individuals | BP 88 15 03 12 | Identity Theft Administration Service And Expense Coverage | BP 88 77 07 13 |

**I.   Other Changes**

- Title Change and editorial revisions.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Businessowners Property Endorsement | BP 88 19 07 10 | Businessowners Property Endorsement | BP 88 19 07 13 |

**I.   Broadening of Coverage**

- Theft Of Clients' Property Coverage has been added and includes a limit of $5,000, unless a higher limit is shown in the Declarations, and includes a deductible of $250.

**II.   Reductions of Coverage**

- Water Back-Up And Sump Overflow language has been added which states that we will not pay when back-up, overflow or discharge is caused directly or indirectly by any flood whether caused by an act of nature or otherwise caused, and is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**III.   Other Changes**

- Revision to the paragraph references.
- Duplication of language has been eliminated.
- Debris Removal has been moved to the BP 00 03 Businessowners Coverage Form.
- Ordinance Or Law Coverage has been revised to reflect the revisions made in the Ordinance Or Law Exclusion in the Businessowners Coverage Form.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Water Back-Up And Sump Overflow | BP 88 72 01 13 | Water Back-Up And Sump Overflow | BP 88 72 07 13 |

**I.   Reduction of Coverage**

- Language has been added which states the we will not pay when back-up, overflow or discharge is caused directly or indirectly by any flood whether caused by an act of nature or otherwise caused, and is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**II.   Other Changes**

- Revision to the paragraph references.
- Clarifying language has been added.
- Duplicate language has been eliminated.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

| Expiring Form | Expiring Form Number | New Form | New Form Number |
|---|---|---|---|
| Not Available | | Business Personal Property Limit - Automatic Increase | BP 88 78 07 13 |

**I.    Broadening of Coverage**

●    This new coverage provides Business Personal Property - Automatic Increase Limit of Insurance of 2% unless a higher or lower annual percentage is shown in the Declarations.

©   2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

NP 98 20 01 15

## JURISDICTIONAL  BOILER  AND  PRESSURE  VESSEL  INSPECTIONS



Most jurisdictions  (cities or states) are governed  by laws and regulations  that require  owners  of boilers  and pressure  vessels  to have their  equipment  inspected  on a routine  basis. Jurisdictions  require  that equipment is installed  and operated  according  to these regulations,  and it is the equipment  breakdown  engineering inspector's  responsibility   to verify  the equipment  complies  with all requirements.

Liberty  Mutual  Equipment  Breakdown  is a National  Board  Accredited  Authorized  Inspection  Agency.  This designation  is recognized  by authorities  having  jurisdictions  in the U.S. & provinces  of Canada  and gives Liberty  Mutual  commissioned  inspectors  the ability  to perform  jurisdictionally   required  inspection  on boilers and pressure  vessels at insured  locations.  We have  field inspectors  strategically   located  throughout  the U.S. to perform  boiler and pressure  vessel inspection  for our customers  and clients.

**To request  a Jurisdictional  Inspection  please:**

- **Call the LMEB Hotline (877) 526-0020**

**Or**

- **Email your request to LMEBInspections@Libertymutual.com**

The assigned  EB Risk Engineer  will  call  to schedule  within  24 - 48 hours.  When  requesting  an inspection please include  the following:

- Current  Policy  Number

- Location  Address

- Contact  Name

- Contact  Phone  Number  and/or  Email  Address

©   2015 Liberty Mutual Insurance

This page intentionally left blank.

WAP 000041

Case 3:20-cv-12584-FLW-TJB   Document 1   Filed 12/08/20   Page 79 of 376 PageID: 279



West American Insurance Company - a stock company

*Coverage is provided in:*

**Policy Number:**
**BZW(20)  58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*

175 Berkeley St., Boston, MA 02116

## Commercial  Protector  Common Policy  Declarations

| **Named Insured & Mailing Address** | **Agent Mailing Address & Phone No.** |
|---|---|
| METUCHEN CENTER INC<br>10-12 EMBROIDERY ST<br>SAYREVILLE, NJ 08872 | (732) 548-2727<br>THE SCHENCK AGENCY INC<br>PO BOX 351<br>METUCHEN, NJ 08840-0351 |

**Named Insured Is:** CORPORATION

**Named Insured Business Is:** SPORTING GOODS OR ATHLETIC EQUIPMENT STORES -

*In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.*

## SUMMARY  OF COVERAGE PARTS AND CHARGES

These Declarations together with the Businessowners Coverage Form (and other applicable forms and endorsements, if any, issued to form a part of them) complete this policy.

| **COVERAGE PART** | **CHARGES** |
|---|---|
| **Commercial Protector** | **$10,909.06** |

*Total Charges for all of the above coverage parts:*     **$10,909.06**
*Certified Acts of Terrorism Coverage:*     *$32.00*     *(Included)*

*Note: This is not a bill*

## IMPORTANT  MESSAGES

- **THIS POLICY CONTAINS AGGREGATE LIMITS; REFER TO SECTION II - LIABILITY, PARAGRAPH D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE FOR DETAILS.**

- Equipment Breakdown Enhancement Is Included - See Policy Forms and Endorsements summary

Issue Date     08/14/19

Authorized  Representative

*To report a claim,  call  your Agent or  1-844-325-2467*

DS 70 21 11 16

WAP 000042

**Liberty Mutual.**
**INSURANCE**

*Coverage is Provided In*

175 Berkeley St., Boston, MA 02116

Policy Number:
**BZW   (20)   58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*

## Common Policy Declarations

| **Named Insured** | **Agent** |
|---|---|
| METUCHEN CENTER INC | (732) 548-2727 |
| 10-12 EMBROIDERY ST | THE SCHENCK AGENCY INC |
| SAYREVILLE, NJ 08872 | PO BOX 351 |
| | METUCHEN, NJ 08840-0351 |

### OTHER NAMED INSUREDS

See Named Insured Endorsement DS8804

### SUMMARY  OF LOCATION(S) AND PREMIUM(S)

0001 10-12 Embroidery St, Sayreville, NJ 08872-1809                    *$10,795.00*

### POLICY FORMS  AND ENDORSEMENTS

This section lists the Forms and Endorsements for your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE |
|---|---|
| BP 00 03 07 13 | Businessowners Coverage Form |
| BP 01 89 03 15 | New Jersey Changes |
| BP 04 09 07 13 | Additional Insured - Mortgagee,  Assignee or Receiver |
| BP 04 17 01 10 | Employment - Related Practices Exclusion |
| BP 04 19 07 13 | Amendment - Liquor Liability Exclusion - Exception for Scheduled Premises or Activities |
| BP 05 17 01 06 | Exclusion - Silica Or Silica-Related Dust |
| BP 05 23 01 15 | Cap On Losses From Certified Acts Of Terrorism |
| BP 05 77 01 06 | Fungi or Bacteria Exclusion (Liability) |
| BP 15 04 05 14 | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - With Limited Bodily Injury Exception |
| BP 70 02 01 01 | General Endorsement |
| BP 79 19 09 16 | Businessowners Property Extension Endorsement |
| BP 79 74 07 13 | Amendment of Pollution Exclusion (Premises) |
| BP 79 96 09 16 | Businessowners Liability Extension Endorsement |

In witness whereof,  we have caused this policy to be signed by our authorized officers.

Mark Touhey
Secretary

Paul Condrin
President

***To report a claim,  call  your Agent or  1-844-325-2467***
**DS 70 21 11 16**

WAP 000043



**Liberty Mutual.** INSURANCE

*Coverage is Provided in:*
West American Insurance Company - a stock company

175 Berkeley St., Boston, MA 02116

Policy Number:
**BZW (20) 58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector Common**
**Policy Declarations**

| Named Insured | Agent |
|---|---|
| METUCHEN CENTER INC<br>10-12 EMBROIDERY ST | (732) 548-2727<br>THE SCHENCK AGENCY INC<br>PO BOX 351 |



## POLICY FORMS AND ENDORSEMENTS - CONTINUED

This section lists the Forms and Endorsements for your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE |
|---|---|
| BP 80 60 01 07 | Peak Season Endorsement |
| BP 81 15 03 11 | Exclusion - Asbestos |
| BP 82 37 08 15 | Equipment Breakdown Coverage Endorsement |
| BP 88 04 03 14 | Exclusion - Professional Services (Real Estate Agents, Insurance Agents, Travel Agents, Financial Services, Computer Software, Insurance Operations) |
| BP 88 77 07 13 | Identity Theft Administrative Services and Expense Coverage |
| BP 88 78 07 13 | Business Personal Property Limit - Automatic Increase |

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 21 11 16**

WAP 000044

This page intentionally left blank.

WAP 000045

**Liberty Mutual. INSURANCE**

*Coverage is Provided in:*
West American Insurance Company - a stock company

Policy Number:
**BZW(20) 58 89 98 09**
Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Policy Declarations**

| Named Insured | Agent |
|---|---|
| METUCHEN CENTER INC | (732) 548-2727<br>THE SCHENCK AGENCY INC |



## SUMMARY OF LIMITS AND CHARGES

| Businessowners Liability Limits of Insurance | DESCRIPTION | LIMIT |
|---|---|---|
| | **Liability and Medical Expenses - Occurrence** | 1,000,000 |
| | **Aggregate Limits of Insurance** | |
| | **Products-Completed Operations** | 2,000,000 |
| | **Other than Products-Completed Operations** | 2,000,000 |
| | **Broadened Coverage For Damage To Premises Rented To You** | 1,000,000 |
| | **Medical Expenses (Any One Person)** | 15,000 |

| Explanation of Charges | DESCRIPTION | PREMIUM |
|---|---|---|
| | **Businessowners Location(s) Total** | $10,795.00 |
| | **Businessowners Other Coverage(s) Total** | $17.00 |
| | **NJ Property - Liability Insurance Guaranty Association Surcharge** | $65.06 |
| | **Certified Acts of Terrorism Coverage** | $32.00 |

*Total Charges:* **$10,909.06**

*Note: This is not a bill*

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 22 01 08**

WAP 000046

**Liberty Mutual.**
**INSURANCE**

Coverage is Provided In:
West American Insurance Company - a stock company

Policy Number:
**BZW(20) 58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| METUCHEN CENTER INC | (732) 548-2727 |
| | THE SCHENCK AGENCY INC |

## SUMMARY OF COVERAGES BY LOCATION

**0001    10-12 Embroidery St, Sayreville, NJ 08872-1809**

**Property Characteristics**

Description:

**Construction:** Joisted Masonry

**Building Coverage**

**Occupancy:** Sporting Goods or Athletic Equipment - No Guns, Ammunition or Vehicles - Wholesale

| DESCRIPTION | |
|---|---|
| Limit of Insurance - Replacement Cost | **$833,875** |
| **Covered Causes of Loss** | |
| Special Form | |
| Automatic Increase Building | **4%** |
| Deductible | **$1,000** |
| *Premium* | *$5,552.00* |

**Business Personal Property Coverage**

**Occupancy:** Sporting Goods or Athletic Equipment - No Guns, Ammunition or Vehicles - Wholesale

| DESCRIPTION | |
|---|---|
| Limit of Insurance - Replacement Cost | **$258,222** |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | **$1,000** |
| Automatic Increase Business Personal Property | **4%** |
| *Premium* | *$5,131.00* |

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 23 01 08**

WAP 000047

of 148

34

**Liberty Mutual.**
**INSURANCE**

*Coverage is provided in:*
West American Insurance Company - a stock company

**BZW(20)  58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial    Protector**
**Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| METUCHEN CENTER INC | (732) 548-2727 |
| | THE SCHENCK AGENCY INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0001 10-12 Embroidery St, Sayreville, NJ 08872-1809*

| Money and Securities | DESCRIPTION | |
|---|---|---|
| | Limit of Insurance - Inside | $20,000 |
| | Limit of Insurance - Outside | $20,000 |
| | Deductible | $500 |
| | *Premium* | **$112.00** |

| Mortgage Holder(s) | BANK OF AMERICA NA ISAOA | 70 BATTERSON PARK ROAD |
|---|---|---|
| | INSURANCE DIVISION | MAIL CODE CT2-515-BB-03 |
| | | FARMINGTON, CT 06032 |
| | | Loan# |

## SUMMARY OF OTHER COVERAGES

| Employee Dishonesty Including Forgery and Alteration | DESCRIPTION | |
|---|---|---|
| | Limit of Insurance | $25,000 |
| | Number of Employees | 5 |
| | Deductible | $500 |
| | *Premium* | *Included* |

| Property Extension Endorsement | DESCRIPTION | |
|---|---|---|
| | See Endorsement | |
| | *Premium* | *$8.00* |

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

*Coverage is provided in:*
West American Insurance Company - a stock company

Policy Number:
**BZW(20) 58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| METUCHEN CENTER INC | (732) 548-2727 |
| | THE SCHENCK AGENCY INC |

## SUMMARY OF OTHER COVERAGES - continued

**Identity Recovery Coverage for Defined Individuals**

**DESCRIPTION**

See Endorsement

| | *Premium* | *$9.00* |
|---|---|---|
| **Businessowners Location(s) Total** | | **$10,795.00** |
| **Businessowners Other Coverage(s) Total** | | **$17.00** |
| **Businessowners Schedule Total** | | **$10,812.00** |

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 23 01 08**

WAP 000049

| 08/14/19 | 58899809 | POLSVCS | 435 | MCAOPPNO | INSURED COPY | 002260 | PAGE 36 OF 148 |
|---|---|---|---|---|---|---|---|

**Named  Insured  Endorsement**

POLICY NUMBER
**BZW   (20)  58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*



This Endorsement Changes The Policy. Please Read it Carefully.

The complete Named Insured reads as follows:

METUCHEN CENTER INC

DORECCO LLC

**DS 88 04 03 15**

PAGE  1  OF  1

This page intentionally left blank.

WAP 000051

# BUSINESSOWNERS  COVERAGE FORM



Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section **II** - Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** - Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** - Liability.

## SECTION I - PROPERTY

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b);**

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2);** and

**(5)** Exterior building glass, if you are a tenant and no Limit Of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

**2. Property Not Covered**

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** "Money" or "securities" except as provided in the:

**(1)** Money And Securities Optional Coverage; or

**(2)** Employee Dishonesty Optional Coverage;

**c.** Contraband, or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**e.** Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in the:

**(1)** Outdoor Property Coverage Extension; or

**(2)** Outdoor Signs Optional Coverage;

**f.** Watercraft (including motors, equipment and accessories) while afloat;

**g.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

**h.** "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

**i.** "Electronic data", except as provided under Additional Coverages - Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system; or

**j.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

**3. Covered Causes Of Loss**

Direct physical loss unless the loss is excluded or limited under Section **I** - Property.

**4. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

© Insurance Services Office, Inc., 2012

(3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

(4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

(5) The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

(6) Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

(a) Dampness or dryness of atmosphere or of soil supporting the vegetation;

(b) Changes in or extremes of temperature;

(c) Disease;

(d) Frost or hail; or

(e) Rain, snow, ice or sleet.

b. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

(1) Animals, and then only if they are killed or their destruction is made necessary.

(2) Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

(a) Glass that is part of the exterior or interior of a building or structure;

(b) Containers of property held for sale; or

(c) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown (unless a higher Limit Of Insurance is shown in the Declarations):

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

5. **Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this policy;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

**(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to Paragraph **(3)(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5)** **Examples**

**Example 1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of Loss | $50,000 |
| Amount of Loss Payable | $49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense | |
| Payable | $10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

© Insurance Services Office, Inc., 2012



**Example 2**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $80,000 |
| Amount of Loss Payable | $79,500 |
| | ($80,000-$500) |
| Debris Removal Expense | $40,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4).** Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b.   Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)**   While it is being moved or while temporarily stored at another location; and

**(2)**   Only if the loss or damage occurs within 30 days after the property is first moved.

**c.   Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for service at each premises described in the Declarations, unless a different limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)**   Assumed by contract or agreement prior to loss; or

**(2)**   Required by local ordinance.

**d.   Collapse**

The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in Paragraphs **d.(1)** through **d.(7).**

**(1)**   For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)**   We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

**(a)**   Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(b)**   Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(c) Use of defective material or methods in construction, re-modeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

(d) Use of defective material or methods in construction, re-modeling or renovation if the abrupt collapse occurs after the construction, re-modeling or renovation is complete, but only if the collapse is caused in part by:

(i) A cause of loss listed in Paragraph **(2)(a)** or **(2)(b)**;

(ii) One or more of the "specified causes of loss";

(iii) Breakage of building glass;

(iv) Weight of people or personal property; or

(v) Weight of rain that collects on a roof.

(3) This Additional Coverage - Collapse does **not** apply to:

(a) A building or any part of a building that is in danger of falling down or caving in;

(b) A part of a building that is standing, even if it has separated from another part of the building; or

(c) A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(4) With respect to the following property:

(a) Awnings;

(b) Gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Retaining walls; and

(h) Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

(5) If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

(a) The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

(6) This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(7) This Additional Coverage - Collapse will not increase the Limits of Insurance provided in this policy.

© Insurance Services Office, Inc., 2012

(8) The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in Paragraphs **d.(1)** through **d.(7).**

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

(2) Is directly caused by freezing.

**f. Business Income**

(1) Business Income

(a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

(i) The portion of the building which you rent, lease or occupy;

(ii) The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

(iii) Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

(b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

(c) Business Income means the:

(i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(ii) Continuing normal operating expenses incurred, including payroll.

   © Insurance Services Office, Inc., 2012

**(d)** Ordinary payroll expenses:

**(i)** Means payroll expenses for all your employees except:

**i.** Officers;

**ii.** Executives;

**iii.** Department Managers;

**iv.** Employees under contract; and

**v.** Additional Exemptions shown in the Declarations as:

● Job Classifications; or

● Employees.

**(ii)** Include:

**i.** Payroll;

**ii.** Employee benefits, if directly related to payroll;

**iii.** FICA payments you pay;

**iv.** Union dues you pay; and

**v.** Workers' compensation premiums.

**(2) Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**i.** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**ii.** 60 consecutive days after the date determined in Paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section **I** - Property.

© Insurance Services Office, Inc., 2012



**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section **I** - Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**i. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section **I** - Property.

**j. Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(1)** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**(2)** "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery Or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

© Insurance Services Office, Inc., 2012

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit Of Insurance is shown in the Declarations.

**I.  Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs **(3)** through **(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under Section **I** - Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment Property Loss Condition in Section **I** - Property do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss at the premises of a dependent property or secondary dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property or secondary dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit Of Insurance is indicated in the Declarations.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(4)** Dependent property means property owned by others whom you depend on to:

**(a)** Deliver materials or services to you, or to others for your account. But services does not mean water supply services, wastewater removal services, communication supply services or power supply services;

**(b)** Accept your products or services;

**(c)** Manufacture your products for delivery to your customers under contract for sale; or

**(d)** Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

**(5)** Secondary dependent property means an entity which is not owned or operated by a dependent property and which;

**(a)** Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

**(b)** Accepts materials or services from a dependent property, which in turn accepts your materials or services.

© Insurance Services Office, Inc., 2012

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property.

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

    (i) Water supply services;

    (ii) Wastewater removal services;

    (iii) Communication supply services; or

    (iv) Power supply services.

The secondary dependent property must be located in the coverage territory of this policy.

**(6)** The coverage period for Business Income under this Additional Coverage:

**(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property or secondary dependent property; and

**(b)** Ends on the date when the property at the premises of the dependent property or secondary dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(7)** The Business Income coverage period, as stated in Paragraph **(6),** does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(8)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

**(1)** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**(2)** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

**(1)** We will pay:

**(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

**(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

**(1)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the

© Insurance Services Office, Inc., 2012

extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

(2) The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage - Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit Of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

(4) This Additional Coverage does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

q. **Interruption Of Computer Operations**

(1) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

(2) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) Coverage under this Additional Coverage - Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

(b) If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

(c) The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data")

© Insurance Services Office, Inc., 2012

by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit Of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage - Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(7)** This Additional Coverage does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**r. Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

**(1)** The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot is the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

(3) The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

(4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(5) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

(6) The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage:

(a) If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense Additional Coverages is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section I - Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises:

© Insurance Services Office, Inc., 2012



**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

**(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire; or

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**b. Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than trees, shrubs or plants which are part of a vegetated roof), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit Of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees, including temporary or leased employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**e. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit Of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section **I** - Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.2.m.(2),** Errors Or Omissions; and

**(g)** Paragraph **B.3.**

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

© Insurance Services Office, Inc., 2012

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**(3)** Paragraph **B.** Exclusions in Section **I** - Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.3.;** and

**(g)** Paragraph **B.6.,** Accounts Receivable Exclusion.

**g.** **Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the buildings or structures described in the Declarations or within 100 feet of the described premises, whichever distance is greater.

**(2)** The limitation under Paragraph **A.4.a.(5)** also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the Business Personal Property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to Business Personal Property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form, and does not apply to loss or damage to the storage unit itself.

**B.  Exclusions**

1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   **a.  Ordinance Or Law**

   **(1)**  The enforcement of or compliance with any ordinance or law:

   **(a)**  Regulating the construction, use or repair of any property; or

   **(b)**  Requiring the tearing down of any property, including the cost of removing its debris.

   **(2)**  This exclusion, Ordinance Or Law, applies whether the loss results from:

   **(a)**  An ordinance or law that is enforced even if the property has not been damaged; or

   **(b)**  The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

   **b.  Earth Movement**

   **(1)**  Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   **(2)**  Landslide, including any earth sinking, rising or shifting related to such event;

   **(3)**  Mine subsidence, meaning subsidence of a man- made mine, whether or not mining activity has ceased;

   **(4)**  Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   **(5)**  Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   **(a)**  Airborne volcanic blast or airborne shock waves;

   **(b)**  Ash, dust or particulate matter; or

   **(c)**  Lava flow.

   With respect to coverage for volcanic action as set forth in **5(a), (5)(b)** and **5(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

   This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

© Insurance Services Office, Inc., 2012

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.



© Insurance Services Office, Inc., 2012

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

**(1)** The failure, malfunction or inadequacy of:

**(a)** Any of the following, whether belonging to any insured or to others:

**(i)** "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

**(ii)** "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

**(iii)** "Computer" operating systems and related software;

**(iv)** "Computer" networks;

**(v)** Microprocessors ("computer" chips) not part of any "computer" system; or

**(vi)** Any other computerized or electronic equipment or components; or

**(b)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**(2)** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above, results in a "specified cause of loss" under Section **I - Property**, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i. "Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot results from fire or lightning; or

**(2)** To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

**j. Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.**

**(3)** With respect to any loss or damage subject to the exclusion in Paragraph **(1),** such exclusion supersedes any exclusion relating to "pollutants".

2. We will not pay for loss or damage caused by or resulting from any of the following:

   **a. Electrical Apparatus**

   Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

   **(1)** Electrical or electronic wire, device, appliance, system or network; or

   **(2)** Device, appliance, system or network utilizing cellular or satellite technology.

   For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

   **(1)** Electrical current, including arcing;

   **(2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

   **(3)** Pulse of electromagnetic energy; or

   **(4)** Electromagnetic waves or microwaves.

   But if fire results, we will pay for the loss or damage caused by fire.

   We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

   **(1)** An occurrence that took place within 100 feet of the described premises; or

   **(2)** Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

   **b. Consequential Losses**

   Delay, loss of use or loss of market.

   **c. Smoke, Vapor, Gas**

   Smoke, vapor or gas from agricultural smudging or industrial operations.

   **d. Steam Apparatus**

   Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   **e. Frozen Plumbing**

   Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

   **(1)** You do your best to maintain heat in the building or structure; or

   **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

   **f. Dishonesty**

   Dishonest or criminal acts (including theft) by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees (including temporary or leased employees), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

   This exclusion:

   **(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary or leased employees) or authorized representatives; but theft by your employees (including temporary or leased employees) or authorized representatives is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g.** **False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h.** **Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i.** **Collapse**

**(1)** Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **i.(1)(a)** or **i.(1)(b).**

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion **i.** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage - Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**j.** **Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**k.** **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l.** **Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section **I** - Property.

However, we will pay for direct loss or damage caused by lightning.

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if

such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

**a.** We will not pay for:

**(1)** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

**(2)** Any other consequential loss.

**b.** With respect to this exclusion, suspension means:

**(1)** The partial slowdown or complete cessation of your business activities; and

**(2)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

**a.** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**b.** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

**c.** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limits Of Insurance of Section I - Property shown in the Declarations.

**2.** The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

**3.** The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits Of Insurance of Section I - Property:

**a.** Fire Department Service Charge;

**b.** Pollutant Clean-up And Removal;

**c.** Increased Cost Of Construction;

**d.** Business Income From Dependent Properties;

**e.** Electronic Data; and

**f.** Interruption Of Computer Operations.

**4. Building Limit - Automatic Increase**

**a.** In accordance with Paragraph **C.4.b.,** the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

© Insurance Services Office, Inc., 2012

**b.** The amount of increase is calculated as follows:

**(1)** Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date or any other policy change amending the Building limit by:

**(a)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

**(b)** .08, if no percentage of annual increase is shown in the Declarations; and

**(2)** Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example**

If:

The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146 365 = $3,200.

**5. Business Personal Property Limit - Seasonal Increase**

**a.** Subject to Paragraph **5.b.**, the Limit of Insurance for Business Personal Property is automatically increased by:

**(1)** The Business Personal Property - Seasonal Increase percentage shown in the Declarations; or

**(2)** 25% if no Business Personal Property - Seasonal Increase percentage is shown in the Declarations;

to provide for seasonal variances.

**b.** The increase described in Paragraph **5.a.** will apply only if the Limit Of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section **I** - Property.

**2.** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

**a.** Money and Securities;

**b.** Employee Dishonesty;

**c.** Outdoor Signs; and

**d.** Forgery or Alteration.

But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

**3.** No deductible applies to the following Additional Coverages:

**a.** Fire Department Service Charge;

**b.** Business Income;

**c.** Extra Expense;

**d.** Civil Authority; and

**e.** Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section **I** - Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this policy:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation, subject to the following:

**(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(i)** The Limit of Insurance under Section **I** - Property that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

**i.** Of comparable material and quality; and

**ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

**(i)** The actual cash value of the lost or damaged property; or

**(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the full replacement cost of the property.

**Example**

The full replacement cost of property which suffers a total loss is $100,000. The property is insured for $70,000. 80% of the full replacement cost of the property immediately before the loss is $80,000 ($100,000 x .80 = $80,000). A partial loss of $25,000 is sustained. The amount of recovery is determined as follows:

Amount of recovery

$70,000 ÷ $80,000 = .875

.875 x $25,000 = $21,875

© Insurance Services Office, Inc., 2012

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

    **(i)** Until the lost or damaged property is actually repaired or replaced; and

    **(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Actual Cash Value - Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or secondhand merchandise held in storage or for sale;

**(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** Manuscripts; and

**(e)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants' improvements and betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

    **(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

    **(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

© Insurance Services Office, Inc., 2012

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing if others pay for repairs or replacement.

(6) Applicable only to the Optional Coverages:

(a) "Money" at its face value; and

(b) "Securities" at their value at the close of business on the day the loss is discovered.

(7) Applicable only to accounts receivable:

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

(i) We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

(ii) We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

(i) The amount of the accounts for which there is no loss or damage;

(ii) The amount of the accounts that you are able to reestablish or collect;

(iii) An amount to allow for probable bad debts that you are normally unable to collect; and

(iv) All unearned interest and service charges.

e. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

h. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

© Insurance Services Office, Inc., 2012

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section I - Property.

**7. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in Paragraphs **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**F. Property General Conditions**

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term "mortgageholder" includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

© Insurance Services Office, Inc., 2012

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

  **(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

  **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3.** **No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4.** **Policy Period, Coverage Territory**

Under Section **I** - Property:

  **a.** We cover loss or damage commencing:

    **(1)** During the policy period shown in the Declarations; and

    **(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

  **b.** The coverage territory is:

    **(1)** The United States of America (including its territories and possessions);

    **(2)** Puerto Rico; and

    **(3)** Canada.

**G.** **Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below:

**1.** **Outdoor Signs**

  **a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

    **(1)** Owned by you; or

    **(2)** Owned by others but in your care, custody or control.

  **b.** Paragraph **A.3.,** Covered Causes Of Loss and Paragraph **B.,** Exclusions in Section **I** - Property do not apply to this Optional Coverage, except for:

    **(1)** Paragraph **B.1.c.,** Governmental Action;

    **(2)** Paragraph **B.1.d.,** Nuclear Hazard; and

    **(3)** Paragraph **B.1.f.,** War And Military Action.

  **c.** We will not pay for loss or damage caused by or resulting from:

    **(1)** Wear and tear;

    **(2)** Hidden or latent defect;

    **(3)** Rust;

    **(4)** Corrosion; or

    **(5)** Mechanical breakdown.

**d.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Outdoor Signs shown in the Declarations.

**e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

**a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee (including a temporary or leased employee) having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

**(1)** Theft, meaning any act of stealing;

**(2)** Disappearance; or

**(3)** Destruction.

**b.** In addition to the Limitations and Exclusions applicable to Section **I** - Property, we will not pay for loss:

**(1)** Resulting from accounting or arithmetical errors or omissions;

**(2)** Due to the giving or surrendering of property in any exchange or purchase; or

**(3)** Of property contained in any "money" operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**c.** The most we will pay for loss in any one occurrence is:

**(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

**(a)** In or on the described premises; or

**(b)** Within a bank or savings institution; and

**(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

**d.** All loss:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of related acts;

is considered one occurrence.

**e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**3. Employee Dishonesty**

**a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

**(1)** Cause you to sustain loss or damage; and also

**(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

**(a)** Any employee; or

**(b)** Any other person or organization.

**b.** We will not pay for loss or damage:

**(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

**(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

**(a)** Whether acting alone or in collusion with other persons; or

**(b)** While performing services for you or otherwise.

**(3)** The only proof of which as to its existence or amount is:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

© Insurance Services Office, Inc., 2012

**(4)** Caused by an employee if the employee had also committed theft or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the employee, learned of that theft or dishonest act prior to the policy period shown in the Declarations.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of acts;

is considered one occurrence.

**e.** If any loss is covered:

**(1)** Partly by this insurance; and

**(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

**(1)** You; or

**(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

**(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

**(1)** This Optional Coverage as of its effective date; or

**(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.**, employee means:

**(1)** Any natural person:

**(a)** While in your service or for 30 days after termination of service;

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent employee, as defined in Paragraph **(1)** above, who is on leave; or

**(b)** To meet seasonal or short-term workload conditions;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

**(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

**(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

**(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4. Equipment Breakdown Protection Coverage**

**a.** We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

**(1)** Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** Damage to any vacuum tube, gas tube, or brush; or

**(4)** The functioning of any safety or protective device.

**b.** Paragraphs **A.4.a.(1)** and **A.4.a.(2),** Limitations, do not apply to this Optional Coverage.

**c.** With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

**(1)** Paragraph **B.2.a.,** Electrical Apparatus;

**(2)** Paragraph **B.2.d.,** Steam Apparatus; and

**(3)** Paragraph **B.2.l.(6),** Mechanical Breakdown.

**d.** With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Signs Optional Coverage** does not apply.

**e.** If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

**f.** With respect to Additional Coverages **5.f.** Business Income and **5.g.** Extra Expense, if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

© Insurance Services Office, Inc., 2012

With respect to the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

**g.** With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

   **1.** "Computer" means:

      **a.** Programmable electronic equipment that is used to store, retrieve and process data; and

      **b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production-type machinery or equipment.

**h.** Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

   **(1)** Your last known address; or

   **(2)** The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**H. Property Definitions**

   **1.** "Computer" means:

      **a.** Programmable electronic equipment that is used to store, retrieve and process data; and

      **b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production-type machinery or equipment.

   **2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

   **3.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD- ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

   **4.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

5. "Manager" means a person serving in a directorial capacity for a limited liability company.

6. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve a "manager".

7. "Money" means:

   a. Currency, coins and bank notes in current use and having a face value; and

   b. Traveler's checks, register checks and money orders held for sale to the public.

8. "Operations" means your business activities occurring at the described premises.

9. "Period of restoration":

   a. Means the period of time that:

      (1) Begins:

         (a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

         (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

         caused by or resulting from any Covered Cause of Loss at the described premises; and

      (2) Ends on the earlier of:

         (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

         (b) The date when business is resumed at a new permanent location.

   b. Does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

10. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

11. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

    a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money".

12. "Specified causes of loss" means the following:

    Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

       (1) The cost of filling sinkholes; or

       (2) Sinking or collapse of land into man-made underground cavities.

    b. Falling objects does not include loss of or damage to:

       (1) Personal property in the open; or

       (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss", such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the ground surface.

**13.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**14.** "Valuable papers and records" means inscribed, printed or written:

a. Documents;

b. Manuscripts; and

c. Records;

including abstracts, books, deeds, drawings, films, maps or mortgages. But "valuable papers and records" does not mean "money" or "securities".

## SECTION II - LIABILITY

**A. Coverages**

**1. Business Liability**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** - Liability; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension - Supplementary Payments.

b. This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

© Insurance Services Office, Inc., 2012

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**f. Coverage Extension - Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

© Insurance Services Office, Inc., 2012

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

  **(i)** Agrees in writing to:

    **i.** Cooperate with us in the investigation, settlement or defense of the "suit";

    **ii.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

    **iii.** Notify any other insurer whose coverage is available to the indemnitee; and

    **iv.** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(ii)** Provides us with written authorization to:

    **i.** Obtain records and other information related to the "suit"; and

    **ii.** Conduct and control the defense of the indemnitee in such "suit".

**(3)** So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II** - Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above, are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section **II** - Liability. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

© Insurance Services Office, Inc., 2012



**c.  Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)**  Causing or contributing to the intoxication of any person;

**(2)**  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)**  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims allege negligence or other wrongdoing in:

**(a)**  The supervision, hiring, employment, training or monitoring of others by an insured; or

**(b)**  Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d.  Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.  Employer's Liability**

"Bodily injury" to:

**(1)**  An "employee" of the insured arising out of and in the course of:

**(a)**  Employment by the insured; or

**(b)**  Performing duties related to the conduct of the insured's business; or

**(2)**  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.  Pollution**

**(1)**  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)**  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)**  "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible;

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

©  Insurance  Services  Office,  Inc.,  2012

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 51 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

**(b)** The operation of any of the following machinery or equipment:

**(i)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(ii)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services; and

**(9)** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k.   Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations;  or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** - Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

© Insurance Services Office, Inc., 2012

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o.** **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p.** **Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(6)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(7)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(8)** Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of web sites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

**(9)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(10)** With respect to any loss, cost or expense arising out of any:

    **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants";

**(11)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

**(13)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q.   Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**r.   Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s.   Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

© Insurance Services Office, Inc., 2012

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA or their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** in Section **II** - Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section **II** - Liability.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage - Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

© Insurance Services Office, Inc., 2012

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

**(1)** The "nuclear material":

    **(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

    **(b)** Has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

**d.** As used in this exclusion:

**(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(2)** "Hazardous properties" include radioactive, toxic or explosive properties;

**(3)** "Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for:

        **(i)** Separating the isotopes of uranium or plutonium;

        **(ii)** Processing or utilizing "spent fuel"; or

        **(iii)** Handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(4)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self- supporting chain reaction or to contain a critical mass of fissionable material;

**(6)** "Property damage" includes all forms of radioactive contamination of property;

**(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**(10)** "Waste" means any waste material:

**(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

## C. Who Is An Insured

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)**; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

© Insurance Services Office, Inc., 2012

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section **II** - Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

**(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section **II** - Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E.   Liability And Medical Expenses General Conditions**

**1.   Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

**2.   Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.**   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)**   How, when and where the "occurrence" or offense took place;

**(2)**   The names and addresses of any injured persons and witnesses; and

**(3)**   The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**   If a claim is made or "suit" is brought against any insured, you must:

**(1)**   Immediately record the specifics of the claim or "suit" and the date received; and

**(2)**   Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**   You and any other involved insured must:

**(1)**   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)**   Authorize us to obtain records and other information;

**(3)**   Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)**   Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.   Legal Action Against Us**

No person or organization has a right under this policy:

**a.**   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.**   To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.   Separation Of Insureds**

Except with respect to the Limits of Insurance of Section **II** - Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.**   As if each Named Insured were the only Named Insured; and

**b.**   Separately to each insured against whom claim is made or "suit" is brought.

**F.   Liability And Medical Expenses Definitions**

**1.**   "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.**   Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.**   Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

© Insurance Services Office, Inc., 2012

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

(2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

(1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

(2) Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.



Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

© Insurance Services Office, Inc., 2012

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

## SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

   **(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

   **(a)** Seasonal unoccupancy; or

   **(b)** Buildings in the course of construction, renovation or addition.

   Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

   **(2)** After damage by a Covered Cause of Loss, permanent repairs to the building:

   **(a)** Have not started; and

   **(b)** Have not been contracted for;

   within 30 days of initial payment of loss.

   **(3)** The building has:

   **(a)** An outstanding order to vacate;

   **(b)** An outstanding demolition order; or

   **(c)** Been declared unsafe by governmental authority.

   **(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

   **(5)** Failure to:

   **(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

   **(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   **b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   **c.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. Concealment, Misrepresentation Or Fraud

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

1. This policy;



**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe and healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section **I** - Property.

**2.** Business Liability Coverage is excess over:

**a.** Any other insurance that insures for direct physical loss or damage; or

**b.** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

**1.** The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

**a.** Paid to us prior to the anniversary date; and

**b.** Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13



4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

1. This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

2. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

1. Applicable to Businessowners Property Coverage:

   If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

   a. Prior to a loss to your Covered Property.

b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

   (1) Someone insured by this insurance;

   (2) A business firm:

      (a) Owned or controlled by you; or

      (b) That owns or controls you; or

   (3) Your tenant.

   You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

   This will not restrict your insurance.

2. Applicable to Businessowners Liability Coverage:

   If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
INFORMATION SECURITY PROTECTION ENDORSEMENT

**A. Section I - Property** is amended as follows:

The following exclusion and related provisions are added to Paragraph **B. Exclusions:**

**Domestic Violence Exclusion**

   **a.** We will not pay for loss or damage arising out of any act committed:

      **(1)** By or at the direction of any insured; and

      **(2)** With the intent to cause a loss.

   **b.** However, this exclusion will not apply to deny payment to a co-insured who did not cooperate in or contribute to the creation of the loss if the loss arose out of domestic violence.

   **c.** If we pay a claim pursuant to Paragraph **b.** above, our payment to the insured is limited to that insured's insurable interest in the property. In no event will we pay more than the Limit of Insurance.

To the extent that the Concealment, Misrepresentation Or Fraud Condition conflicts with the provisions of Paragraph **b.** above, the provisions of **b.** will apply.

**B. Section II - Liability** is amended as follows:

   **1.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under New Jersey law.

   **2.** The following is added to Paragraph **E. Liability And Medical Expenses** General Conditions:

      **6.** **Your Right To Loss Information**

We will provide the first Named Insured shown in the Declarations the following loss information relating to this and any preceding Businessowners Liability Coverage Form we have issued to you during the previous three years:

   **a.** A list or other record of each "occurrence" of which we were notified in accordance with Paragraph **2.a.** of the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition in this Section. We will include a brief description of the "occurrence" and information on whether any claim arising out of the "occurrence" is open or closed.

   **b.** A summary by policy year, of payments made and amounts reserved, stated separately under any applicable Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first Named Insured during the policy period. We will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured.

© Insurance Services Office, Inc., 2014

C. **Section III - Common Policy** Conditions is amended as follows:

1. Paragraph **A.2. Cancellation** is replaced by the following:

    2. If this Policy has been in effect for less than 60 days, we may cancel this Policy for any reason subject to the following:

        a. We may cancel this Policy by mailing or delivering to the first Named Insured and any person entitled to notice under this Policy written notice, of cancellation, at least:

            (1) 10 days before the effective date of cancellation if we cancel for:

                (a) Nonpayment of premium; or

                (b) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

                    (i) "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'; and

                    (ii) "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an

individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'."

                (2) 30 days before the effective date of cancellation if we cancel for any other reason.

        b. In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation.

2. The following is added to Paragraph **A. Cancellation:**

    7. **Cancellation Of Policies In Effect For 60 Days Or More**

        a. If this Policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this Policy only for one or more of the following reasons:

            (1) Nonpayment of premium;

            (2) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

            (3) Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

            (4) Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

            (5) Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

            (6) Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

            (7) Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;



© Insurance Services Office, Inc., 2014

**(8)** Loss of or reduction in available insurance capacity;

**(9)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

**(10)** Loss of or substantial changes in applicable reinsurance;

**(11)** Failure by the insured to comply with any federal, state or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

**(12)** Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefor and a reasonable opportunity to respond;

**(13)** Agency termination, provided:

**(a)** We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

**(b)** We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

**(14)** Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

**b.** If we cancel this Policy based on Paragraph **7.a.(1)** or **(2)** above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this Policy, at least 10 days before the effective date of cancellation. If we cancel this Policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this Policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

**c.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

**d.** Notice will be sent to the last mailing addresses known to us, by:

**(1)** Certified mail; or

**(2)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

**e.** We need not send notice of cancellation if you have:

**(1)** Replaced coverage elsewhere; or

**(2)** Specifically requested termination.

3. The following paragraph is added and supersedes any other provision to the contrary:

**M. Nonrenewal**

1. We may elect not to renew this Policy for any reason permitted to cancel it. If we elect not to renew this Policy, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this Policy. If this Policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

2. This notice will be sent to the first Named Insured at the last mailing address known to us by:

   a. Certified mail; or

   b. First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

3. We need not mail or deliver this notice if you have:

   a. Replaced coverage elsewhere; or

   b. Specifically requested termination.

4. The following paragraph is added:

   Pursuant to New Jersey law, this Policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this Policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the Policy is a renewal policy.

5. The following is added to Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us** Condition:

   If we pay a co-insured for loss arising out of an act of domestic violence by another insured, the rights of the co-insured, who did not cooperate in or contribute to the creation of the loss, to recover damages from the perpetrator of domestic violence are transferred to us to the extent of our payment. Following the loss, the co-insured who did not cooperate in or contribute to the loss may not waive such rights to recover against the perpetrator of domestic violence.

**D.** The following changes apply only to Information Security Protection Endorsement **BP 15 07** if it is attached to this Policy:

1. Paragraph **(2)** of Insuring Agreement **d. Security Breach Liability** is replaced by the following:

   **(2)** We will pay for "defense expenses" as a result of a "claim" in the form of a "regulatory proceeding" first made against the insured during the "policy period" or during the applicable Extended Reporting Period, in response to a "wrongful act" or a series of "interrelated wrongful acts" covered under Paragraph **d.(1).**

2. Paragraph **d.** of the definition of "loss" in Paragraph **V.** is replaced by the following:

   **d.** With respect to Insuring Agreements **d.** Security Breach Liability and **g.** Web Site Publishing Liability:

   Compensatory damages, settlement amounts and costs awarded pursuant to judgments or settlements.



© Insurance Services Office, Inc., 2014

"Loss"  does not include:

**(1)** Civil  or criminal  fines  or penal-
ties imposed  by law;

**(2)** Punitive  or exemplary  damages;

**(3)** The multiplied   portion  of multi-
plied  damages;

**(4)** Taxes;

**(5)** Royalties;

**(6)** The amount   of any  disgorged
profits;  or

**(7)** Matters  that are uninsurable  pur-
suant to law.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 04 09 07 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MORTGAGEE,
# ASSIGNEE OR RECEIVER



This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

**Name Of Person(s) Or Organization(s):**

Bank of America NA ISAOA ATIMA

70 Batterson Park Road
CT2-515-BB-11
FARMINGTON, CT 06032

**Designation Of Premises:**

10-12 Embroidery St

Sayreville
NJ
08872-1809

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II - Liability** is amended as follows:

**A.** The following is added to Paragraph **C. Who Is An Insured:**

  **3.** The person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability as mortgagee, assignee or receiver and arising out of the ownership, maintenance or use of the premises by you and as shown in the Schedule.

  However:

  **a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

  **b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance:**

  If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

  **1.** Required by the contract or agreement; or

  **2.** Available under the applicable Limits Of Insurance shown in the Declarations;

  whichever is less.

  This endorsement shall not increase the applicable Limits Of Insurance shown in the Declarations.

BUSINESSOWNERS
BP 04 17 01 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions - Applicable To Business Liability Coverage** in **Section II - Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraph **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© Insurance Services Office, Inc., 2009

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 04 19 07 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT - LIQUOR LIABILITY EXCLUSION - EXCEPTION FOR SCHEDULED PREMISES OR ACTIVITIES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Description Of Premises Or Activities: |
| --- |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Paragraph **1.c.** under **B. Exclusions** in **Section II - Liability** is replaced by the following:

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by an insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

This exclusion applies only if you:

**(a)** Manufacture, sell or distribute alcoholic beverages;

**(b)** Serve or furnish alcoholic beverages for a charge whether or not such activity:

**(i)** Requires a license;

**(ii)** Is for the purpose of financial gain or livelihood;

**(c)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

**(d)** Permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of:

**(a)** The selling, serving or furnishing of alcoholic beverages at the specific activity described in the Schedule; or

**(b)** Permitting any person to bring any alcoholic beverages on the premises described in the Schedule, for consumption on the premises described in the Schedule.

© Insurance Services Office, Inc., 2012

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - SILICA OR SILICA- RELATED DUST

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to Paragraph **B. Exclusions** in **Section II - Liability:**

**B. Exclusions**

This insurance does not apply to:

**SILICA OR SILICA-RELATED DUST**

**1.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**2.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**3.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**4.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions** in **Section II - Liability:**

**1.** "Silica" means silicon dioxide, (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

©  ISO Properties, Inc., 2005

BUSINESSOWNERS
BP 05 23 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED
# ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM



The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

© Insurance Services Office, Inc., 2015

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## FUNGI OR BACTERIA EXCLUSION (LIABILITY)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **Section II - Liability:**

**A.** The following exclusion is added to Paragraph **B.1., Exclusions - Applicable To Business Liability Coverage:**

**t.    Fungi or Bacteria**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following definition is added to Paragraph **F. Liability And Medical Expenses Definitions:**

**1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

    ©ISO Properties, Inc., 2004

BUSINESSOWNERS
BP 15 04 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM



**A.** Exclusion **B.1.q.** of **Section II - Liability** is replaced by the following:

This insurance does not apply to:

**q. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

**(1)** Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**B.** The following is added to Paragraph **B.1.p. Personal And Advertising Injury** Exclusion of **Section II - Liability:**

This insurance does not apply to:

**p. Personal And Advertising Injury**

"Personal and advertising injury":

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

POLICY NUMBER
**BZW   (20)   58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*

# General Endorsement

This Endorsement  Changes The Policy. Please Read it Carefully.

AMENDMENT OF CANCELLATION PROVISIONS
Any term or provision of the Cancellation
Conditions of the policy or any endorsment
amending or replacing such Conditions is amended
by the following:
A.  Our obligation to send notice to the person
organization listed in the Schedule below will
terminate at the earlier of the current policy
period expiration or when you no longer have a
legal or contractual obligation to such person
or organization to maintain insurance coverage
under a policy which requires that such person or
organization be notified in the event of
cancellation.
Name: Township of Randolph and The MCCPC, 502
Address: Millbrook Ave
Randolph, NJ 07869
Number of days advance notice: 30
Name: County of Essex Risk Management Department
Hall of Records/Room 510,465
Dr Martin Luther King Blvd
Newark, NJ 07102
Number of days advance notice: 30

*To report a claim,  call your Agent or 1-800-362-0000*

**BP 70 02 01 01**

**Page 1 of 2**

WAP 000125

POLICY NUMBER
**BZW   (20)   58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time*
*at Insured Mailing Location*

# General  Endorsement



---

*To report a claim,  call  your Agent or 1-800-362-0000*

**BP 70 02 01 01**

WAP 000126

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESSOWNERS PROPERTY EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Below is a summarization of the coverages provided by this endorsement. No coverages are given by this summary. Actual coverage descriptions are within this endorsement.

| SECTION | SUBJECT | LIMITS OF INSURANCE OR CHANGE IN CONDITION |
|---|---|---|
| A. | Business Personal Property | Legal Liability requirement deleted Extended to 1,000 feet of premises |
| | Undamaged Tenants Improvements And Betterments | Covered as Business Personal Property Loss Payment Valuation |
| | Leased Building Property | $ 5,000 |
| B. | Property Not Covered | Stained Glass |
| C. | Limitations | |
| | Fragile Articles Limitation | $ 5,000 All Covered Causes of Loss |
| D. | Additional Coverages broadened: | |
| | Preservation Of Property | 60 days |
| | Fire Department Service Charge | $ 15,000 |
| | Business Income - Ordinary Payroll Expense | |
| | Business Income - Newly Acquired Locations | $ 250,000 at each Newly Acquired Premises / 60 days |
| | Money Orders And Counterfeit Money | $ 10,000 |
| | Forgery Or Alteration | Same as Employee Dishonesty limit |
| | Increased Cost Of Construction | |
| | Business Income From Dependent Property | $ 50,000 or 30 days Actual Loss Sustained |
| | Glass Expenses | |
| | Fire Extinguisher Systems Recharge Expense | $ 15,000 |
| | Electronic Data | $ 25,000 |
| E. | Additional Coverages added: | |
| | Computer Equipment | $ 25,000 |
| | Employee Dishonesty | $ 25,000 |
| | Employee Tools | $ 25,000 |
| | Money And Securities | $ 10,000 on premises / $5,000 off-premises |
| | Off-premises Power Failure | $ 25,000 / 24 hours |
| | Ordinance Or Law | Included - Coverage 1 - Loss to the Undamaged Property |
| | | $ 150,000 |
| | | Coverage 2 - Demolition Cost Coverage |
| | | Coverage 3 - Increased Cost of Construction Coverage |
| | Outdoor Signs | $ 25,000 |
| | Reward | $ 10,000 |

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office Inc., with its permission.

**F.      Coverage Extensions broadened:**

Newly  Acquired  Or Constructed  Property

| | |
|---|---|
| Building | $1,000,000  up to 180 days |
|    Business  Personal  Property | $   500,000  up to 180 days |
| Personal  Property  Off-premises | $    25,000 |
| Outdoor  Property | All Covered  Causes Of Loss |
|    Fences, retaining  walls, radio and  television  antennas, trees and shrubs | $    25,000  aggregate<br>$     1,000  each tree, shrub  or plant |
| Personal  Effects | $    15,000 |
| Valuable  Papers And Records | $    25,000  on premises  / $10,000 off-premises |
| Accounts  Receivable | $    35,000  on premises  / $5,000 off-premises |

**G.      Coverage Extensions added:**

| | |
|---|---|
| Cellular  Phones - Coverage | $     1,000 |
| Fine Arts | $    10,000 |
| Lock Replacement | Actual  Loss Sustained |
| Loss Adjustment   Expenses | $     5,000 |
| Water  Back-up  And Sump  Overflow | $    25,000 |

**H.      Limits Of Insurance**

Coverages  in addition  to Limits  of Insurance

| | |
|---|---|
| Business  Personal  Property  Limit  - Seasonal  Increase | 33% |

**I.      Deductible**

No more  than $500 deductible

No deductible

| | |
|---|---|
| Deductible   - Cellular  Phones | $        50 |

**J.      Property  Loss Conditions**

Amendment   Loss Payment  Provision

| | |
|---|---|
| Brand And Labels | Included  in Business  Personal  Property  Limit |
| Consequential  Loss To Stock | Included  in Business  Personal  Property  Limit |

**K.      Property  Definitions**

Period  of Restoration

Fine Arts




© 2016 Liberty Mutual Insurance

**BP 79 19 09 16**        Includes copyrighted material of Insurance Services Office Inc., with its permission.

WAP 000128

**Page 2 of 18**

**Section I - Property** is amended as follows:

**A.** Paragraph **A.1.b. Business Personal Property** is replaced by the following:

    **b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 1,000 feet of the described premises, including:

        **(1)** Property you own that is used in your business;

        **(2)** Property of others that is in your care, custody or control, plus the cost of labor, materials or services furnished or arranged by you on personal property of others;

        Property of others coverage does not apply to Employee Tools except as provided under Section **E.** of this endorsement.

        **(3)** Tenants improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

            **(a)** Made a part of the building or structure you occupy but do not own; and

            **(b)** You acquire or made at your expense but cannot legally remove;

        **(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2)** ; and

        **(5)** Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

        **(6)** Undamaged tenants improvements and betterments.

            **(a)** Improvements and betterments coverage includes the portion of improvements and betterments not damaged in a covered loss.

            **(b)** We will pay for the portion of undamaged tenants improvements and betterments only if a minimum of six months is required to repair or rebuild the building for your occupancy, and only when your lease is cancelled:

                **(i)** By the lessor;

                **(ii)** By a valid condition of your lease; and

                **(iii)** Due to direct physical loss or damage by a Covered Cause of Loss to property at the premises stated in the Declarations.

        **(7)** Leased Building Property, including but not limited to, building or doors, at a premises where you are a tenant and are liable for such damage, unless coverage is otherwise provided for above in Paragraph **A.1.a. Covered Property - Buildings.** The most we will pay for loss or damage by a Covered Cause of Loss under this provision as respects leased Building Property is $5,000 in any one occurrence. This provision does not apply to exterior glass and semi-exterior glass (glass which is on the exterior of the insured premises, but which is interior to an enclosed structure, i.e., an enclosed shopping mall), including all lettering and ornamentation.

**B.** The following is added to Section **A.2. Property Not Covered:**

    Stained Glass except as provided under Paragraph **G.2. Fine Arts** of this endorsement.

**C.** Paragraph **A.4.b.(2) Limitations - Fragile articles** is replaced by the following:

    **(2)** We will not pay more than $5,000 for loss or damage to fragile articles such as glassware, statuary, marbles, chinaware and porcelain, if broken, unless caused by a Covered Cause of Loss or building glass breakage. This restriction does not apply to:

        **(a)** Glass that is part of the exterior or interior of a building or structure;

        **(b)** Containers of property while held for sale;

        **(c)** Photographic or scientific instrument lenses; or

        **(d)** Fine Arts Coverage Extension.

**D.** Section **A.5. Additional Coverages** is modified as follows:

    **1.** The 30 day limit shown in Paragraph **A.5.b.(2) Preservation of Property** is replaced by a 60 day limit.

    **2.** The $2,500 limit shown in Paragraph **A.5.c. Fire Department Service Charge** is replaced by a $15,000 limit.

    **3.** The 60 day limitation for ordinary payroll expense shown in Paragraph **A.5.f.(1)(b) Business Income** does not apply.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office Inc., with its permission.



**4.** The following is added to Paragraph **A.5.f. Business Income:**

**(5) Newly Acquired Locations**

**(a)** If this policy includes Business Income Coverage, you may extend your Business Income Coverage to apply to property at a location you acquire other than at fairs or exhibitions .

**(b)** The most we will pay for loss or damage under this Extension is $250,000 at each location in any one occurrence.

**(c)** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(i)** This policy expires;

**(ii)** 60 days expire after you acquire or begin to construct the property;

**(iii)** You report values to us; or

**(iv)** The property is more specifically insured.

**5.** The $1,000 limit shown in Paragraph **A.5.j. Money Orders And "Counterfeit Money"** is replaced by a $10,000 limit.

**6.** Paragraph **A.5.k.(4) Forgery Or Alteration** is replaced by the following:

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is the greater of $25,000 or an amount equal to the Limit of Insurance for Employee Dishonesty shown in the Declarations.

**7.** Paragraph **A.5.l. Increased Cost Of Construction** does not apply. Refer to Paragraph **E.6. - Ordinance Or Law Coverage** of this endorsement.

**8.** Paragraph **A.5.m. Business Income From Dependent Properties** is replaced by the following:

**(1)** We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss to dependent property or secondary dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property or secondary dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is the lesser of:

**(a)** $50,000; or

**(b)** 30 days actual loss sustained after direct loss or damage to the property.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operation" in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(4)** Dependent property means property owned by others whom you depend on to:

**(a)** Deliver materials or services to you, or to others for your account. But services does not mean water supply services, wastewater removal services, communication supply services, or power supply services;

**(b)** Accept your products or services;

**(c)** Manufacture your products for delivery to your customers under contract for sale; or

**(d)** Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

**(5)** Secondary dependent property means an entity which is not owned or operated by a dependent property and which;

**(a)** Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

    **(b)** Accepts materials or services from a dependent property, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

    **(i)** Water supply services;

    **(ii)** Wastewater removal services;

    **(iii)** Communication supply services; or

    **(iv)** Power supply services.

The secondary dependent property must be located in the coverage territory of this policy.

**(6)** The coverage period for Business Income under this Additional Coverage:

    **(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property or secondary dependent property; and

    **(b)** Ends on the date when the property at the premises of the dependent property or secondary dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(7)** The Business Income coverage period as stated in Paragraph **(5),** does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

    **(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

    **(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of " pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(8)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income from Dependent Properties Additional Coverage.

**9.** Paragraph **A.5.n. Glass Expenses** is replaced by the following:

We will pay for direct physical loss of or damage to glass, including lettering or ornamentation, which is part of or contained in a covered building or structure at the described premises. The glass must be owned by you, or owned by others but in your care, custody or control. We will also pay for necessary:

**(1)** Expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(2)** Repair or replacement of encasing frames; and

**(3)** Expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**10.** Paragraph **A.5.o. Fire Extinguisher Systems Recharge Expense** is replaced by the following:

**(1)** We will pay:

    **(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 1,000 feet of the described premises; and

    **(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $15,000 in any one occurrence.

**11.** The $10,000 limit shown in Paragraph **A.5.p.(3) Electronic Data** is replaced by a $25,000 limit.

**E.** The following is added to Section **A.5 Additional Coverages:**

  **1. Computer Equipment**

    **a.** We will pay for direct loss of or damage to Computer Equipment resulting from direct physical loss or damage by a Covered Cause of Loss at the premises described in the Declarations.

©  2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office Inc., with its permission.

**b.** The most we will pay for loss under this Additional Coverage is $25,000 in any one occurrence. Our payment will only be for the account of the owner of the computer equipment.

**2. Employee Dishonesty**



**a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

**(1)** Cause you to sustain loss or damage; and also

**(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

**(a)** Any employee; or

**(b)** Any other person or organization.

**b.** We will not pay for loss or damage:

**(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

**(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

**(a)** Whether acting alone or in collusion with other persons; or

**(b)** While performing services for you or otherwise.

**(3)** The only proof of which as to its existence or amount is:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

**(4)** Caused by an employee if the employee had also committed theft or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the employee, learned of that theft or dishonest act prior to the policy period shown in the Declarations.

**c.** The most we will pay for loss or damage in any one occurrence is:

**(1)** $25,000; or

**(2)** The Limit of Insurance for Employee Dishonesty shown in the Declarations;

whichever is greater.

**d.** All loss or damage:

**(1)** Caused by one or more persons; or

**(2)** Involving a single or series of related acts;

is considered one occurrence.

**e.** If any loss is covered:

**(1)** Partly by this insurance; and

**(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate has issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Additional Coverage is cancelled as to any employee immediately upon discovery by:

**(1)** You; or

**(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Additional Coverage, provided:

**(1)** This Additional Coverage became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss or damage would have been covered by this Additional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Additional Coverage and is limited to the lesser of the amount recoverable under:

**(1)** This Additional Coverage as of its effective date; or

**(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Additional Coverage Paragraph **E.2.** of this endorsement, employee means:

**(1)** Any natural person:

**(a)** While in your service or for 30 days after termination of service;

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent employee as defined in Paragraph **(1)** above, who is on leave; or

**(b)** To meet seasonal or short-term workload conditions;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

**(4)** Any natural person who is a former employee, director, partner, "member", "manager", representative or trustee retained as a consultant while performing services for you; or

**(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean;

**(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**k.** This Additional Coverage replaces Paragraph **G.3. Optional Coverages - Employee Dishonesty.**

**l.** Paragraph **B.2.f. Exclusions - Dishonesty** does not apply to coverage for employees as provided by this Additional Coverage.

**m.** **Theft Of Clients' Property Coverage**

**(1)** We will also pay for loss of or damage to "money", "securities" and "other property" which was located at your clients' premises, and your client owned, leased, or held for others at the time of loss or damage, resulting directly from theft committed by any of your employees, acting alone or in collusion with other persons.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization, including your client. Any claim for loss that is covered under this coverage must be presented by you.

**(2)** The most we will pay for covered loss or damage under this Additional Coverage is $5,000, unless a higher Theft of Clients' Property Coverage Limit of Insurance is shown in the Declarations.

**(3)** We will not pay for any covered loss or damage until the amount of covered loss or damage exceeds $250 in any one occurrence. We will then pay the amount of covered loss or damage in excess of this deductible amount up to the applicable Limit of Insurance. No other deductible applies to this Theft of Clients' Property Coverage.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office Inc., with its permission.

(4) As used in the Theft Of Clients' Property Coverage, "other property" means any tangible property other than "money" and "securities " that has intrinsic value, but does not include any property described under subparagraphs **a., c., d., f., h.** and **i.** of Section **A.2. Property Not Covered.**

**3. Employee Tools**

We will pay for loss of or damage to tools owned by your employees located on the described premises or in transit resulting from a Covered Caused of Loss.

The most we will pay for loss under this Additional Coverage is $25,000 or the Limit of Insurance shown in the Declarations in any one occurrence. Our payment will only be for the account of the owner of the tools.

**4. Money And Securities**

**a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee (including a temporary or leased employee) having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

(1) Theft, meaning any act of stealing;

(2) Disappearance; or

(3) Destruction.

**b.** In addition to the limitations and exclusions applicable to **Section I - Property** , we will not pay for loss:

(1) Resulting from accounting or arithmetical errors or omissions;

(2) Due to the giving or surrendering of property in any exchange or purchase; or

(3) Of property contained in any "money" operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**c.** The most we will pay for loss in any one occurrence is:

(1) $10,000 for Inside the Premises for "money" and "securities" while:

(a) In or on the described premises; or

(b) Within a bank or savings institution; and

(2) $5,000 for Outside the Premises for "money" and "securities" while anywhere else; or

(3) The Limit of Insurance for Money And Securities shown in the Declarations;

whichever is greater.

**d.** All loss:

(1) Caused by one or more persons; or

(2) Involving a single act or series of related acts;

is considered one occurrence.

**e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**f.** This Additional Coverage replaces Paragraph **G.2. Optional Coverages - Money And Securities.**

**5. Off-premises Power Failure**

We will pay up to $25,000 for loss of Business Income and Extra Expense caused by the failure of power or other utility service supplied to the described premises if the failure occurs away from the described premises.

The failure of power or other utility service must result from direct physical loss or damage by a Covered Cause of Loss.

We will only pay for loss you sustain after the first 24 hours following the direct physical loss to the off-premises property.

**6. Ordinance Or Law Coverage**

**a.** The following Additional Coverages apply only to covered buildings written on a replacement cost basis.

**b. Application Of Coverage(s)**

The Additional Coverage for Ordinance Or Law provided by this endorsement applies only if both **6.b.(1)** and **6.b.(2)** are satisfied and are then subject to the qualifications set forth in **6.b.(3).**


© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office Inc., with its permission.

**(1)** The ordinance  or law:

    **(a)** Regulates the demolition,  construction  or repair of buildings  or tenants  improvements and betterments,  or establishes  zoning or land use requirements  at the described premises;  and

    **(b)** Is in force at the time of loss.

    But coverage applies only in response to the minimum  requirements  of the ordinance or law. Losses and costs incurred in complying  with recommended  actions or standards that exceed actual requirements  are not covered.

**(2)** The building  or tenants  improvements  and betterments  sustain direct physical damage:

    **(a)** That is covered  under this policy and as a result of such damage, you are required  to comply  with the ordinance  or law; or

    **(b)** That is covered  under this policy and direct physical damage that is not covered  under this policy,  and as a result of the building  or tenants  improvements  and betterments damage in its entirety,  you are required  to comply  with the ordinance  or law.

    **(c)** But if the damage  is not covered  under this policy,  and such damage  is the subject of the ordinance  or law, then there is no coverage  under this endorsement  even if the building  or tenants  improvements  and betterments  has also sustained  covered  direct physical  damage.

**(3)** In the situation  described  in **6.b.(2)(b)** above, we will  not pay the full amount  of loss otherwise  payable under the terms of Coverages  **1, 2** and/or  **3** of this endorsement.  Instead, we will  pay a proportion  of such loss, meaning the proportion  that the covered  direct physical  damage  bears to the total direct  physical  damage.

However,  if the covered  direct physical  damage  alone  would  have resulted  in a require- ment  to comply  with the ordinance  or law, then we will  pay the full amount  of loss otherwise  payable  under terms of Coverages  **1, 2** and/or  **3.**

**c.** We will  not pay under Coverages  **1, 2** or **3** for:

    **(1)** Enforcement  of or compliance  with any ordinance  or law which  requires the demolition, repair, replacement,  reconstruction,  remodeling  or remediation  of property  due to con- tamination  by "pollutants"  or due to the presence, growth, proliferation,  spread of any activity of "fungi",  wet rot or dry rot; or

    **(2)** The costs associated  with the enforcement  of or compliance  with any ordinance  or law which  requires any insured  or others to test for, monitor,  clean up, remove, contain  treat, detoxify  or neutralize,  or in any way respond  to, or assess the effects of "pollutants", "fungi",  wet rot or dry rot.

**d.** **Coverage**

    **(1)** **Coverage  1 - Coverage  For Loss To The Undamaged  Portion Of The Building  or Tenants Improvements  And Betterments**

    With respect to the building  or tenants  improvements  and betterments  that has sustained covered  direct physical  damage, we will  pay under Coverage  **1** for the loss in value of the undamaged  portion  of the building  or tenants  improvements  and betterments  as a con- sequence  of a requirement  to comply  with an ordinance  or law that requires demolition  of undamaged  parts of the same building  or tenants  improvements  and betterments.  Cov- erage **1** is included  within  the Limit of Insurance shown in the Declarations  as applicable  to the covered  building.  Coverage  **1** does not increase the Limit of Insurance.

    **(2)** **Coverage  2 - Demolition  Cost Coverage**

    With respect to the building  that has sustained  covered  direct physical  damage, we will pay the cost to demolish  and clear the site of undamaged  parts of the same building,  as a consequence  of a requirement  to comply  with an ordinance  or law that requires demolition of such undamaged  property.

    Paragraph  **E.5.d. Loss Payment  - Property  Loss Condition**  does not apply to **Demolit ion Cost Coverage.**

    **(3)** **Coverage  3 - Increased  Cost Of Construction  Coverage**

    With respect to the building  that has sustained  covered  direct physical  damage, we will pay the increased  cost to:

    **(a)** Repair or reconstruct  damaged portions  of that building;  and/or

© 2016 Liberty Mutual Insurance
Includes copyrighted  material of Insurance Services Office Inc., with its permission.

**(b)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**(a)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(b)** We will not pay the increased cost of construction if the building is not repaired, reconstructed or remodeled.

Paragraph **E.5.d. Loss Payment** Property Loss Condition does not apply to the **Increased Cost Of Construction Coverage.**

**e.  Loss Payment**

**(1)** Loss payment Provisions **e.(2)** and **e.(3)** below, are subject to the apportionment procedure set forth in Paragraph **6.b.(3)** above.

**(2)** When there is a loss in value of an undamaged portion of a building or tenants improvements and betterments to which Coverage **1** applies, the loss payment for that building or tenants improvements and betterments, including damaged and undamaged portions, will be determined as follows:

**(a)** If the property is repaired or replaced on the same or another premises, we will not pay more than the lesser of:

**(i)** The amount you actually spend to repair, rebuild or reconstruct the building or tenants improvements and betterments, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**(ii)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(b)** If the property is not repaired or replaced, we will not pay more than the lesser of:

**(i)** The actual cash value of the building at the time of loss; or

**(ii)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(iii)** If the tenants improvements and betterments are not repaired or replaced, we will pay based on a proportion of your original cost of the tenants improvements and betterments. We will determine the proportionate value as follows:

**i.** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**ii.** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in the procedure.

**(3)** For Coverage **2** - Demolition Cost Coverage and Coverage **3** - Increased Cost Of Construction Coverage, the most we will pay at each described premises for the total of all covered losses is:

**(a)** $150,000; or

**(b)** The Limit of Insurance for Demolition Cost Coverage and Increased Cost Of Construction Coverage shown in the Declarations;

whichever is greater.

The Limit of Insurance for Demolition Cost Coverage and Increased Cost Of Construction Coverage described in Paragraph **e.(3)** above, is subject to the following additional loss payment provisions:

**(a)** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.



**(b)** With respect to the Increased Cost Of Construction:

    **(i)** We will not pay for the increased cost of construction:

        **i.** Until the property is actually repaired or replaced, at the same or another premises; and

        **ii.** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    **(ii)** If the building or tenants improvements and betterments are repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost Of Construction is the lesser of:

        **i.** The increased cost of construction at the same premises; or

        **ii.** The applicable Demolition Cost and Increased Cost of Construction Limit of Insurance described in Paragraph **e.(3)** above.

    **(iii)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost Of Construction is the lesser of:

        **i.** The increased cost of construction at the new premises; or

        **ii.** The applicable Demolition Cost and Increased Cost Of Construction Limit of Insurance described in Paragraph **e.(3)** above.

**f.** The terms of this Additional Coverage apply separately to each building to which this endorsement applies.

**g.** Under this endorsement, we will not pay for loss due to any ordinance or law that:

    **(1)** You were required to comply with before the loss, even if the building was undamaged; and

    **(2)** You failed to comply with.

**h.** Example of Proportionate Loss Payment for Ordinance Or Law Coverage Losses (procedure as set forth in Paragraph **6.b.(3)** above).

Assume:

- Wind is a Covered Cause of Loss. Flood is an excluded Cause of Loss;
- The building has a value of $200,000;
- Total direct physical damage to building: $100,000;
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value;
- Portion of direct physical damage that is covered (caused by wind): $30,000;
- Portion of direct physical damage that is not covered (caused by flood): $70,000; and
- Loss under Ordinance Or Law Coverage **3** of this endorsement: $60,000.

Step **1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 divided by $100,000 = .30

Step **2:** Apply that proportion to the Ordinance Or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for Coverage **3** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**NOTE:** The same procedure applies to losses under Coverage **1** and **2** of this endorsement.

**7. Outdoor Signs**

**a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

    **(1)** Owned by you; or

    **(2)** Owned by others but in your care, custody or control.

**b.** Section **A.3. Covered Causes of Loss** and Section **B. Exclusions** do not apply to this Additional Coverage, except for:

    **(1)** Paragraph **B.1.c. Governmental Action;**

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office Inc., with its permission.

         **(2)**  Paragraph **B.1.d. Nuclear Hazard;** and

         **(3)**  Paragraph **B.1.f. War And Military Action.**

    **c.**  We will not pay for loss or damage caused by or resulting from:

         **(1)**  Wear and tear;

         **(2)**  Hidden or latent defect;

         **(3)**  Rust;

         **(4)**  Corrosion; or

         **(5)**  Mechanical breakdown.

    **d.**  The most we will pay for loss or damage in any one occurrence is:

         **(1)**  $25,000; or

         **(2)**  The Limit of Insurance for Outdoor Signs shown in the Declarations;

         whichever is greater.

    **e.**  This Additional Coverage replaces Paragraph **G.1. Optional Coverages - Outdoor Signs.**

    **f.**  Paragraph **C.2. Limits Of Insurance** does not apply to this Additional Coverage.

**8.**  **Reward**

We will pay up to $10,000 as a reward for information which leads to a conviction in connection with a fire loss or theft loss covered under this policy. Regardless of the number of persons involved in providing information, the limit of our liability under this Additional Coverage shall not be increased.

**F.**  Section **A.6. Coverage Extensions** is modified as follows:

    **1.**  Paragraph **A.6.a Newly Acquired Or Constructed Property** is replaced by the following:

         **(1)**  **Buildings**

         If this policy covers Buildings, you may extend that insurance to apply to:

         **(a)**  Your new buildings while being built on the described premises; and

         **(b)**  Buildings you acquire at premises other than the one described, intended for:

            **(i)**  Similar use as the building described in the Declarations; or

            **(ii)**  Use as a warehouse.

         The most we will pay for loss or damage under this Extension is $1,000,000 at each building.

         **(2)**  **Business Personal Property**

         If this policy covers Business Personal Property, you may extend that insurance to apply to:

         **(a)**  Business Personal Property, including such property that you newly acquire, at any location you acquire;

         **(b)**  Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

         **(c)**  Business Personal Property that you newly acquire, located at the described premises.

         This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

         The most we will pay for loss or damage under this Extension is $500,000 at each building.

         **(3)**  **Period Of Coverage**

         With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

         **(a)**  This policy expires;

         **(b)**  180 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

         **(c)**  You report values to us.

         We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.



2. Paragraph **A.6.b. Personal Property Off-premises** is replaced by the following:

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $25,000.

The above Limit does not include Employee Tools. Refer to Paragraph **E.3. Additional Coverages - Employee Tools** of this endorsement for specific coverage.

3. Paragraph **A.6.c. Outdoor Property** is replaced by the following:

You may extend the insurance provided by this policy to apply to your outdoor fences and retaining walls; radio or television antennas (including satellite dishes), including their lead-in wiring, masts, or towers; trees, shrubs and plants, including debris removal expense, caused by or resulting from a Covered Cause of Loss.

The most we will pay for loss or damage under this Extension is $25,000 but not more than $1,000 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

4. Paragraph **A.6.d. Personal Effects** is replaced by the following:

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees, including temporary or leased employees. This extension does not apply to:

**(1)** Tools or equipment used in your business except as provided by Paragraph **E.3. Additional Coverages - Employee Tools** of this endorsement; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $15,000 at each described premises.

5. Paragraph **A.6.e.(3) Valuable Papers And Records** is replaced by the following:

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is the lesser of 25% of the Valuable Papers And Records Limit of Insurance described above, or $10,000.

6. Paragraph **A.6.f.(2) Accounts Receivable** is replaced by the following:

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $35,000, unless a higher Limit of Insurance for Accounts Receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**G.** The following are added to Section **A.6. Coverage Extensions:**

1. **Cellular Phones And Personal Digital Assistant (PDA)**

**a.** The most we will pay for loss or damage to Cellular Phones, PDA's and similar hand-held wireless communication devices is $1,000.

**b.** A $50 per occurrence deductible applies to this Coverage Extension. This deductible does not increase the amount of the deductible shown in the Declarations and will be used to satisfy the requirements of the deductible shown in the Declarations.

2. **Fine Arts**

You may extend the insurance which applies to Your Business Personal Property to apply to "fine arts" that are:

**a.** Property you own that is used in your business; or

**b.** Property of others that is in your care, custody or control.

The most we will pay for loss or damage under this Coverage Extension is $10,000 at each described premises; or the Limit of Insurance for Fine Arts shown in the Declarations; whichever is greater.

In the event of loss or damage to property covered under this Extension, we will pay the market value of the property at the time of loss or damage.

© 2016 Liberty Mutual Insurance

**BP 79 19 09 16**    Includes copyrighted material of Insurance Services Office Inc., with its permission.

Section **B. Exclusions** does not apply to this Coverage Extension except for:

**a.** Paragraph **B.1.c. Governmental Action;**

**b.** Paragraph **B.1.d. Nuclear Hazard;**

**c.** Paragraph **B.1.f. War And Military Action;**

**d.** Paragraph **B.2.f. Dishonesty;**

**e.** Paragraph **B.2.g. False Pretense;** and

**f.** Paragraph **B.2.k. Neglect.**

**3. Lock Replacement**

You may extend the insurance provided by this policy to apply to the cost to repair or replace the door locks or tumblers of your described premises due to theft of your door keys.

**4. Loss Adjustment Expenses**

You may extend the insurance provided by this policy to apply to your expenses for preparation of loss data, including inventories and appraisals, in connection with any claim covered under this policy. This Coverage Extension will not pay for expenses incurred insuring the services of a public adjuster.

The most we will pay under this Coverage Extension is $5,000.

**5. Water Back-up And Sump Overflow**

**a.** You may extend the insurance provided by this policy to apply to direct physical loss or damage to your covered property caused by or resulting from:

**(1)** Water or waterborne material which backs up into a building or structure through sewers or drains contained within a building which are directly connected to a sanitary sewer or septic system; or

**(2)** Water or waterborne material which enters into or overflows from a sump, sump pump or related equipment, provided that it is located in a building and designed to remove subsurface water which is drained from the foundation area, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

However, with respect to Paragraph **(2)** above, we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

**b.** The coverage described in Paragraph **a.** above does not apply to loss or damage resulting from an insured's failure to:

**(1)** Keep a sump pump or its related equipment in proper working condition; or

**(2)** Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

**c.** The most we will pay for the coverage provided under the Water Back-up And Sump Overflow Coverage Extension is $25,000 per location.

**d.** We will not, however, pay for any loss or damage that results from water or other materials that back up, overflow, or are discharged from a sewer, drain, sump, sump pump or related equipment when it is caused directly or indirectly by any flood, whether the flood is caused by an act of nature or is otherwise caused. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**H.** Section **C. Limits Of Insurance** is modified as follows:

**1.** Paragraph **C.3.** is replaced by the following:

**3.** Unless otherwise stated, the amounts of insurance applicable to the Coverage Extensions, and the following Additional Coverages listed below, are in addition to the Limits of Insurance:

**a.** Computer Equipment;

**b.** Employee Dishonesty;

**c.** Employee Tools;

**d.** Fire Department Service Charge;

**e.** Fire Extinguisher Systems Recharge Expense;

**f.** Forgery Or Alteration;

**g.** Money And Securities;





    **h.**  Money Orders And "Counterfeit Money";

    **i.**  Off-premises Power Failure;

    **j.**  Ordinance Or Law Coverage;

    **k.**  Pollutant Clean Up And Removal; and

    **l.**  Reward.

**2.** Paragraph **C.5.a. Business Personal Property Limit - Seasonal Increase** is replaced by the following:

    **a.**  The Limit of Insurance for Business Personal Property will automatically increase by 33% to provide for seasonal variations.

**I.** Paragraphs **D.2.** and **D.3. Deductibles** are replaced by the following:

**2.** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage is $500 in any one occurrence under the following Additional Coverages:

    **a.**  Employee Dishonesty;

    **b.**  Forgery Or Alteration;

    **c.**  Money Orders And "Counterfeit Money";

    **d.**  Money And Securities; or

    **e.**  Outdoor Signs.

But this $500 deductible will not increase the deductible shown in the Declarations. This deductible will be used to satisfy the requirements of the deductible in the Declarations.

**3.** No deductible applies to the following:

    **a.**  Additional Coverages:

        **(1)**  Business Income;

        **(2)**  Civil Authority;

        **(3)**  Extra Expense;

        **(4)**  Fire Department Service Charge;

        **(5)**  Fire Extinguisher Systems Recharge Expense;

        **(6)**  Off-premises Power Failure;

        **(7)**  Reward; or

    **b.**  Coverage Extensions:

        **(1)**  Lock Replacement; or

        **(2)**  Loss Adjustment Expenses.

    **c.**  A $50 per occurrence deductible applies to Cellular Phone Coverage, but this $50 per occurrence deductible will not increase the deductible shown in the Declarations. This deductible will be used to satisfy the requirements of the deductible in the Declarations.

**J.** Section **E. Property Loss Conditions** is modified as follows:

**1.** Paragraph **E.5. Loss Payment** is replaced by the following:

In the event of loss or damage covered by this policy:

    **a.**  At our option, we will either:

        **(1)**  Pay the value of lost or damaged property;

        **(2)**  Pay the cost of repairing or replacing the lost or damaged property;

        **(3)**  Take all or any part of the property at an agreed or appraised value; or

        **(4)**  Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(a)** below.

    **b.**  We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

    **c.**  We will not pay you more than your financial interest in the Covered Property.

    **d.**  Except as provided in Paragraphs **(2)** through **(8)** below, we will determine the value of Covered Property as follows:

        **(1)**  At replacement cost without deduction for depreciation, subject to the following:

            **(a)**  We will not pay more for loss or damage on a replacement cost basis than the least of:

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office Inc., with its permission.

**BP 79 19 09 16**                                 WAP 000141   **Page 15 of 18**

**(i)** The Limit of Insurance under **Section I - Property** that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

    **i.** Of comparable material and quality; and

    **ii.** Used for the same purpose; or

**(iii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**(b)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(c)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraph **d.(1)(a)** whether or not the actual repair or replacement is complete.

**(d)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Actual Cash Value - Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or second-hand merchandise held in storage or for sale;

**(b)** Household contents, except personal property in apartments or rooms furnished by you as landlord; or

**(c)** Manuscripts.

**(4)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac at market value at the time of loss.

**(5)** Glass at the cost of replacement with safety glazing material if required by law.

**(6)** Tenants improvements and betterments and/or undamaged tenants improvements and betterments at:

**(a)** The cost to repair or replace on the same or another site if you make repairs promptly;

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(7)** Applicable only to coverage for Money And Securities:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(8)** Applicable only to Accounts Receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to re-establish or collect;

**(iii)** An amount to allow for probably bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**e.** Our payment for loss or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all the terms of this policy, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**2.** The following are added to Paragraph **E.5. Loss Payment:**

**a. Brands And Labels**

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, and we take all or part of the property at an agreed or appraised value, you may extend the insurance that applies to Business Personal Property to pay expenses you incur to:

**(1)** Stamp salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**(2)** Remove the brands and labels, if doing so will not physically damage the merchandis e or its containers to comply with the law.

Payment of these expenses is included within the applicable Limit of Insurance.

**b. Consequential Loss To Stock**

If a Covered Cause of Loss occurs to covered "stock", we will pay any reduction in value of the remaining undamaged parts of covered "stock".

Payment for any reduced value in "stock" is included within the applicable Limit of Insurance.

**K.** Section **H. Property Definitions** is modified as follows:

**1.** Paragraph **H.9.** "Period of restoration" is replaced by the following:

**a.** Means the period of time that:

**(1)** Begins:

**(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office Inc., with its permission.

**BP 79 19 09 16**

WAP 000143

**Page 17 of 18**

      **(2)** Ends on the earlier of:

          **(a)** The date when your business activities at the described premises return to the level that existed immediately before the loss; but in no event for more than 30 days after the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

          **(b)** The date when business is resumed at a new permanent location.

   **b.** Does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

      **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

**2.** With respect to this endorsement, the following is added to Section **H. Property Definitions:**

"Fine Arts" means paintings, etchings, pictures, tapestries, art or stained glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glass, bric-a-brac, sports memorabilia and any other similar property of rarity, historic value or artistic merit.



© 2016 Liberty Mutual Insurance

**BP 79 19 09 16**    Includes copyrighted material of Insurance Services Office Inc., with its permission.    WAP 000144    **Page 18 of 18**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF POLLUTION EXCLUSION
## (PREMISES)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**1.** The following exception is added to Exclusion B.1.f. Pollution in Section II - Liability:

Subparagraph (a) of Paragraph (1) does not apply to "bodily injury" or to "property damage" to tangible property arising out of the actual discharge, dispersal, seepage, migration, release or escape of "pollutants" if the actual discharge, dispersal, seepage, migration, release or escape:

**(a)** begins on a clearly identifiable specific day during the policy period and ends in its entirety not later than seventy-two (72) hours thereafter;

**(b)** is discovered and reported to us within fifteen (15) days of the specific day it begins;

**(c)** is neither expected nor intended from the standpoint of any insured;

**(d)** is unrelated to any previous discharge, dispersal, seepage, migration, release or escape; and

**(e)** does not originate at or from a storage tank or other container, duct or piping which is below the surface of the ground or water or which at any time has been buried under the surface of the ground or water and then is subsequently exposed by erosion, excavation or any other means.

Tangible property, as used in this endorsement, does not include land or water, which is below ground level or not.

Coverage provided hereunder does not apply to any discharge, dispersal, seepage, migration, release or escape that is merely threatened or alleged rather than shown to have actually occurred.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BUSINESSOWNERS
BP 79 96 09 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESSOWNERS  LIABILITY EXTENSION  ENDORSEMENT

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

Below  is a summarization  of  the coverages  provided  by this endorsement.  No coverages  are given by  this summary.  Actual coverage  descriptions  are within  this endorsement.

| SECTION | SUBJECT |
|---|---|
| **A.** | Supplementary  Payments<br>Bail  Bonds<br>Loss Of Earnings |
| **B.** | Broadened  Coverage For Damage  To Premises  Rented  To You |
| **C.** | Incidental  Medical  Malpractice  Injury |
| **D.** | Mobile  Equipment |
| **E.** | Blanket  Additional  Insured  (Owners,  Contractors  Or Lessors) |
| **F.** | Newly  Formed  Or Acquired  Organizations |
| **G.** | Aggregate  Limits |
| **H.** | Duties  In The Event  Of Occurrence,  Offense,  Claim  Or Suit |
| **I.** | Liability  And Medical  Expenses  Definitions<br>Bodily  Injury<br>Insured  Contract<br>Personal  And Advertising  Injury |

**Section II - Liability**  is amended  as follows:

**A. Supplementary  Payments**

Section  **A.1. Business Liability**  is modified  as follows:

1.  The $250 limit  shown in Paragraph  **A.1.f.(1)(b) Coverage Extension - Supplementary  Payments**  for the cost of bail bonds  is replaced  by a $3,000 limit.

2.  The $250 limit  shown  in Paragraph  **A.1.f.(1)(d) Coverage Extension - Supplementary  Payments**  for reasonable  expenses  and loss of earnings  is replaced  by a $500 limit.

**B. Broadened Coverage For Damage To Premises Rented To You**

1.  The last paragraph  of Section  **B.1. Exclusions - Applicable  To Business Liability Coverage**  is replaced by the following:

With  respect  to the premises  which  are rented  to you or temporarily  occupied  by you with the permission  of the owner,  Exclusions  **c., d., e., g., h., k., l., m., n.** and **o.** do not apply to "property  damage".

©  2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2. Paragraph **D.2. Liability And Medical Expenses Limits Of Insurance** is replaced by the following:

   The most we will pay under this endorsement for the sum of all damages because of all "property damage" to premises while rented to you or temporarily occupied by you with the permission of the owner is the Limit of Insurance shown in the Declarations.

3. Paragraph **D.3. Liability And Medical Expenses Limits Of Insurance** does not apply.

**C. Incidental Medical Malpractice Injury**

1. Paragraph **(4)** under Paragraph **B.1.j. Exclusions - Applicable To Business Liability Coverage - Professional Services** does not apply to "Incidental Medical Malpractice Injury" coverage.

2. With respect to this endorsement, the following is added to Section **F. Liability And Medical Expenses Definitions:**

   a. "Incidental Medical Malpractice Injury" means bodily injury arising out of the rendering of or failure to render, during the policy period, the following services:

      (1) Medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

      (2) The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

   b. This coverage does not apply to:

      (1) Expenses incurred by the insured for first-aid to others at the time of an accident and the Duties in the Event of Occurrence, Offense, Claim or Suit Condition is amended accordingly.

      (2) Any insured engaged in the business or occupation of providing any of the services described under **a.** above.

      (3) Injury caused by any indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described under **a.** above.

**D. Mobile Equipment**

Section **C. Who Is An Insured** is amended to include any person driving "mobile equipment" with your permission.

**E. Blanket Additional Insured (Owners, Contractors Or Lessors)**

1. Section **C. Who Is An Insured** is amended to include as an insured any person or organization whom you are required to name as an additional insured on this policy under a written contract or written agreement. The written contract or agreement must be:

   a. Currently in effect or becoming effective during the term of this policy; and

   b. Executed prior to the "bodily injury", "property damage", or "personal and advertising injury".

2. The insurance afforded to the additional insured is limited as follows:

   a. The person or organization is only an additional insured with respect to liability arising out of:

      (1) Real property, as described in a written contract or written agreement, you own, rent, lease, maintain or occupy; and

      (2) Caused in whole or in part by your ongoing operations performed for that insured.

   b. The Limit of Insurance applicable to the additional insured are those specified in the written contract or written agreement or the limits available under this policy, as stated in the Declarations, whichever are less. These limits are inclusive of and not in addition to the Limit of Insurance available under this policy.

   c. The insurance afforded to the additional insured does not apply to:

      (1) Liability arising out of the sole negligence of the additional insured;

      (2) "Bodily injury", "property damage", "personal and advertising injury", or defense coverage under the Supplementary Payments section of the policy arising out of an architect's, engineer's or surveyor's rendering of or failure to render any professional services including:

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(a)** The preparing or approving of maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

**(b)** Supervisory, inspection, architectural or engineering activities.

**(3)** Any "occurrence" that takes place after you cease to be a tenant in the premises described in the Declarations; or

**(4)** Structural alterations, new construction or demolition operations performed by or for the person or organization designated in the Declarations.

**3.** Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be primary or you request that it apply on a primary basis.

**F. Newly Formed Or Acquired Organizations**

The following is added to Section **C. Who Is An Insured:**

Any business entity acquired by you or incorporated or organized by you under the laws of any individual state of the United States of America over which you maintain majority ownership interest exceeding fifty percent. Such acquired or newly formed organization will qualify as a Named Insured if there is no similar insurance available to that entity. However:

**1.** Coverage under this provision is afforded only until the 180th day after the entity was acquired or incorporated or organized by you or the end of the policy period, whichever is earlier;

**2.** Section **A.1. Business Liability** does not apply to:

**a.** "Bodily injury" or "property damage" that occurred before the entity was acquired or incorporated or organized by you; and

**b.** "Personal and advertising injury" arising out of an offense committed before the entity was acquired or incorporated or organized by you.

**3.** Records and descriptions of operations must be maintained by the first Named Insured.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**G. Aggregate Limits**

The following is added to Paragraph **D.4. Aggregate Limits** Liability and Medical Expenses Limits Of Insurance:

**1.** The Aggregate Limits apply separately to each of the "locations" owned by or rented to you or temporarily occupied by you with the permission of the owner.

**2.** The Aggregate Limits also apply separately to each of your projects away from premises owned by or rented to you.

For the purpose of this endorsement only, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**H. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**1.** Paragraph **E.2.a. Duties In The Event Of Occurrence, Offense, Claim Or Suit** Liability And Medical Expenses General Condition applies only when the "occurrence" is known to any insured listed in Paragraph **C.1. Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim.

**2.** Paragraph **E.2.b. Duties In The Event Of Occurrence, Offense, Claim Or Suit** Liability And Medical Expenses General Condition will not be considered breached unless the breach occurs after such claim or "suit" is known to any insured listed under Paragraph **C.1. Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.   WAP 75

**I.**   Section **F. Liability And Medical Expenses Definitions** is modified  as follows:

**1.**   Paragraph **F.3.** is replaced  by the following:

   **3.**   "Bodily  Injury"  means bodily injury, sickness, disease, or incidental  medical malpractice  injury sustained  by a person,  and includes  mental anguish resulting  from  any of these;  and including death resulting  from  any of these at any time.

**2.**   Paragraph **F.9.** is replaced  by the following:

   **9.**   "Insured  contract"  means:

      **a.**   A contract  for a lease of premises.  However,  that portion  of the contract  for a lease of prem-ises that indemnifies  any person or organization  for damage by fire to premises while rented to you or temporarily  occupied  by you with  permission  of the owner is not an "insured  contract";

      **b.**   A sidetrack  agreement;

      **c.**   Any easement  or license  agreement,  except in connection  with  construction  or demolition operations  on or within  50 feet of a railroad;

      **d.**   An obligation,  as required by ordinance, to indemnify  a municipality,  except in connection with  work  for a municipality;

      **e.**   An elevator  maintenance  agreement;

      **f.**   That part of any other  contract  or agreement  pertaining  to your business (including  an indem-nification  of a municipality  in connection  with work performed  for a municipality)  under which you assume the tort liability  of another party to pay for "bodily  injury"  or "property  damage" to a third  person or organization,  provided  the "bodily  injury"  or "property  damage"  is caused, in whole or in part, by you or by those acting on your behalf. However,  such part of a contract  or agreement  shall only be considered  an "insured  contract"  to the extent your assumption  of the tort liability  is permitted  by law. Tort liability  means a liability  that would  be imposed  by law in the absence of any contract  or agreement.

       Paragraph **f.** does not include  that part of any contract  or agreement:

      **(1)**   That indemnifies  a railroad for "bodily  injury"  or "property  damage" arising out of con-struction  or demolition  operations,  within  50 feet of any railroad property  and affecting any railroad  bridge  or trestle, tracks, road-beds,  tunnel,  underpass  or crossing;

      **(2)**   That indemnifies  an architect,  engineer  or surveyor  for injury  or damage arising out of:

         **(a)**   Preparing,  approving,  or failing  to prepare or approve, maps, shop drawings,  opin-ions, reports, surveys,  field orders, change orders or drawings  and specifications;  or

         **(b)**   Giving  directions  or instructions,  or failing  to give them, if that is the primary  cause of the injury  or damage; or

      **(3)**   Under which  the insured,  if an architect,  engineer  or surveyor,  assumes liability  for an injury  or damage arising out of the insured's  rendering  or failure to render professional services,  including  those listed in **(2)** above and supervisory,  inspection,  architectural  or engineering  activities.

**3.**   Paragraph **F.14.b. Personal And Advertising  Injury** is replaced  by the following:

   **b.**   Malicious  prosecution  or abuse of process;

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 79 96 09 16**                                                                                                               WAP **Page 4 of 4**

BUSINESSOWNERS
BP 80 60 01 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PEAK SEASON ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM



**Section I - Property** is amended as follows:

Part C. Limits of Insurance, Paragraph 5.a., Business Personal Property - Seasonal Increase, is replaced by the following:

**a.** The Limit of Insurance for Business Personal Property - Seasonal Increase will automatically increase by 100% to provide for seasonal variations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997, 2004

BP 80 60 01 07

WAP 000150

**BUSINESSOWNERS**
**BP 81 15 03 11**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Section II - Liability is amended as follows:

This insurance does not apply to:

"Bodily injury", "property damage", or "personal and advertising injury" arising out of or related in any way to asbestos or asbestos -containing materials.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section I - Property** is amended as follows:

**A.** The following is added to Paragraph **A.5 Additional Coverages:**

**Equipment Breakdown Additional Coverages**



**1.** We will pay for direct physical damage to Covered Property that is a direct result of an "accident" to "covered equipment".

**2.** The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations. Coverage provided under this endorsement does not increase and is not in addition to any other Limit of Insurance.

**3.** The following coverages also apply to the direct result of an "accident". These coverages do not provide additional limits of insurance.

    **a.** **Expediting Expenses**

    With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

    **(1)** Make temporary repairs; and

    **(2)** Expedite permanent repairs or replacement.

    Reasonable extra cost shall mean the extra cost of temporary repair and of expediting the repair of such damaged equipment of the insured, including overtime and the extra cost of express or other rapid means of transportation.

    **b.** **Hazardous Substances**

    We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance". This includes the additional expense to clean up or dispose of such property.

    This does not include contamination of "perishable goods" by a refrigerant, including ammonia, which is addressed in **2.d** below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

    The most we will pay for under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur is $50,000.

    **c.** **Spoilage**

    We will pay for physical damage to "perishable goods" due to spoilage. The spoilage damage must be due to the lack of or excess of power, light, heat, steam or refrigeration caused by an "accident" to "covered equipment" covered by this policy.

    We will also pay any necessary expense you incur to reduce the amount of loss under this coverage. We will pay such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

    Loss payment will be in accordance with Loss Payment provisions of the Property Loss Conditions of the policy. However, if you are unable to replace "perishable goods" before the anticipated sale date of such goods had no loss occurred, the amount of our payment will be determined on the basis of the sale price of "perishable goods" at the time of the "accident" less discounts and expenses you would normally incur.

The most we will pay for loss, damage or expense under this coverage is $50,000.

**d. Ammonia Contamination**

The physical damage to Covered Property due to the contamination from the release of ammonia, including any salvage expense.

The most we will pay for loss or damage under this coverage is $50,000.

**f. Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost "electronic data".

The most we will pay for loss or expense under this coverage, including the actual loss of Business Income you sustain and necessary Extra Expense you incur is $50,000.

**g. Service Interruption**

**(1)** Insurance provided for Business Income, Extra Expense and Spoilage is extended to apply to your loss, damage or expense caused by an "accident" to equipment that is owned, managed, or controlled by your landlord or landlord's utility, or utility or other supplier with whom you have a contract, that directly supplies you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission to the premises as described in the Declarations. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

**(2)** Service Interruption coverage will not apply unless the loss of or disruption of service exceeds 24 hours immediately following the "accident".

**(3)** The most we will pay for loss, damage or expense under this coverage is the limit that applies to Business Income, Extra Expense or Spoilage.

**B.** The following is added to Paragraph **B. Exclusions:**

**Equipment Breakdown Exclusions**

All exclusions in the Businessowners Coverage Form apply except as modified below and to the extent that coverage is specifically provided by this Equipment Breakdown Additional Coverage.

**1.** The exclusions are modified as follows:

**a.** The following is added to **B.1.g.(1) Water Exclusion:**

However, if electrical "covered equipment" requires drying out because of Water as described in **B.1.g.(1)** above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and Deductible for Building or Business Personal Property, whichever applies.

**b.** As respects to this endorsement only, the next to the last Paragraph of **B.1.h. Certain Computer-related Losses** Exclusion is deleted and replaced with the following:

However, if excluded loss or damage, as described in Paragraph **(1)** above results in an "accident'", we will pay only for the loss, damage or expense caused by such "accident".

**c.** As respects to this endorsement only, the last paragraph of **B.2.l Other Types of Loss** Exclusion is deleted and replaced with the following:

But if an excluded cause of loss that is listed in Paragraphs **2.l.(1)** through **(7)** results in an "accident", we will pay for the loss, damage or expense caused by that "accident".

**d.** The following is added to **B.2.m. Errors Or Omissions** and **B.2.n Installati on, Testing, Repair** Exclusions:

We will also pay for direct physical loss or damage caused by an "accident".

**2.** We will not pay under this endorsement for loss, damage or expense caused by or resulting from:

    **a.** Any defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within or involving "electronic data" of any kind. But if an "accident" results, we will pay for the resulting loss, damage or expense; or

    **b.** Any of the following tests: a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment.

**3.** With respects to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in **D.1.c.** below); smoke; aircraft or "vehicles"; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

**4.** With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:

    **a.** Loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business; or

    **b.** Any increase in loss resulting from an agreement between you and your customer or supplier, including contract penalties.

**5.** We will not pay under this endorsement for any loss or damage to animals.

**C.** The following are added to Paragraph **F. Property General Conditions:**

  **1. Suspension**

    Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment". This can be done by mailing or delivering a written notice of suspension to:

    **(a)** Your last known address; or

    **(b)** The address where the "covered equipment" is located.

    Once suspended in this way, your insurance can be reinstated only by and endorsement for that "covered equipment". If we suspend your insurance, you will get a pro rata refund for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

  **2. Jurisdictional Inspections**

    If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

  **3. Environmental, Safety and Efficiency Improvements**

    If "covered equipment" requires replacement due to an "accident", we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

    However, we will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which Actual Cash Value applies.

**D.** The following are added to Paragraph **H. Property Definitions:**

  **1.** "Accident" means a fortuitous event that causes direct physical damage to "covered equipment" that requires repair or replacement. The event must be one of the following:

    **a.** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

    **b.** Artificially generated electrical current, including electric arcing that damages electrical devices, appliances or wires;

    **c.** Explosion of steam boilers, steam pipes, steam engines, or steam turbines owned or leased by you, or operated under your control;

© 2015 Liberty Mutual Insurance

**d.** Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any event inside such equipment, unless otherwise excluded; or

**e.** Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any event inside such boilers or equipment, unless otherwise excluded.

An "accident" does not include the functioning of any safety or protective device, or any other condition, which can be corrected by resetting, tightening, adjusting, cleaning, or the performance of maintenance.

**2.** "Covered equipment"

**a.** "Covered equipment" means Covered Property:

**(1)** That generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

**(2)** Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

**b.** None of the following is "covered equipment":

**(1)** Structure, foundation, cabinet, compartment or air supported structure or building;

**(2)** Insulating or refractory material;

**(3)** Sewer piping, buried vessels or piping, or piping forming a part of a sprinkler system;

**(4)** Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

**(5)** "Vehicle" or any equipment mounted on a "vehicle";

**(6)** Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

**(7)** Dragline, excavation or construction equipment; or

**(8)** Equipment manufactured by you for sale.

**3.** "Hazardous substance" means any substance that has been declared to be hazardous to health by any governmental agency.

**4.** "One accident" means, if an initial "accident" causes other "accidents", all will be considered "one accident". All "accidents" that are the result of the same event will be considered "one accident".

**5.** "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

**6.** "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to: car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle".

BUSINESSOWNERS
BP 88 04 03 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - PROFESSIONAL SERVICES (REAL ESTATE AGENTS, INSURANCE AGENTS, TRAVEL AGENTS, FINANCIAL SERVICES, COMPUTER SOFTWARE, INSURANCE OPERATIONS)



This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Exclusion **B.1.j. Professional Services** in **Section II, Liability,** the following is added:

**j.    Professional Services:**

**(10)** Services while you are acting in a fiduciary or representative capacity including but not limited to Real Estate Agents, Insurance Agents and Travel Agents.

**(11)** Financial services including but not limited to:

**(a)** Planning, administering or advising on investments, pensions, annuities or individual retirement plan, fund or account;

**(b)** The issuance or withdrawal of stocks, bonds or other securities;

**(c)** The trading of securities or commodities;

**(d)** Maintaining of financial accounts or records;

**(e)** Tax planning, tax advising or the preparation of tax returns.

**(12)** Services in connection with the selling, licensing, franchising or furnishing of your computer software including electronic data processing programs, designs, specifications, manuals and instructions.

**(13)** Services arising from insurance or related operations:

**(a)** with respect to any contract or treaty of insurance, reinsurance, suretyship, annuity endowment or employee benefit plan, including applications, receipts or binders:

**(i)** any obligation assumed by any Insured; or

**(ii)** the failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise;

**(b)** due to membership in or contribution to any plan, pool, association, insolvency or guarantee fund or any similar fund, organization or association, whether voluntary or involuntary;

**(c)** due to the rendering or failure to render professional services in

**(i)** advising, inspecting, reporting, or making recommendations in the Insured's capacity as an insurance company, consultant, broker, agent or representative thereof;

**(ii)** effecting insurance, reinsurance or suretyship coverages;

**(iii)** investigating, defending or settling any claim under any contract of insurance, self-insurance, reinsurance or suretyship;

**(iv)** auditing of accounts or records of others;

**(v)** conducting an investment, loan or real estate department or operation;

**(vi)** acting in any capacity as a fiduciary or trustee for mutual funds, pension or welfare funds or other similar activities; or

**(vii)** performing any claim, investigative, adjustment, engineering or inspection service for a fee.

© 2014 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

WAB 000156

BUSINESSOWNERS
BP 88 77 07 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# IDENTITY THEFT ADMINISTRATIVE SERVICES AND EXPENSE COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **A. 5. Additional Coverages** in **Section I - Property:**

**IDENTITY THEFT ADMINISTRATIVE SERVICES AND EXPENSE COVERAGE**

We will provide "Identity Theft Administrative Services" and will reimburse up to $25,000 for "Identity Theft Expenses" incurred by an "identity theft insured" as a direct result of any one "identity theft" in the "coverage territory" if all of the following requirements are met:

1. The personal identity of an "identity theft insured" under this policy was the subject of an "identity theft";

2. Such "identity theft" is first discovered by the "identity theft insured" during the policy period for which this Identity Theft Expense Coverage is applicable;

3. Such "identity theft" is reported to us as soon as practicable but in no event later than 60 days after it is first discovered by the "identity theft insured"; and

4. The "identity theft insured" reports the "identity theft" in writing to the appropriat e law enforcement agency.

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others, against an "identity theft insured" is considered to be one "identity theft", even if a series of acts continues into a subsequent policy period.

**LIMITS**

Regardless of the number of claims or "identity theft insureds", the most we will pay in the aggregate for all "Identity Theft Expenses" resulting from "identity theft" discovered during the policy period is $25,000.

1. The $25,000 Identity Theft Expense Limit shall be reduced by the amount of any payment made by us under the terms of this insurance. If the Identity Theft Expense Limit of Insurance is exhausted, we will have no further liability to pay for loss which may be discovered during the remainder of the policy period.

2. Any recovery made by us after settlement of a loss covered by this insurance shall not be used to increase or reinstate the Limit of Insurance.

3. "Identity Theft Administrative Services" is provided up to 12 consecutive months after service begins.

4. "Identity Theft Administrative Services" do not reduce the "Identity Theft Expense" Limit.

This "Identity Theft Administrative Service" and "Identity Theft Expense" Coverage are additional insurance.

**EXCLUSIONS**

The following additional exclusions apply to this coverage.

We do not provide "Identity Theft Administrative Services" or cover "Identity Theft Expenses":

1. Incurred as the result of "identity theft" due to any fraudulent, dishonest, or criminal act by you, your partners, employees, members, "executive officers", managers, directors, or trustees or by any authorized representative of yours, whether acting alone or in collusion with others.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

In the event of any such act, no "identity theft insured" is entitled to "Identity Theft Expenses", even an "identity theft insured" who did not commit or conspire to commit the act causing the "identity theft".

**2.** Arising out of "identity theft" committed by or with knowledge of any relative or former relative of the "identity theft insured".

**3.** Arising out of an "identity theft" first discovered by the "identity theft insured" prior to the policy period or after the policy period, even if the "identity theft" began or continued during the policy period.

**4.** Arising out of an "identity theft" that is not reported to us within 60 days after it is first discovered by the "identity theft insured".

## DEDUCTIBLE

**1.** There is no deductible applicable to the "Identity Theft Administrative Services".

**2.** We will not pay for "Identity Theft Expenses" resulting from an "identity theft" unless the amount exceeds $250. We will then pay the amount of "Identity Theft Expense" in excess of the Deductible Amount, up to the Limit of Insurance. Each "identity theft insured" shall be subject to only one deductible during any one policy period.

## CONDITIONS

The following additional conditions are added for "Identity Theft Administrative Services" and "Identity Theft Expenses" Coverage:

**1.** The coverage provided under this endorsement will be excess over any other insurance covering the same loss or damage, whether you can collect on it or not. But we will not pay any more than the Identity Theft Expense Limits of Insurance applicable to this coverage.

**2.** Reimbursement for "Identity Theft Expenses" will be made to the "identity theft insured."

**3.** "Identity Theft Administrative Services" will provide instructions on:

   **a.** How to respond to a potential "identity theft";

   **b.** How to submit a request for "Identity Theft Administrative Services"; and

   **c.** Information needed for reimbursement of "Identity Theft Expenses".

We may provide "Identity Theft Administrative Services" prior to a final determination of "identity theft." However, if we determine there was not an "identity theft" these services will end and we will not have a right or duty to continue these services. Offering "Identity Theft Administrative Service" does not indicate an admission of liability under this policy.

**4.** Identify Theft Administrative Services. The following apply with respect to "Identity Theft Administrative Services":

   **a.** Services will depend on the cooperation, permissions, and assistance provided by the "identity theft insured";

   **b.** There is no warranty or guarantee that "identity theft" issues will end and it will not prevent future "identity theft" incidences; and

   **c.** All services may not be offered or applicable to all "identity theft insureds." For example, minors may not have credit reports available to be monitored.

## DEFINITIONS

With respect to the provisions of this endorsement only, the following definitions are added:

**1.** "Coverage Territory" means:

   **a.** The United States of America (including its territories and possessions);

   **b.** Puerto Rico; and

   **c.** Canada.

**2.** "Executive officers" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

© 2013 Liberty Mutual Insurance. All rights reserved.



3.  "Identity theft" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "identity theft insured" with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law. "Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

4.  "Identity Theft Expenses" means the following reasonable and necessary items incurred as a result of "identity theft":

**a.** Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies.

**b.** Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.

**c.** Costs for obtaining credit reports.

**d.** Charges incurred for long distance telephone calls to merchants, vendors, suppliers, customers, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity theft".

**e.** Application fees for re-applying for a loan, or loans when the original application is rejected solely because the lender received incorrect credit information as a result of a covered "identity theft."

**f.** Lost income resulting from time taken off from work to complete fraud affidavits, meet with or talk to law enforcement agencies, credit agencies and/or legal counsel, up to a maximum of $250 per day. Total payment for loss of income is not to exceed $5,000 per "identity theft insured" and is included within the "Identity Theft Expenses" and aggregate limits.

**g.** Attorney fees to:

  **i.** Defend lawsuits brought against an "identity theft insured" by merchants, vendors, suppliers, financial institutions, or their collection agencies.

  **ii.** Remove any criminal or civil judgments wrongly entered against an "identity theft insured"; and

  **iii.** Challenge the accuracy or completeness of any information in a consumer credit report.

**h.** Advertising expenses to restore the reputation of your business after an "identity theft insured" has been the victim of "identity theft". Total payment for advertising expenses is not to exceed $5,000 per "identity theft insured" and is included within the "Identity Theft Expenses" and aggregate limits.

5.  "Identity Theft Administrative Services" means one or more individuals assigned by us to the "identity theft insured" to assist with the communication needed to re-establish the integrity of the "identity theft insured's" identity, including with the "identity theft insured's" permission and cooperation, written and telephone communication with law enforcement authorities, government agencies, credit agencies, and individual creditors and businesses.

6.  "Identity theft insured" means the following if you are designated in the Declarations as:

**a.** An individual or sole proprietorship, you and your spouse are insureds.

**b.** A partnership or joint venture, your members, your partners, and their spouses are insured's.

**c.** A limited liability company, your members are insured's.

**d.** An organization other than a partnership, joint venture, or limited liability company, your "executive officers" and directors are insureds. Your stockholders are not "identity theft insureds."

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BUSINESSOWNERS**
**BP 88 78 07 13**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUSINESS PERSONAL PROPERTY LIMIT - AUTOMATIC INCREASE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM



The following is added to Part **C. Limits of Insurance** of **Section I - Property,** of the Businessowners Coverage Form:

**6.  Business Personal Property Limit - Automatic Increase**

    **a.**  In accordance with Paragraph C.6.b., the Limit of Insurance for Business Personal Property will automatically increase by 2%, unless a different percentage of annual increase applicable to Business Personal Property is shown in the Declarations.

    **b.**  The amount of increase is calculated as follows:

        **(1)**  Multiply the Business Personal Property limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Business Personal Property limit by:

            **(a)**  the percentage of annual increase applicable to Business Personal Property shown in the Declarations, expressed as a decimal (example: 2% is .02); or

            **(b)**  .02, if no applicable percentage of annual increase is shown in the Declarations; and

        **(2)**  Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Business Personal Property limit, divided by 365.

      Example:

      If:

      The applicable Business Personal Property limit is $100,000.

      The Automatic Increase Business Personal Property is 2%. The number of days since the beginning of the policy year (or last policy change) is 146.

      The amount of increase is

      **$100,000 x .02 x 146 ÷ 365 = $800.**

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

This page intentionally left blank.

WAP 000161



**Liberty Mutual. INSURANCE**

**Policyholder   Information**

Policy Number:
**BZW   (20)   58 89 98 09**

Policy Period:
**From 10/01/2019 To 10/01/2020**
*12:01 am Standard Time
at Insured Mailing Location*

---

**Named Insured & Mailing Address**

METUCHEN CENTER INC
10-12 EMBROIDERY ST
SAYREVILLE, NJ 08872

**Agent Mailing Address & Phone No.**

(732) 548-2727
THE SCHENCK AGENCY INC
PO BOX 351
METUCHEN, NJ 08840-0351

---

### *Dear Policyholder:*

We know you work hard to build your business. We work together with your agent,
**THE SCHENCK AGENCY INC          (732) 548-2727**
to help protect the things you care about. Thank you for selecting us.

Enclosed are Important Notices to Policyholders. This notice is being sent to you in advance of your upcoming policy expiration to alert you of changes in coverage that will apply in the event we offer you a renewal policy. Should we elect to not renew your policy, you will receive a nonrenewal notice.

•   Commercial Protector

If you have any questions or changes that may affect your insurance needs, please contact your Agent at (732) 548-2727

---

## You Need To Know

• **NOTICE(S) TO POLICYHOLDER(S)**
The Important Notice(s) to Policyholder(s) provide a general explanation of changes in coverage to your policy. The Important Notice(s) to Policyholder(s) is not a part of your insurance policy and it does not alter policy provisions or conditions. Only the provisions of your policy determine the scope of your insurance protection. It is important that you read your policy carefully to determine your rights, duties and what is and is not covered.

| FORM NUMBER | TITLE |
|---|---|
| NP 72 66 04 17 | New Jersey Earthquake Insurance Availability Notice |

---

*To report a claim, call your Agent or 1-800-362-0000*

**RL 00 01 07 17**

WAP 000162

This page intentionally left blank.

WAP 000163

NP 72 66 04 17

# NEW JERSEY EARTHQUAKE INSURANCE
## AVAILABILITY NOTICE

All insureds and applicants are cautioned that commercial fire and extended coverage insurance policies do not provide coverage for earthquake damage.

The definition of an *earthquake:*



- is a shaking or trembling of the earth that is geologic or tectonic in nature;
- includes shock waves or tremors before, during or after a volcanic eruption; and
- can also include after-shocks that occur within a seventy-two hour period following an *earthquake.*

A typical commercial fire and extended coverage insurance policy:

- **does not** cover the cost to replace your damaged dwelling, premises or structure, such as garages, resulting from an *earthquake;*
- **does not** cover the cost to replace or repair the contents of your business if the damages result from an *earthquake;* and
- **does not** pay for any additional business expenses if your property is badly damaged or destroyed by an *earthquake.*

*Earthquake* **insurance is available through an endorsement to your policy for an additional premium. The decision to purchase earthquake insurance is one that should be carefully considered based on individual circumstances.**

Historically, an earthquake in New Jersey is a rare event, although the possibility exists that it could happen. Over the five (5) -year period from 2010 to 2015, for every $1 of *earthquake* insurance premium, 1/10 of one cent has been paid out for losses.

**Please contact your agent if you have any questions or want additional information on how you can obtain** *earthquake* **insurance.**

**This notice is a general description of coverage and does not change, modify or invalidate any of the provisions, terms or conditions of your policy or endorsements.**

This page intentionally left blank.

WAP 000165

EXHIBIT "B"

## EXECUTIVE ORDER NO. 103

WHEREAS, Coronavirus disease 2019 ("COVID-19") is a contagious, and at times fatal, respiratory disease caused by the SARS-CoV-2 virus; and

WHEREAS, COVID-19 is responsible for the 2019 novel coronavirus outbreak, which was first identified in Wuhan, the People's Republic of China in December 2019 and quickly spread to the Hubei Province and multiple other countries; and

WHEREAS, symptoms of the COVID-19 illness include fever, cough, and shortness of breath, which may appear in as few as two or as long as 14 days after exposure, and can spread from person to person via respiratory droplets produced when an infected person coughs or sneezes; and

WHEREAS, on January 30, 2020, the International Health Regulations Emergency Committee of the World Health Organization declared the outbreak a "public health emergency of international concern," which means "an extraordinary event which is determined to constitute a public health risk to other States through the international spread of disease and to potentially require a coordinated international response," and thereafter raised its global risk assessment of COVID-19 from "high" to "very high"; and

WHEREAS, on January 31, 2020, the United States Department of Health and Human Services Secretary declared a public health emergency for the United States to aid the nation's healthcare community in responding to COVID-19; and

WHEREAS, as of March 9, 2020, according to the Centers for Disease Control and Prevention ("CDC"), there were more than 114,000 confirmed cases of COVID-19 worldwide, with over 4,000 of those cases having resulted in death; and

WHEREAS, as of March 9, 2020, there were more than 500 confirmed cases of COVID-19 in the United States, with 22 of those cases having resulted in death; and

2

WHEREAS, as of March 9, 2020, there were 11 presumed positive cases of COVID-19 in New Jersey, with 24 additional "Persons Under Investigation" spread across the counties of Bergen, Camden, Cumberland, Essex, Hunterdon, Middlesex, Monmouth, Passaic, Union, and Sussex; and

WHEREAS, as of March 9, 2020, there were 142 positive cases of COVID-19 in the State of New York and seven presumptive positive cases in the Commonwealth of Pennsylvania; and

WHEREAS, the CDC expects that additional cases of COVID-19 will be identified in the coming days, including more cases in the United States, and that person-to-person spread is likely to continue to occur; and

WHEREAS, if COVID-19 spreads in New Jersey at a rate comparable to the rate of spread in other affected areas, it will greatly strain the resources and capabilities of county and municipal governments, including public health agencies, that provide essential services for containing and mitigating the spread of contagious diseases, such as COVID-19, and the situation may become too large in scope to be handled in its entirety by the normal county and municipal operating services in some parts of this State, and this situation may spread to other parts of the State; and

WHEREAS, the spread of COVID-19 may make it difficult or impossible for citizens to obtain consumer goods and other necessities of life due to supply chain disruption and price increases, as well as hamper the delivery of essential services such as police, fire, and first aid; and

WHEREAS, the State's public bidding act, N.J.S.A. 52:34-6 et seq., provides a public exigency exemption, N.J.S.A. 52:34-10(b), that in the event of a threat to the life, health, or safety to the public, advertised bidding is not required to obtain those

3

goods and services necessary to address the public exigency where the Division of Purchase of Property provides preapproval in accordance with Treasury Circular 18-14-DPP; and

WHEREAS, in the event of a declared emergency pursuant to Treasury Circular 19-10-DPP, the threshold for delegated purchasing by individual State Departments is raised to $100,000 such that purchases at or below that amount do not require prior approval or action by DPP; and

WHEREAS, the spread of COVID-19 may disrupt the timely delivery of State contracted goods or services, the immediate delivery and fulfillment of which is necessary for the life, safety, or health of the public; and

WHEREAS, the State of New Jersey has been working closely with the CDC, local health departments, and healthcare facilities to monitor, plan for and mitigate the spread of COVID-19 within the State; and

WHEREAS, through Executive Order No. 102, which I signed on February 3, 2020, I created the State's Coronavirus Task Force, chaired by the Commissioner of the New Jersey Department of Health ("DOH"), in order to coordinate the State's efforts to appropriately prepare for and respond to the public health hazard posed by COVID-19; and

WHEREAS, it is critical to prepare for and respond to suspected or confirmed COVID-19 cases in New Jersey, to implement appropriate measures to mitigate the spread of COVID-19, and to prepare in the event of an increasing number of individuals requiring medical care or hospitalization; and

WHEREAS, the State of New Jersey also acts as an employer with tens of thousands of employees, and the spread of COVID-19 requires preparedness for staffing shortages and flexibility in work rules to ensure that its employees can fully comply with all

4

medically appropriate measures while also ensuring the continuous delivery of State services performed by Executive branch agencies; and

WHEREAS, the continuous delivery of services at the county and municipal level performed by those governments and their employees is also essential; and

WHEREAS, the spread of COVID-19 within New Jersey constitutes an imminent public health hazard that threatens and presently endangers the health, safety, and welfare of the residents of one or more municipalities or counties of the State; and

WHEREAS, it is necessary and appropriate to take action against this public health hazard to protect and maintain the health, safety, and welfare of New Jersey residents and visitors; and

WHEREAS, the facts as set forth above and consultation with the Commissioner of DOH confirms that there exists a public health emergency in the State; and

WHEREAS, New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-107 et seq., prohibits excessive price increases during a declared state of emergency, or for 30 days after the termination of the state of emergency; and

WHEREAS, the Constitution and statutes of the State of New Jersey, particularly the provisions of N.J.S.A. 26:13-1 et seq., N.J.S.A. App. A: 9-33 et seq., N.J.S.A. 38A:3-6.1, and N.J.S.A. 38A:2-4 and all amendments and supplements thereto, confer upon the Governor of the State of New Jersey certain emergency powers;

NOW, THEREFORE, I, PHILIP D. MURPHY, Governor of the State of New Jersey, in order to protect the health, safety and welfare of the people of the State of New Jersey,  DO DECLARE and PROCLAIM that a Public Health Emergency and State of Emergency exist in the State of New Jersey, and I hereby ORDER and DIRECT the following:

5

1.   I authorize and empower the State Director of Emergency Management, who is the Superintendent of State Police, in conjunction with the Commissioner of DOH, to take any such emergency measures as the State Director may determine necessary, including the implementation of the State Emergency Operations Plan and directing the activation of county and municipal emergency operations plans, in order to fully and adequately protect the health, safety and welfare of the citizens of the State of New Jersey from any actual or potential threat or danger that may exist from the possible exposure to COVID-19. The State Director of Emergency Management, in conjunction with the Commissioner of DOH, is authorized to coordinate the relief effort from this emergency with all governmental agencies, volunteer organizations, and the private sector.

2.   The State Director of Emergency Management, in conjunction with the Commissioner of DOH, shall also supervise and coordinate all activities of all State, regional and local political bodies and agencies in order to ensure the most effective and expeditious implementation of this order, and, to this end, may call upon all such agencies and political subdivisions for any assistance necessary.

3.   Given the concurrent invocation of both a State of Emergency pursuant to N.J.S.A. App.A.:9-33 et seq. and a Public Health Emergency as contemplated by N.J.S.A. 26:13-1 et seq., I reserve the right as specifically contemplated by N.J.S.A. 26:13-3 to exercise the authority and powers specific to the Emergency Health Powers Act as I deem necessary and appropriate to ensure the public health for New Jersey's residents.

4.   It shall be the duty of every person or entity in this State or doing business in this State and of the members of the governing body and every official, employee, or agent of every

6

political subdivision in this State and of each member of all other governmental bodies, agencies, and authorities in this State of any nature whatsoever, to cooperate fully with the State Director of Emergency Management and the Commissioner of DOH in all matters concerning this state of emergency.

5.    The Coronavirus Task Force established under Executive Order No. 102 is continued with the Commissioner of DOH as the chair, and shall provide assistance on the State's efforts preparing for and responding to the public health hazard posed by COVID-19.

6.    I authorize and empower the executive head of any agency or instrumentality of the State government with authority to promulgate rules to waive, suspend, or modify any existing rule, where the enforcement of which would be detrimental to the public welfare during this emergency, notwithstanding the provisions of the Administrative Procedure Act or any law to the contrary for the duration of this Executive Order, subject to my prior approval and in consultation with the State Director of Emergency Management and the Commissioner of DOH.  Any such waiver, modification, or suspension shall be promulgated in accordance with N.J.S.A. App. A:9-45.

7.    All State agencies, and specifically the Departments of Banking and Insurance, Health, Human Services, Education, and the Civil Service Commission are authorized to take appropriate steps to address the public health hazard of COVID-19, including increasing access and eliminating barriers to medical care, protecting the health and well-being of students, and protecting the health and well-being of State, county, and municipal employees while ensuring the continuous delivery of State, county, and municipal services.

7

8.   I authorize and empower the State Director of Emergency Management, in conjunction with the Commissioner of DOH, to order the evacuation of all persons, except for those emergency and governmental personnel whose presence the State Director deems necessary, from any area where their continued presence would present a danger to their health, safety, or welfare because of the conditions created by this emergency.

9.   I authorize and empower the State Director of Emergency Management, in conjunction with the Commissioner of DOH, to utilize all property, equipment, and facilities owned, rented, operated, and maintained by the State of New Jersey to house and shelter persons who may need to be evacuated from a residence, dwelling, building, structure, or vehicle during the course of this emergency.

10.  I authorize and empower the Adjutant General, in accordance with N.J.S.A. 38A:2-4 and N.J.S.A. 38A:3-6.1, to order to active duty such members of the New Jersey National Guard who, in the Adjutant General's judgment, are necessary to provide aid to those localities where there is a threat or danger to the public health, safety, and welfare and to authorize the employment of any supporting vehicles, equipment, communications, or supplies as may be necessary to support the members so ordered.

11.  In accordance with the N.J.S.A. App. A:9-34 and N.J.S.A. App. A:9-51, I reserve the right to utilize and employ all available resources of the State government and of each and every political subdivision of the State, whether of persons, properties, or instrumentalities, and to commandeer and utilize any personal services and any privately-owned property necessary to protect against this emergency.

8

12. In accordance with N.J.S.A. App. A:9 40, no municipality, county, or any other agency or political subdivision of this State shall enact or enforce any order, rule, regulation, ordinance, or resolution which will or might in any way conflict with any of the provisions of this Order, or which will in any way interfere with or impede the achievement of the purposes of this Order.

13. In accordance with N.J.S.A. App. A:9-34, N.J.S.A. App. A:9-40.6, and N.J.S.A. 40A:14-156.4, no municipality or public or semipublic agency shall send public works, fire, police, emergency medical, or other personnel or equipment into any non-contiguous impacted municipality within this State, nor to any impacted municipality outside this State, unless and until such aid has been directed by the county emergency management coordinator or his or her deputies in consultation with the State Director of Emergency Management in conjunction with the Commissioner of DOH.

14. This Order shall take effect immediately and shall remain in effect until such time as it is determined by me that an emergency no longer exists.

GIVEN, under my hand and seal this
9th day of March,
Two Thousand and Twenty, and
of the Independence of the
United States, the Two
Hundred and Forty-Fourth.

[seal]                    /s/ Philip D. Murphy

                         Governor

Attest:

/s/ Matthew J. Platkin

Chief Counsel to the Governor

# EXHIBIT "C"

**EXECUTIVE ORDER NO. 107**

WHEREAS, through Executive Order No. 102 (2020), which I signed on February 3, 2020, I created the State's Coronavirus Task Force, chaired by the Commissioner of the New Jersey Department of Health ("DOH"), in order to coordinate the State's efforts to appropriately prepare for and respond to the public health hazard posed by Coronavirus disease 2019 ("COVID-19"); and

WHEREAS, in light of the dangers posed by COVID-19, I issued Executive Order No. 103 (2020) on March 9, 2020, the facts and circumstances of which are adopted by reference herein, which declared both a Public Health Emergency and State of Emergency; and

WHEREAS, in accordance with N.J.S.A. App. A:9-34 and -51, I reserved the right to utilize and employ all available resources of State government to protect against the emergency created by COVID-19; and

WHEREAS, in accordance with N.J.S.A App. A:9-40, I declared that, due to the State of Emergency, no municipality, county, or any agency or political subdivision of this State shall enact or enforce any order, rule, regulation, ordinance, or resolution which will or might in any way conflict with any of the provisions of my Executive Orders, or which will in any way interfere with or impede their achievement; and

WHEREAS, to further protect the health, safety, and welfare of New Jersey residents by, among other things, reducing the rate of community spread of COVID-19, I issued Executive Order No. 104 (2020) on March 16, 2020, the facts and circumstances of which are also adopted by reference herein, which established statewide social mitigation strategies for combatting COVID-19; and

2

WHEREAS, Executive Order No. 104 (2020) limited the scope of service and hours of operation for restaurants and certain retail establishments to balance the need to allow individuals to access food and other essential materials with the need to limit unnecessary person-to-person contact; and

WHEREAS, Executive Order No. 104 (2020) deemed a subset of businesses as "essential," including grocery/food stores, pharmacies, medical supply stores, gas stations, healthcare facilities, and ancillary stores within healthcare facilities, and it authorized the State Director of Emergency Management, who is the Superintendent of State Police, to make additions, amendments, clarifications, exceptions, and exclusions to that list; and

WHEREAS, Executive Order No. 104 (2020) made clear that such essential businesses may continue operating without limits on their scope of service or hours of operation, absent further amendments by the State Director of Emergency Management; and

WHEREAS, Executive Order No. 104 (2020) and subsequent Administrative Orders issued by the State Director of Emergency Management also placed restrictions on other businesses' scope of service and hours of operation, and also placed restrictions on the size of gatherings in the State; and

WHEREAS, as of March 20, 2020, according to the Centers for Disease Control and Prevention ("CDC"), there were more than 234,000 confirmed cases of COVID-19 worldwide, with over 9,800 of those cases having resulted in death; and

WHEREAS, as of March 20, 2020, there were more than 15,000 confirmed cases of COVID-19 in the United States, with at least 201 of those cases having resulted in death; and

WHEREAS, as of March 20, 2020, there were at least 890 positive cases of COVID-19 in New Jersey, with at least 11 of those cases having resulted in death; and

3

WHEREAS, social mitigation strategies for combatting COVID-19 require every effort to reduce the rate of community spread of the disease; and

WHEREAS, the CDC has advised that COVID-19 spreads most frequently through person-to-person contact when individuals are within six feet or less of one another; and

WHEREAS, as a result, the CDC has recommended that individuals practice "social distancing" to prevent community spread of the virus; and

WHEREAS, the CDC has defined social distancing as the practice of "remaining out of congregate settings, avoiding mass gatherings, and maintaining distance (approximately 6 feet or 2 meters) from others when possible"; and

WHEREAS, to mitigate community spread of COVID-19, it is necessary to limit the unnecessary movement of individuals in and around their communities and person-to-person interactions in accordance with CDC and DOH guidance; and

WHEREAS, the best way for New Jersey residents to keep themselves, their families, and their communities safe during the COVID-19 outbreak is to stay at home as much as possible; and

WHEREAS, as of March 15, 2020, the CDC recommends that for the next eight weeks, gatherings of 50 or more people be canceled or postponed throughout the United States; and

WHEREAS, as of March 16, 2020, the White House went further than the CDC had and recommended that Americans avoid social gatherings in groups of more than 10 people; and

WHEREAS, restricting the physical presence of individuals in office environments and work sites is critical to preventing future spread of COVID-19; and

4

WHEREAS, accommodating work-from-home arrangements is an effective means to ensure continuity of operations while also limiting person-to-person contact; and

WHEREAS, the CDC has recommended employers to establish policies and practices to increase the physical distance among employees and between employees; and

WHEREAS, permitting the workforce to work from home may reduce stress on the State's child care system; and

WHEREAS, as of March 19, 2020, I have instructed all State departments and agencies to utilize work-from-home arrangements for both essential and non-essential employees wherever feasible; and

WHEREAS, given the rapidly rising incidence of COVID-19, temporarily closing non-essential retail businesses will strengthen New Jersey's efforts to slow the spread of COVID-19; and

WHEREAS, even as we institute social distancing measures, the number of COVID-19 cases in New Jersey is likely to increase for the immediate future, meaning we must take all possible steps to preserve our health care system's capacity to treat those who require emergency or intensive care; and

WHEREAS, the Constitution and statutes of the State of New Jersey, particularly the provisions of N.J.S.A. 26:13-1 et seq., N.J.S.A. App. A: 9-33 et seq., N.J.S.A. 38A:3-6.1, and N.J.S.A. 38A:2-4 and all amendments and supplements thereto, confer upon the Governor of the State of New Jersey certain emergency powers, which I have invoked;

NOW, THEREFORE, I, PHILIP D. MURPHY, Governor of the State of New Jersey, by virtue of the authority vested in me by the Constitution and by the Statutes of this State, do hereby ORDER and DIRECT:

5

1.    The operative paragraphs of Executive Order No. 104 (2020) are hereby superseded in full.   The factual findings of Executive Order No. 104 (2020) remain applicable except to the extent they are in conflict with the factual findings in this or any intervening Executive Order.

2.    All New Jersey residents shall remain home or at their place of residence unless they are 1) obtaining goods or services from essential retail businesses, as described in Paragraph 6; 2) obtaining takeout food or beverages from restaurants, other dining establishments, or food courts, pursuant to Paragraph 8; 3) seeking medical attention, essential social services, or assistance from law enforcement or emergency services; 4) visiting family or other individuals with whom the resident has a close personal relationship, such as those for whom the individual is a caretaker or romantic partner; 5) reporting to, or performing, their job; 6) walking, running, operating a wheelchair, or engaging in outdoor activities with immediate family members, caretakers, household members, or romantic partners while following best social distancing practices with other individuals, including staying six feet apart; 7) leaving the home for an educational, religious, or political reason; 8) leaving because of a reasonable fear for his or her health or safety; or 9) leaving at the direction of law enforcement or other government agency.

3.    When in public, individuals must practice social distancing and stay six feet apart whenever practicable, excluding immediate family members, caretakers, household members, or romantic partners.

4.    Individuals who have to travel pursuant to Paragraph 2 should only use public transportation only if they have no other feasible choice.   Individuals who ride public transportation should abide by best social distancing practices, including making

6

all efforts to stand or sit six feet away from other riders and frequently use sanitizing products.

5. Gatherings of individuals, such as parties, celebrations, or other social events, are cancelled, unless otherwise authorized by any part of this Order. The State Director of Emergency Management, who is the Superintendent of the State Police, shall have the discretion to make clarifications and issue orders related to this provision.

6. The brick-and-mortar premises of all non-essential retail businesses must close to the public as long as this Order remains in effect. Essential retail businesses, listed below, are excluded from this directive and may remain open during their normal business hours. Essential retail businesses must, wherever practicable, provide pickup services outside or adjacent to their stores for goods ordered in advance online or by phone. Additionally, online and telephonic delivery services are permitted to the extent the retail business is authorized to operate an online or telephonic delivery service under existing law. The State Director of Emergency Management, who is the Superintendent of the State Police, shall have the discretion to make additions, amendments, clarifications, exceptions, and exclusions to this list:

        a. Grocery stores, farmer's markets and farms that sell directly to customers, and other food stores, including retailers that offer a varied assortment of foods comparable to what exists at a grocery store;

        b. Pharmacies and alternative treatment centers that dispense medicinal marijuana;

        c. Medical supply stores;

        d. Retail functions of gas stations;

7

    e.    Convenience stores;

    f.    Ancillary stores within healthcare facilities;

    g.    Hardware and home improvement stores;

    h.    Retail functions of banks and other financial institutions;

    i.    Retail functions of laundromats and dry-cleaning services;

    j.    Stores that principally sell supplies for children under five years old;

    k.    Pet stores;

    l.    Liquor stores;

    m.    Car dealerships, but only to provide auto maintenance and repair services, and auto mechanics;

    n.    Retail functions of printing and office supply shops; and

    o.    Retail functions of mail and delivery stores.

7.    Any essential retail business whose brick-and-mortar premises remain open to the public shall abide by social distancing practices to the extent practicable while providing essential services. These include all reasonable efforts to keep customers six feet apart and frequent use of sanitizing products on common surfaces.

8.    All restaurants, cafeterias, dining establishments, and food courts, with or without a liquor license, all bars, and all other holders of a liquor license with retail consumption privileges, are permitted to operate their normal business hours, but are limited to offering only food delivery and/or take-out services in accordance with their existing liquor licenses. If alcoholic beverages are to be sold from a restaurant, dining establishment or bar with a liquor license, such sales shall be

8

limited to original containers sold from the principal public barroom. The on-premises consumption of alcohol is prohibited. All retail sales of alcoholic beverages by limited brewery licensees, restricted brewery licensees, plenary and farm winery licensees (and associated salesrooms), craft distillery licensees and cidery and meadery licensees must be in original containers and must be sold through customer pick up and/or delivered by licensees in accordance with their existing licenses.

    9.  All recreational and entertainment businesses, including but not limited to the following list, must close to the public as long as this Order remains in effect. The State Director of Emergency Management, who is the Superintendent of State Police, shall have the discretion to make additions, amendments, clarifications, exceptions, and exclusions to this list:

        a.  Casino gaming floors, including retail sports wagering lounges, and casino concert and entertainment venues. Online and mobile sports and casino gaming services may continue to be offered notwithstanding the closure of the physical facility.

        b.  Racetracks, including stabling facilities and retail sports wagering lounges. Mobile sports wagering services may continue to be offered notwithstanding the closure of the physical facility.

        c.  Gyms and fitness centers and classes.

        d.  Entertainment centers, including but not limited to, movie theaters, performing arts centers, other concert venues, and nightclubs.

        e.  All indoor portions of retail shopping malls. Restaurants and other stores located within

9

shopping malls that have their own external entrances open to the public, separate from the general mall entrance, may remain open pursuant to the terms and directives of this Order for operating hours and takeout or food delivery services. All entrances and exits to the common area portions of retail shopping malls must remain closed.

f. All places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement parks, water parks, aquariums, zoos, arcades, fairs, children's play centers, funplexes, theme parks, bowling alleys, family and children's attractions.

g. Facilities where personal care services are performed that, by their very nature, result in noncompliance with social distancing guidelines, including but not limited to cosmetology shops; barber shops; beauty salons; hair braiding shops; nail salons; electrology facilities; spas, including day spas and medical spas, at which solely elective and cosmetic medical procedures are performed; massage parlors, tanning salons, tattoo parlors, and public and private social clubs, whether or not they serve alcohol, including but not limited to facilities owned or operated by the American Legion, Veterans of Foreign Wars, Knights of Columbus, and any other social clubs associated with community service organizations. This excludes any health facilities that provide medically necessary or therapeutic services.

10

    h.   All municipal, county, and State public libraries, and all libraries and computer labs at public and private colleges and universities.

10.  All businesses or non-profits in the State, whether closed or open to the public, must accommodate their workforce, wherever practicable, for telework or work-from-home arrangements. For purposes of this order, "telework" means the practice of working from home or alternative locations closer to home through the use of technology that equips the individual to access necessary materials.

11.  To the extent a business or non-profit has employees that cannot perform their functions via telework or work-from-home arrangements, the business or non-profit should make best efforts to reduce staff on site to the minimal number necessary to ensure that essential operations can continue. Examples of employees who need to be physically present at their work site in order to perform their duties include, but are not limited to, law enforcement officers, fire fighters, and other first responders, cashiers or store clerks, construction workers, utility workers, repair workers, warehouse workers, lab researchers, information technology maintenance workers, janitorial and custodial staff, and certain administrative staff.

12.  All public, private, and parochial preschool program premises, and elementary and secondary schools, including charter and renaissance schools, shall remain closed to students as long as this Order remains in effect.

13.  All institutions of higher education shall continue to cease such in-person instruction as long as this Order remains in effect. The Secretary of the Office of Higher Education shall have the authority to grant a waiver to allow in-person instruction to students on a case-by-case basis where a compelling rationale to

11

allow such access exists. The Secretary of the Office of Higher Education shall coordinate with institutions of higher education to determine appropriate student housing conditions for those students who reside in on-campus housing as their primary residence.

14.   The Commissioner of the Department of Education ("DOE"), in consultation with the Commissioner of DOH, shall be authorized to permit schools to remain open on a limited basis for the provision of food or other essential, non-educational services, or for educational or child care services if needed in emergency situations after consultation with the Commissioner of DOH. The Commissioner of DOE shall also have the authority to close any other career or training facilities over which he has oversight, after consultation with the Commissioner of DOH.

15.   The Commissioner of DOE shall continue working with each public school district, and private and parochial schools as appropriate, to ensure that students are able to continue their educations during this time period through appropriate home instruction. Local school districts, charter schools, and renaissance schools, in consultation with the Commissioner of DOE, shall have the authority and discretion to determine home instruction arrangements as appropriate on a case-by-case basis to ensure all students are provided with appropriate home instruction, taking into account all relevant constitutional and statutory obligations.

16. The Secretary of the Department of Agriculture, in conjunction with the Commissioner of DOE, shall take all necessary actions to ensure that all students eligible for free or reduced meals shall continue to receive the services or supports necessary to meet nutritional needs during closures.

12

17.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the provision of health care or medical services to members of the public.

18.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way access to essential services for low-income residents, including but not limited to food banks.

19.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of newspapers, television, radio, and other media services.

20.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of law enforcement agencies.

21.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of the federal government, or the movement of federal officials in New Jersey while acting in their official capacity.

22.  In accordance with N.J.S.A. App. A:9-33, et seq., as supplemented and amended, the State Director of Emergency Management, who is the Superintendent of State Police, through the police agencies under his control, to determine and control the direction of the flow of vehicular traffic on any State or interstate highway, municipal or county road, and any access road, including the right to detour, reroute, or divert any or all traffic and to prevent ingress or egress from any area that, in the State Director's discretion, is deemed necessary for the protection of the health, safety, and welfare of the public, and to remove parked or abandoned vehicles from such roadways as conditions warrant.

23.  The Attorney General, pursuant to the provisions of N.J.S.A. 39:4-213, shall act through the Superintendent of State Police, to determine and control the direction of the flow of

13

vehicular traffic on any State or interstate highway, municipal or county road, and any access road, including the right to detour, reroute, or divert any or all traffic, to prevent ingress or egress, and to determine the type of vehicle or vehicles to be operated on such roadways. I further authorize all law enforcement officers to enforce any such order of the Attorney General or Superintendent of State Police within their respective municipalities.

24. It shall be the duty of every person or entity in this State or doing business in this State and of the members of the governing body and every official, employee, or agent of every political subdivision in this State and of each member of all other governmental bodies, agencies, and authorities in this State of any nature whatsoever, to cooperate fully in all matters concerning this Executive Order.

25. Penalties for violations of this Executive Order may be imposed under, among other statutes, N.J.S.A. App. A:9-49 and -50.

26. This Order shall take effect on Saturday, March 21, 2020, at 9:00 p.m., and shall remain in effect until revoked or modified by the Governor, who shall consult with the Commissioner of DOH as appropriate.

GIVEN, under my hand and seal this 21st day of March, Two Thousand and Twenty, and of the Independence of the United States, the Two Hundred and Forty-Fourth.

[seal]                       /s/ Philip D. Murphy

                             Governor


Attest:

/s/ Matthew J. Platkin

Chief Counsel to the Governor

# EXHIBIT "D"

**R.C. SHEA & ASSOCIATES**
**Counsellors At Law, P.C.**
244 Main Street – PO Box 2627
Toms River, New Jersey 08754-2627
Tel:  (732) 505-1212
Fax: (732) 505-1360
Attorney Id. # 020391998
Attorney for Plaintiff
File Number:      134473

| | |
|---|---|
| METUCHEN CENTER, INC. | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION |
| | : MIDDLESEX COUNTY |
| | : |
| | : Docket No.: |
| | : |
| Plaintiffs, | : |
| vs. | : CIVIL ACTION |
| | : |
| LIBERTY MUTUAL INSURANCE | : **COMPLAINT FOR** |
| COMPANY, WEST AMERICAN | : **DECLARATORY JUDGMENT,** |
| INSURANCE COMPANY, and XYZ | : **NOTICE OF OTHER ACTIONS,** |
| COMPANY 1-100 (a fictitious name for | : **DESIGNATION OF TRIAL** |
| insurance companies and underwriters | : **COUNSEL, CERTIFICATION** |
| presently unknown) | : **PURSUANT TO RULE 4:5-1,** |
| | : **DEMAND FOR DOCUMENTS** |
| | : **AND DEMAND FOR ANSWERS** |
| | : **TO INTERROGATORIES** |
| | : |
| Defendants. | : |

Plaintiff, METUCHEN CENTER, INC ("MCI") files this Complaint for damages

and declaratory judgment against defendants, LIBERTY MUTUAL INSURANCE

COMPANY ("LIMU"),  WEST AMERICAN INSURANCE COMPANY, ("WAIC"),

and XYZ COMPANY 1-100, ("XYZ") being a fictitious name or insurance companies

and underwriters presently unknown, alleging the following:

## INTRODUCTION

1.　　This action for bad faith and declaratory judgment arises out of plaintiff's claim for coverage under its All Risk Insurance Policy insured by defendant LIMU and apparently underwritten by co-defendant WAIC.

2.　　An All Risk Policy is a special type of insurance covering all fortuitous losses, in the absence of fraud or other intentional misconduct of the insured, unless a specific provision in the insurance policy expressly excludes or limits the loss from coverage. Victory Peach Group, Inc. Greater N.Y. Mutual Ins. Co., 310 N.J. Super. 82, 87-88 (App. Div. 1998).

3.　　Despite agreeing to cover plaintiff, MCI,  for all risks of direct physical loss of or physical damage to Covered Property, unless specifically excluded or limited by the policy, and plaintiff's business interruption loss following Governor Philip D. Murphy's March 9, 2020 Executive Order 103 which declared a State of Emergency and a Public Health Emergency throughout New Jersey and which resulted in the mandatory closure of plaintiff's non-essential businesses indefinitely beginning on March 21, 2020 following the execution of Executive Order 107, defendant(s) LIMU and/or WAIC have taken a calculated risk of their own by systemically denying business interruption claims throughout New Jersey which seek insurance benefits for the loss of business due to the aforesaid business closures following New Jersey's State of Emergency and Public Health Emergency.

4.　　Undeniably, defendant(s) chose to insure plaintiff MCI against the very loss caused by the closure of their insureds' non-essential business during the pending State of

Emergency and Public Health Emergency throughout New Jersey.  Plaintiff is entitled to recover under its insurance contract which it has long-relied upon as protection against unforeseen loss or damage and resulting loss of income.

## THE PARTIES

5.      Defendant, LIBERTY MUTUAL INSURANCE COMPANY ("LIMU"), with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts, and the entity who insures the plaintiff and who is authorized to transact business in the state of New Jersey.

6.      Defendant, WEST AMERICAN INSURANCE COMPANY, ("WAIC"), with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts, is a subsidiary of LIMU,  and the underwriter of the policy in dispute. Upon information and belief, WAIC is authorized to transact business in the state of New Jersey.

7.      Defendant, XYZ COMPANY 1-100, ("XYZ") being a fictitious name or insurance companies and underwriters presently unknown, is an entity that insures the plaintiff and or was the underwriter of the subject policy in dispute, and who is or  may be liable to the plaintiff for some or all of the alleged damages set forth in this Complaint.

8.      Plaintiff, METUCHEN CENTER, INC ("MCI") with its principal place of business located at 10-12 Embroidery Street, in the Borough of Sayreville, County of Middlesex, state of New Jersey, is a sporting goods apparel company that, during all times hereinafter mentioned, was insured under a certain Business Owner's Policy issued by defendants bearing policy number BZW(20) 58 89 98 09, and which was in effect

between March 9, 2020 and the present.  This policy insured the plaintiff with business interruption insurance coverage.

## FACTUAL BACKGROUND

9.    On March 9, 2020, Governor Philip D. Murphy executed Executive Order 103 which declared a State of Emergency and a Public Health Emergency throughout New Jersey. **(Exhibit "A")**

10.    Thereafter, on March 21, 2020, with the execution of Executive Order 107, Governor Philip D. Murphy closed all New Jersey non-essential businesses indefinitely. **(Exhibit "B")**

11.    Plaintiff, MCA, is a sporting good apparel company which was deemed a non-essential business and ordered closed by the Governor effective March 21, 2020.

12.    The mandatory closure of the plaintiff's non-essential business, constitutes "physical damage" under the terms of the subject policy.

13.    The mandatory closure of the plaintiff's non-essential business, constitutes a Constructive Eviction under the terms of the subject policy.

14.    The term "physical" is ambiguous since it can mean more than material alteration or damage, therefore it was incumbent upon the defendant(s) to clearly and specifically rule out coverage in the circumstances where it was not to be provided, something which did not occur in the case at bar. Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co., 406 N.J. Super. 524, 541-542 (App. Div. 2009).

15.   "Physical Damage" is not restricted to the physical destruction or harm to the insured property, rather it includes the loss of access, loss of use and loss of functionality of the insured/ scheduled premises. <u>Wakefern Food Corp</u>, 406 N.J. Super. 543.

16.   Had defendant(s) intended that its policy would not provide coverage for a State of Emergency, a Public Health Emergency, and or a Constructive Eviction then it was obligated to define its policy exclusion more clearly.  <u>Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co</u>., 406 N.J. Super. 524, 541 (App. Div. 2009)

17.   Prior to March 9, 2020, plaintiff MCI entered into a contract of indemnity with defendants, LIMU and or WIC, whereby plaintiff agreed to make cash payments to defendant(s) in exchange for defendants' promise to indemnify the plaintiff for losses including, but not limited to, business income losses at 10-12 Embroidery Street, in the Borough of Sayreville, County of Middlesex, state of New Jersey hereinafter referred to as the "insured premises" / "scheduled  premises", known as METUCHEN CENTER, INC. ("MCI").

18.   The insured premises known as METUCHEN CENTER, INC is covered under a policy issued by defendant SIC bearing policy number BZW(20) 58 89 98 09.

19.   Policy BZW(20) 58 89 98 09 (Business Owners Coverage endorsement BP00030713) was in effect on March 9, 2020 and remains in effect to this day. A copy of the Policy is attached hereto as **Exhibit "C".**

20.     Policy BZW(20) 58 89 98 09 (Business Owners Coverage endorsement BP00030713) specifically includes property, business personal property, business income and extra expense, ordinance or law coverage, and civil authority coverage to its insured.

21.     On or about March 31, 2020, plaintiff filed a business interruption claim with defendant, LIMU, via the defendant's on-line portal.  The claim was assigned to Property Adjuster, Michael Stanford, and assigned Claim Number 23799145.

22.     The denial letter, which is dated April 2, 2020, that plaintiff MCI received from defendant LIMU is attached hereto as **Exhibit "D"** and stated the following:

Dear Mr. Douglas,

This letter is to inform you that we have conducted an investigation of your claim for the reported loss of income. We have completed our review of the information provided by you or on your behalf. The following is a summary of our findings and position on coverage for the claim asserted.

The insurance policy issued to Metuchen Center Inc provides coverage subject to the policy terms and conditions. Based on our investigation and review of the policy, there is no coverage available for your loss as outlined below.

**THE CLAIM**

Our first notice of loss was on or about 03/31 /2020. It was reported your business suffered an income loss due to restrictions from COVID-19.

Our investigation of your claim revealed the following relevant information:

We have determined that your Athletic apparel business was fully shutdown and has suffered loss of income due to government recommendations or restrictions on the travel of people as a preventative measure to slow the spread of COVID-19.  We confirmed no direct physical loss or damage to your personal property or the building(s) or to neighboring properties.

23.    The defendant(s) denial letter (**Exhibit "D"**) went on to explain in detail the specific policy provisions upon which the plaintiff's claim was denied, and it states:

**THE POLICY**

With regard to your Policy, we refer you to the following relevant provisions contained in the BUSINESSOWNERS COVERAGE FORM BP 00 03 (7/13) which states:

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations.

The words "we", "us" and "our" refer to the company providing this insurance.

    \*\*\*

**SECTION I - PROPERTY**

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

\*\*\*

**5. Additional Coverages**

\*\*\*

**f. Business Income**

**(1)** Business Income
   **(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from

a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

\*\*\*

### i. Civil Authority

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends; whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I - Property

\*\*\*

## B. Exclusions

1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\*\*\*

### j. Virus Or Bacteria

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in Paragraph (1) does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion i.

**(3)** With respect to any loss or damage subject to the exclusion in Paragraph (1), such exclusion supersedes any exclusion relating to "pollutants".

\*\*\*

2.  We will not pay for loss or damage caused by or resulting from any of the following:

### b. Consequential Losses
Delay, loss of use or loss of market.

\*\*\*

### j. Pollution
We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

\*\*\*

3.  We will not pay for loss or damage caused by or resulting from any of the following Paragraphs a. through c. But if an excluded cause of loss that

is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\*\*\*

### b. Acts Or Decisions

Acts or decisions, including the failure to act or decide, of any person, group organization or governmental body.

\*\*\*

## H. Property Definitions

\*\*\*

**8.** "Operations" means your business activities occurring at the described premises.

**9.** "Period of restoration":
  **a.** Means the period of time that:
   **(1)** Begins:
    **(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
    **(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage; caused by or resulting from any Covered Cause of Loss at the described premises; and
   **(2)** Ends on the earlier of:
    **(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
    **(b)** The date when business is resumed at a new permanent location.

\*\*\*

**10.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

\*\*\*

24.    The policy issued by defendants to plaintiff, MCI, upon which the subject claim was made, did not contain exclusions or limitations for a State of Emergency. (**Exhibit "C"**)

25.    The policy issued by defendants to plaintiff, MCI, upon which the subject claim was made, did not contain exclusions or limitations for a Public Health Emergency. (**Exhibit "C"**).

26.    The policy issued by defendants to plaintiff, MCI, upon which the subject claim was made, did not contain exclusions or limitations for a Constructive Eviction. (**Exhibit "C"**).

27.    In fact, the denial letter explicitly contained an explanation of the limited yet specific and limited reasons for the denial. (**Exhibit "D"**)

28.    Therein, the defendant, LIMU, stated, "We have **determined** that your Athletic apparel business was fully shutdown and has suffered loss of income due to government recommendations or restrictions **on the travel of people** as a preventative measure to slow the spread of COVID-19." (**Exhibit "D"**)

29.    The defendant, LIMU, goes on to explain that, "We confirmed no direct physical loss or damage to your personal property or the building(s) or to neighboring properties." (**Exhibit "D"**)

30.    Governor Murphy's Executive Order was not a secret! The defendants knew full well why non-essential businesses were closed: a State of Emergency as well as a Public Health Emergency were declared on March 9, 2020 through Executive Order 103.

31.     Wherein the opening language of this policy as seen in section "**A. Coverage**", specifically states that "We will pay for direct ***physical loss or damage*** to Covered Property at the premises described . . ." the policy's section "**B. Exclusions**" section redefines the scope of direct ***physical loss or damage coverage to only cover "loss or damage."***

32.     Clearly, the operative policy language ("loss or damage" and "physical loss or physical damage") is distinguishable and intended to have two distinct meanings, although not specifically defined within the policy, thus creating ambiguity throughout the entire "**B. Exclusions**" section of this policy.

33.     Moreover, in the denial letter (**Exhibit "D"**) the defendant(s) only relied upon the following applicable specific exclusion to denying plaintiff's claim:

**B. Exclusions**

> **1.** We will not pay for **loss or damage** caused directly or indirectly by any of the following. Such **loss or damage** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

> **3.** We will not pay for **loss or damage** caused by or resulting from any of the following Paragraphs a. through c. **But if an excluded cause of loss that is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.**

\*\*\*

> **b. Acts Or Decisions**
>
> > Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

34.     The acts or decision of Governor Murphy, through Executive Order 103, created a State of Emergency as well as a Public Health Emergency, both of which are independent of the other.

35.     In addition, the acts or decision of Governor Murphy, through Executive Order 103, created a Constructive Eviction of the insured premises.

## BAD FAITH

36.     Defendants failed to exercise good faith in processing MCI's claim. Had defendants not conducted an inadequate and improper investigation of MCI's claim then defendants would have realized that no debatable reason exists for the denial of MCI's insurance benefits.

37.     It is quite apparent, based upon the face of defendant's denial letter (**Exhibit "D"**), that defendant(s) did not conduct any investigation into the merits of plaintiff's claim.

38.     No reasonable Claims Examiner or Property Adjuster can say with a straight face that he was unaware of the March 9, 2020 Executive Order 103 which declared a State of Emergency as well as a Public Health Emergency throughout New Jersey and which was immediately followed-up with Executive Order 107 on March 21, 2020 which indefinitely closed all New Jersey non-essential businesses in New Jersey.

39.     Upon information and belief, defendant(s) never intended to insure such a claim and, furthermore, defendant(s) have denied all such claims made by its New Jersey insureds.

40.     When an insured files an insurance claim, an insurer must treat its policyholders' interests with equal regard as it does its own interests.

41.     When an insured files an insurance claim, an insurer must treat its policyholders' interests with equal regard as it does its own interests because this is not an adversarial process.

42.     An insurance company should assist its policyholder with the claim.

43.     An Insurance company must disclose to its insured all benefits, coverages and time limits that may apply to the claim.

44.     An Insurance company must conduct a full, fair, and prompt investigation of the clam as its own expense.

45.     An insurance company must fully, fairly, and promptly evaluate and adjust the claim.

46.     An insurance company may not deny a claim or part of claim based on insufficient information, speculation, or biased information.

47.     An insurance company may not misrepresent facts or policy provisions.

48.     An insurance company acts with good faith when it assist the policyholder with locating coverage for the claimed loss.

49.     An insurance company acts with good faith when it assist the policyholder with locating coverage for the claimed loss, such as when the insurer scours its policy for coverage rather than exclusions.

50.     Upon information and belief defendants did not treat its policyholder's (the plaintiff), interests with equal regard as it does its own interests.

51.     Upon information and belief defendants did not treat its policyholder's (the plaintiff), interests with equal regard as it does its own interests because defendants treated the clam as an adversarial process.

52.     Defendants did not assist its policyholder (the plaintiff) with its claim.

53.     Defendants did not disclose to its insured all benefits, coverages, and time limits that may apply to the claim.

54.     Defendants did not conduct a full, fair, and prompt investigation of the plaintiff's clam.

55.     Defendants did not fully, fairly, and promptly evaluate and adjust the plaintiff's claim.

56.     Defendants denied plaintiff's claim based on insufficient information, speculation, or a biased information.

57.     Defendants misrepresented the claim facts and policy provisions in order to attempt to justify its wrongful denial of plaintiff's claim.

57.     Defendants did not assist its policyholder (the plaintiff) with locating coverage for the claimed loss.

58.     Defendants did not search its policy for coverage that would protect its policyholder, the plaintiff.

59.     Defendants searched its policy for exclusions.

## COUNT ONE

### Declaratory Judgment

61.    Plaintiff repeats and reiterates each of the averments set forth above as though more fully set forth herein.

62.    Plaintiff, MCI, seeks the Court's declaration of the parties' rights and duties under the Policy pursuant to N.J.S.A. 2A:16-50 et seq.

63.    A justiciable controversy exists between defendants and the plaintiff, MCI.

64.    The controversy between the defendants and the plaintiff, MCI is ripe for judicial review.

65.    New Jersey has enacted the Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq. for purposes of declaring parties' rights in this precise circumstance.

66.    Accordingly the plaintiff, MCI seeks a declaration from the Court that:

(a).    No policy exclusion applies to bar or limit Business Owners Coverage under endorsement BP00030713 for METUCHEN CENTER, INC.'s claim under Policy number BZW(20) 58 89 98 09;

(b).    The Policy, BZW(20) 58 89 98 09, Business Owners Coverage endorsement BP00030713 covers METUCHEN CENTER, INC.'s claim;

(c).    The various coverage provisions identified herein are triggered by METUCHEN CENTER, INC.'s claim;

(d).    The Exclusions contained within the plaintiff's Business Owners Coverage policy are ambiguous;

(e).    The Exclusions contained within the plaintiff's Business Owners Coverage policy are unenforceable;

(f).    The mandatory closure of the plaintiff's non-essential business constitutes "physical damage" under the terms of the subject policy;

(g)    The term "physical" is ambiguous since it can mean more than material alteration or damage, therefore it was incumbent upon the insurer (defendant) to clearly and specifically rule out coverage in the circumstances where it was not to be provided, something which did not occur in the case at bar. Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co., 406 N.J. Super. 524, 541-542 (App. Div. 2009).

(h).    Had defendants intended that its policy would provide no coverage for a State of Emergency and a Public Health Emergency, it was obligated to define its policy exclusion more clearly.  Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co., 406 N.J. Super. 524, 541 (App. Div. 2009); and

(i)    "Physical Damage" is not restricted to the physical destruction or harm to the insured property, rather it includes the loss of access, loss of use and loss of functionality of the insured/ scheduled premises. Wakefern Food Corp, 406 N.J. Super. 543.

**WHEREFORE,** pursuant to the Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq. the plaintiff prays for judgment by this Court that no policy exclusion applies to bar or limit coverage for METUCHEN CENTER, INC's claim under policy BZW(20) 58 89 98 09; the Policy (BZW(20) 58 89 98 09) covers METUCHEN CENTER, INC's claim; the various coverage provisions identified herein are triggered by METUCHEN

CENTER, INC's claim; the mandatory closure of the plaintiff's non-essential business constitutes "physical damage" under the terms of the subject policy; the term "physical" is ambiguous since it can mean more than material alteration or damage, therefore it was incumbent upon the insurer (defendant) to clearly and specifically rule out coverage in the circumstances where it was not to be provided, something which did not occur in the case at bar. Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co., 406 N.J. Super. 524, 541-542 (App. Div. 2009); had defendants intended that its policy would provide no coverage for a State of Emergency, a Public Health Emergency and or a Constructive Eviction, it was obligated to define its policy exclusion more clearly.  Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co., 406 N.J. Super. 524, 541 (App. Div. 2009); "Physical Damage" is not restricted to the physical destruction or harm to the insured property, rather it includes the loss of access, loss of use and loss of functionality of the insured/ scheduled premises. Wakefern Food Corp, 406 N.J. Super. 543; and that the plaintiff be awarded costs, counsel fees, and such other relief as the Court deems equitable and just.

## COUNT TWO

## BREACH OF CONTRACT

67.     Plaintiff repeats and reiterates each of the averments set forth above as though more fully set forth herein.

68.     The Policy (BZW(20) 58 89 98 09) is a valid and enforceable contract between the defendants and plaintiff.

69.     In the Policy, the defendants agreed to cover property against all risks of physical loss or damage not otherwise limited or excluded.

70.     The Executive Orders of Governor Philip D. Murphy created physical loss or damage to the insured/scheduled premises.

71.     No exclusions apply to bar coverage.

72.     MCI is entitled to coverage for the physical loss or damage.

73.     MCI complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

74.     Nonetheless, defendants unjustifiably refuse to pay for MCI's direct physical loss or damage in breach of the Policy.

75.     MCI has suffered and continues to suffer damages as a result of defendant(s) breach of contract.

**WHEREFORE**, the plaintiff, MCI demands judgment against the defendants for damages, interest, costs of suit, and such further relief as the Court deems just and proper.

## COUNT THREE

### BAD FAITH

76.     Plaintiff repeats and reiterates each of the averments set forth above as though more fully set forth herein.

77.     Defendants failed to exercise good faith in processing MCI's claim. Had defendants not conducted an inadequate and improper investigation of MCI's claim the defendants would have realized that no debatable reason exists for the denial of plaintiff's insurance benefits.

78.     It is quite apparent, based upon the face of the LIMU's denial letter (Exhibit "D"), that defendant did not conduct any investigation into the merits of plaintiff's claim.

79.     No reasonable Claims Examiner or Property Adjuster can say with a straight face that he was unaware of the March 9, 2020, Executive Order 103 which declared a State of Emergency, as well as a Public Health Emergency throughout New Jersey and which was immediately followed-up with Executive Order 107 on March 21, 2020 which indefinitely closed all New Jersey non-essential businesses in New Jersey.

80.     Upon information and belief, defendants never intended to insure such a claim and, furthermore, defendants have denied all such claims made by its New Jersey insureds following the aforesaid Executive Orders.

81.      When an insured files an insurance claim, an insurer must treat its policyholders' interests with equal regard as it does its own interests.

82.     When an insured files an insurance claim, an insurer must treat its policyholders' interests with equal regard as it does its own interests because this is not an adversarial process.

83.     An insurance company should assist its policyholder with the claim.

84.     An Insurance company must disclose to its insured all benefits, coverages and time limits that may apply to the claim.

85.     An Insurance company must conduct a full, fair, and prompt investigation of the claim as its own expense.

86.    An insurance company must fully, fairly, and promptly evaluate and adjust the claim.

87.    An insurance company may not deny a claim or part of claim based on insufficient information, speculation, or biased information.

88.    An insurance company may not misrepresent facts or policy provisions.

89.    An insurance company acts with good faith when it assist the policyholder with locating coverage for the claimed loss.

90.    An insurance company acts with good faith when it assist the policyholder with locating coverage for the claimed loss, such as when the insurer scours its policy for coverage rather than exclusions.

91.    Upon information and belief defendants did not treat its policyholder's (the plaintiff), interests with equal regard as it does its own interests.

92.    Upon information and belief defendants did not treat its policyholder's (the plaintiff), interests with equal regard as it does its own interests because defendants treated the claim as an adversarial process.

93.    Defendants did not assist its policyholder (the plaintiff) with its claim.

94.    Defendants did not disclose to its insured all benefits, coverages, and time limits that may apply to the claim.

95.    Defendants did not conduct a full, fair, and prompt investigation of the plaintiff's clam.

96.    Defendants did not fully, fairly, and promptly evaluate and adjust the plaintiff's claim.

97.    Defendants denied plaintiff's claim based on insufficient information, speculation, or a biased information.

98    Defendants misrepresented the claim facts and policy provisions in order to attempt to justify its wrongful denial of plaintiff's claim.

99.    Defendants did not assist its policyholder (the plaintiff) with locating coverage for the claimed loss.

100.   Defendants did not search its policy for coverage that would protect its policyholder, the plaintiff.

101.    Defendants searched its policy for exclusions.

101.   Defendant does not have the capacity to pay for all business interruption claims, therefore it never intended to insure such an event as claimed herein.

**WHEREFORE**, the plaintiff, MCI demands judgment against the defendants for damages, punitive damages, attorney's fees,  interest, costs of suit, and such further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand trial buy jury as to all issues involved in Counts Two and Three.

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Pursuant to R. 4:25-4, MICHAEL J. DEEM, ESQ. is hereby designated a Trial Counsel of this matter.

## CERTIFICATION

I hereby certify that this matter is not the subject of any other action pending in any Court or a pending Arbitration proceeding, nor is any other action or Arbitration proceeding contemplated.  All parties known to plaintiff at this time who should have been joined in this action, have been joined.

**R.C. SHEA & ASSOCIATES**
Attorneys for Plaintiff

By: *Michael Deem*
MICHAEL J. DEEM, ESQUIRE

Dated:  July 7, 2020

## DEMAND FOR PRODUCTION OF DOCUMENTS

**PLEASE TAKE NOTICE** that the undersigned attorneys for plaintiff(s), pursuant to New Jersey Court Rule 4:18-1, hereby demand that defendant(s) produce the following documents for inspection at the offices of R.C. SHEA & ASSOCIATES, 244 Main Street, Toms River, New Jersey, within 35 days from the date of this Notice.

## DOCUMENTS REQUESTED

1.     Any and all statements made by any party to this lawsuit, their agents, representatives or employees, whether written or oral.

2.     Any and all statements made by any witnesses to the events described in any and all of the paragraphs of the cause of action.

3.     Any and all statements made by any person other than witnesses or parties which relate or refer in any way to the cause of action.

4.      Any and all written reports rendered by defendant(s) proposed expert witnesses, intended or not intended to be called at the time of trial.

5.      Any and all books, treatises commentaries, reports, statutes, codes, ordinances, rules, regulations or other published documents referred to and utilized by or relied upon  by an expert witness whom defendant(s) intend(s) to call at trial.

6.      Any and all blue prints, charts, diagrams, drawings, graphs, maps, plats, plans, photographs, video, models or other visual reproduction of any object, place or thing prepared or utilized by, referred to or relied upon by any expert witnesses whom defendant(s) intend(s) to call at the time of trial.

7.      A copy of any and all written report or summaries of oral reports, as well as copies of the curriculum vitae of any and all experts that have been supplied to defendant's attorneys, whose testimony will be offered at time of trial in the above captioned matter.

8.      The entire underwriting file and insurance policy for Policy Number BZW(20) 58 89 98 09.

9.      The entire claims file of the defendant pertaining to Claim Number 23799145 including, but not limited to, any and all e-mail correspondence, policy logs, and claims activity logs.

10.     Specifically identify and attached hereto the name of each and every underwriter(s) or any other person(s) that reviewed and approved the plaintiff's application for insurance; and the person(s) who set the rate plaintiffs insurance premium.

11.    For the time period immediately preceding the plaintiff's application/renewal date for the coverage period at issue, specifically identify and produce any and all documents including, but not limited to, defendant's policies and procedures, underwriting standards/guidelines, memorandum, notes or any other document that defendant, its agents, and employees relied upon to determine whether or not to issue a policy or to set the cost of an applicant's premiums.

12.    Produce a *Curriculum Vitae* for each and every agent, employee and/or other person identified in this Notice to Produce, defendant's Answers to Interrogatories and/or who defendant will call to testify at the time of trial, including but not limited to any expert witnesses.

13.    Produce a complete and legible copy of defendant's Operations Guide, Business Interruption Claims Handling Manual, or the functional equivalent thereof for its first party claims and which was in effect on between March 9, 2020 and May 15, 2020.

14.    A list of all New Jersey business interruption claims which this defendant has agreed to pay due to the closure of non-essential businesses in New Jersey following the execution of Governor Philip D. Murphy's Executive Order 103 and 107.

15.    Any and all documents, including email, which demonstrate that defendant was aware of Governor Philip D. Murphy's Executive Order 103 and 107.

16.    Any and all documents, including email, which demonstrate that defendant was now aware of Governor Philip D. Murphy's Executive Order 103 and 107.

17.     Any and all documents demonstrating that defendant conducted a full, fair, and prompt investigation of the plaintiff's claim.

18.     Any and all documents demonstrating that defendant fully, fairly, and promptly evaluated and adjusted the plaintiff's claim.

19.     Identify and attach hereto any and all facts, data and documents this defendant submitted to the Insurance Services Office seeking to exclude "virus" as an insurable risk from its New Jersey business interruption policies.

## DEMAND FOR ANSWERS TO SUPPLEMENTAL INTERROGATORIES.

**PLEASE TAKE NOTICE** that pursuant to Rule 4:17-1(b)(1), plaintiff hereby demands Certified answers to the following Supplemental Interrogatories within sixty (60) days of the filing of Defendant's Answer to this Complaint.

## SCHEDULE OF SUPPLEMENTAL INTERROGATORIES

**PLEASE TAKE NOTICE** that the term "YOU" and LIBERTY MUTUAL INSURANCE COMPANY ("LIMU") / WEST AMERICAN INSURANCE COMPANY ("WAIC") are used interchangeably throughout these interrogatories.  "YOU" refers to the person answering these interrogatories and also refers to LIBERTY MUTUAL INSURANCE COMPANY ("LIMU") / WEST AMERICAN INSURANCE COMPANY ("WAIC") and

**PLEASE TAKE FURTHER NOTICE** that "Policy" or "subject policy" refers to Policy Number BZW(20) 58 89 98 09.

1.      Please state whether, during the time period from January 1, 2019, to the present defendant issued a policy of automobile liability insurance or a renewal policy to plaintiff.

2.      If your answer to interrogatory number 1 was yes, please set forth the policy number assigned to each policy.

3.      If your answer to interrogatory number 1 was yes, please set forth the effective date of each policy.

4. If your answer to interrogatory number 1 was yes, please set forth the amount of the indemnity limits provided by each policy.

5.       If your answer to interrogatory number 1 was yes, please identify any additional named insured under the terms of the policy.

6.      If your answer to interrogatory number 1 was yes, please identify the present custodian of each policy.

**Effective Date**

7.       Please set forth the effective date of the Policy in question.

**Receipt of Claim for Policy Benefits**

8.      Please state whether defendant received notice of a claim tendered by plaintiff for the payment of benefits payable under the terms of the policy number between March 1, 2020 and the present.

9.      If your answer to interrogatory number 8 was yes, please set forth the date that you first received notice.

10.     If your answer to interrogatory number 8 was yes, please state whether the claim was presented orally or in writing.

11.     If your answer to interrogatory number 8 was yes, please identify the person who first transmitted notice of the claim to you.

12.      If your answer to interrogatory number 8 was yes, please state whether you received a written proof of claim relating to that claim.

13.      If your answer to interrogatory number 8 was yes, please identify the present custodian of each writing relating to that claim.

14.     Please identify each person who received a notice of the claim which is the subject of this lawsuit.

15.     Please set forth each fact transmitted to you in support of the claim for policy benefits tendered by plaintiff which is the subject of this lawsuit.

16.      As to each fact identified in your answer to interrogatory number 15, please identify any person who possesses knowledge relating to that fact.

17.    As to each fact identified in your answer to interrogatory number 15, please identify each writing relating to each fact.

18.    Please identify the present custodian of each writing identified in your answer to interrogatory number 17.

## Cause for Withholding Policy Benefits

19.    Please state whether you paid business interruption benefits under the subject policy in response to the claim for benefits tendered by plaintiff.

20.     Please set forth each fact you relied upon in determining to withhold payment of the claim tendered by plaintiff under the policy that is the subject of this lawsuit.

21.    As to each fact identified in your answer to interrogatory number 20, please identify each person who possesses knowledge relating to that fact.

22.    As to each fact identified in your answer to interrogatory number 20, please identify each writing relating to each fact.

23.    As to each fact identified in your answer to interrogatory number 20, please identify the present custodian of any writing identified in your answer to interrogatory number 22.

24.    As to each fact identified in your answer to interrogatory number 20, please set forth the date that you became aware of that fact.

25.     As to each fact identified in your answer to interrogatory number 20, please set forth the means by which you became aware of such fact.

## Cause for Non-Coverage Claim

26.     Do you contend that the claim for benefits tendered by plaintiff was based upon a risk, loss, damage [or other occurrence] as to which the subject policy afforded no coverage?

27.     If your answer to interrogatory number 26 was yes, please set forth each fact you relied upon in determining that the risk, loss, damage [or claim for benefits] was not covered under the terms of the subject policy.

28.     If your answer to interrogatory number 26 was yes, please identify each person who possesses knowledge relating to any fact.

29.     If your answer to interrogatory number 26 was yes, please identify each writing relating to any fact.

30.     Please identify the present custodian of each writing identified in your answer to interrogatory number 29.

31.     Please state the date that you determined that the loss [or claim for Business Interruption benefits] tendered by plaintiff was not covered under the terms of the subject policy.

32.     If you determined that the loss [or claim for Business Interruption benefits] tendered by plaintiff was not covered under the subject policy, please set forth the date that you communicated that determination to the insured [or claimant].

33.     If you determined that the loss [or claim for Business Interruption benefits] tendered by plaintiff was not covered under the subject policy, please set forth the manner that you communicated the determination to the insured [or claimant].

34.     If you determined that the loss [or claim for Business Interruption benefits] tendered by plaintiff was not covered under the subject policy, please identify each person who participated in the determination of non-coverage.

35.     Please identify each writing relating to your determination of non-coverage.

36.     Please identify the present custodian of each writing identified in your answer to interrogatory number 35.

**Cause for Partial Payment**

37.     Please state whether you determined that some portion of the loss [or claim for Business Interruption benefits] tendered by plaintiff under policy which is subject to this lawsuit was compensable under the terms of that policy.

38.     If your answer to interrogatory number 37 was yes, please describe each loss [or claim for Business Interruption benefits] that you determined to be compensable.

39.     If your answer to interrogatory number 37 was yes, please set forth whether you communicated that determination to the [insured or claimant].

40.     If your answer to interrogatory number 37 was yes, please set forth the dollar amount that you determined was payable for the losses which you determined to be compensable.

41.      If your answer to interrogatory number 37 was yes, please set forth whether you tendered payment for the losses.

42.      If your answer to interrogatory number 37 was no, please set forth the reasons that you did not tender payment.

43.      If your answer to interrogatory number 37 was yes, please describe each loss [or claim for Business Interruption benefits that you determined to be non-compensable.

44.     As to each loss [or claim for Business Interruption benefits] that you determined to be non-compensable, please identify each person who participated in the determination.

45.     As to each loss [or claim for Business Interruption benefits] that you determined to be non-compensable, please set forth each fact upon which you relied in making that determination.

46.     as to each fact set forth in your answer to interrogatory number 45, please identify each person who possesses knowledge relating to any fact.

47.     As to each fact set forth in your answer to interrogatory number 45, please identify each writing relating to such fact.

48.     Please identify the present custodian of each writing identified in your answer to interrogatory number 47.

## Establishment of Claim File

49.     Please set forth the date that you received notice of the claim tendered by plaintiff for benefits under the terms of policy that is the subject of this lawsuit.

50.     Did you establish a claim file upon receipt of the claim tendered by plaintiff?

51.     If your answer to interrogatory number 50 was yes, please set forth the date that the claim file was established.

52.     If your answer to interrogatory number 50 was yes, please set forth the claim number assigned to the file.

53.     If your answer to interrogatory number 50 was yes, please identify the person who was assigned primary responsibility for the administration of the claim file.

54.     If your answer to interrogatory number 50 was yes, please identify the present custodian of the claim file.

55.     Please state whether, upon receipt of the claim tendered by plaintiff under policy that is the subject of this lawsuit, any particular person was assigned to investigate the facts relating to the claim.

56.     If your answer to interrogatory number 55 was yes, please identify each such person.

57.     If your answer to interrogatory number 55 was yes, please set forth the date that the person was so assigned.

58.     If your answer to interrogatory number 55 was yes, please set forth the manner in which that person was selected.

59.     If your answer to interrogatory number 55 was yes, please identify each writing relating to that assignment.

60.    Please identify the present custodian of each writing identified in your answer interrogatory number 69.

## Written Standards

61.    At the time that you received notice of the claim tendered by plaintiff for the payment of benefits under policy which is the subject of this lawsuit, did you maintain any writing setting forth your procedures for the investigation of these claims?

62.    If your answer to interrogatory number 61 was yes, please identify any such writing.

63.    If your answer to interrogatory number 61 was yes, please identify each person who participated in assembling the writing.

64.    If your answer to interrogatory number 61 was yes, please identify the present custodian of that writing.

65.    If your answer to interrogatory number 61 was yes, please state whether the person assigned to investigate the facts relating to the subject claim complied with the provisions of that writing.

66.    If your answer to interrogatory number 61 was no, please set forth the reasons that they did not do so.

**<u>Establishment of Loss Reserve</u>**

67.     Did you establish a loss reserve relating to the claim tendered by under the policy that is the subject of this lawsuit?

68.     If your answer to interrogatory number 67 was yes, please set forth the date that the reserve was set.

69.     If your answer to interrogatory number 67 was yes, please set forth the amount of the reserve.

70.     If your answer to interrogatory number 67 was yes, please identify each person who participated in setting the reserve.

71.     If your answer to interrogatory number 67 was yes, please state each fact you relied upon in establishing the reserve.

72.     As to each fact identified in your answer to interrogatory number 67, please identify each person who possesses knowledge relating to such fact.

73.     If your answer to interrogatory number 67 was yes, please identify each writing relating to the setting of the reserve.

74.     Please identify the present custodian of each writing identified in your answer to interrogatory number 73.

**Nature and Extent of Investigation**

75.     Did you conduct an investigation of the factual basis for the claim for benefits tendered by plaintiff under policy that is the subject of this lawsuit?

76.     If your answer to interrogatory number 87 was yes, please set forth the date that the investigation was conducted.

77.     If your answer to interrogatory number 75 was yes, please set forth each step you took to investigate the factual basis of the claim.

78.     If your answer to interrogatory number 75 was yes, please set forth whether the investigation is reflected in any writing.

79.     If your answer to interrogatory number 78 was yes, please identify each writing.

80.     Please identify the present custodian of each writing identified in your answer to interrogatory number 78.

81.     If your answer to interrogatory number 75 was yes, please set forth the date that the investigation was concluded.

82.     In conducting your investigation of the facts relating to the claim for benefits tendered by plaintiff under the policy subject to this lawsuit, did you identify any person who possesses knowledge relating to any of these facts?

83.     If your answer to interrogatory number 82 was yes, please identify any such person.

84.     If your answer to interrogatory number 82 was yes, please describe the knowledge possessed by that person.

85.      If your answer to interrogatory number 82 was yes, please identify each writing relating to the knowledge possessed by that person.

86.     Please identify the present custodian of each writing identified in your answer to interrogatory number 85.

87.     Please state whether, in your investigation of the facts which form the basis for the claim for benefits tendered by plaintiff under policy subject to this lawsuit, you obtained any statements from any person.

88.     If your answer to interrogatory number 87 was yes, please identify the person who gave the statement.

89.     If your answer to interrogatory number 87 was yes, please set forth the date that the statement was taken.

90.      If your answer to interrogatory number 87 was yes, please identify the person who took the statement.

91.     If your answer to interrogatory number 87 was yes, please identify each person who was present when the statement was taken.

92.     If your answer to interrogatory number 87 was yes, please identify the present custodian of the statement.

93.      Please state whether, in your investigation of the facts relating to the claim for benefits tendered by plaintiff under the subject policy you obtained all information that was reasonably available to you prior to your determination to [deny/partially deny/delay] payment of the claim.

94.     If your answer to interrogatory number 93 was no, please set forth a description of any information that you did not obtain.

95.     If your answer to interrogatory number 93 was no, please set forth the reason you did not obtain that information.

96.     Identify what efforts were mad by you to find coverage for the plaintiff, and if no effort was made then state the reason(s) why no effort was made.

**Expert Utilization**

97.     In the course of your investigation of the claim for benefits tendered by plaintiff under the subject policy did you obtain any expert opinion relating to your determination to [deny/partially deny/delay] payment of the claim?

98.     If your answer to interrogatory number 97 was yes, please identify any expert.

99.     If your answer to interrogatory number 97 was yes, please set forth the discipline in which that person has expertise.

100.     If your answer to interrogatory number 97 was yes, please set forth a description of the expert's training.

101.     If your answer to interrogatory number 97 was yes, please set forth the date that the expert was retained.

102.    If your answer to interrogatory number 97 was yes, please set forth whether the expert has examined any writing relating to the claim.

103.    If your answer to interrogatory number 97 was yes, please set forth the date that the examination was conducted.

104.    If your answer to interrogatory number 97 was yes, please identify any person present at the time of the examination.

105.    If your answer to interrogatory number 97 was yes, please identify each writing relating to the expert's conclusions.

106     Please identify the present custodian of each writing identified in your answer to interrogatory number 105.

**Investigation by Others**

107.    Did you retain any person to conduct an investigation of the facts relating to the claim tendered by plaintiff under the subject policy?

108.   If your answer to interrogatory number 107 was yes, please set forth the date that you retained that person.

109.   If your answer to interrogatory number 107 was yes, please set forth each fact upon which you relied in selecting that person to conduct the investigation.

110.   if your answer to interrogatory number 107 was yes, please set forth whether you provided that person with any writing relating to the manner in which the investigation was to be conducted.

111.   If your answer to interrogatory number 107 was yes, please identify each writing relating to the investigation.

112.   Please identify the present custodian of each writing identified in your answer to interrogatory number 107.

113.   If your answer to interrogatory number 107 was yes, please identify each writing relating to the investigation conducted by that person.

114.   Please identify the present custodian of each writing identified in your answer to interrogatory number 113.

**Insured or Claimant Conduct Regarding Investigation**

115.    Do you contend that any act or omission on the part of the insured [or claimant] in any way affected your ability to conduct an adequate investigation of the insured's [or claimant's] claim?

116.    Do you contend that any act or omission on the part of any agent of the insured [or claimant] affected your ability to conduct an adequate investigation of the claim for payment?

**Claim Evaluation**

117.    Please set forth each fact that supported your decision to deny payment of the claim of plaintiff under subject policy.

118.    As to each fact identified in your response to interrogatory number 117, please set forth the date that you became aware of that fact.

119.    As to each fact identified in your response to interrogatory number 117, please set forth the manner in which you became aware of that fact.

120.    As to each fact identified in your response to interrogatory number 117, please identify any person who possesses knowledge relating to any such fact.

121.    As to each fact identified in your response to interrogatory number 117, please identify each writing relating to that fact.

122.    Please identify the present custodian of each writing identified in your answer to interrogatory number 121.

123.    Please set forth each fact that supported the claim for payment as of the date that you determined to deny the payment of the claim under the subject policy.

124.    As to each fact identified in your answer to interrogatory number 121, please set forth the manner in which you became aware of each fact or contention.

125.    As to each fact identified in your answer to interrogatory number 121, please identify each person who possesses knowledge relating to any such fact.

126.    As to each fact identified in your answer to interrogatory number 121, please identify each writing relating to that fact.

127.    Please identify the present custodian of each writing identified in your answer to interrogatory number 126.

128.    If you were in possession of facts supporting the payment of [claimant's] claim as well as facts supporting the denial of such claim, please set forth each reason you decided to deny payment.

129.    Please state whether, at the time you decided to deny payment of the [claimant's] claim, you possessed any writing pertaining to the means by which these claims were evaluated.

130.    If your answer to interrogatory number 129 was yes, please identify each writing.

131.    If your answer to interrogatory number 129 was yes, please identify each person who participated in the preparation of that writing.

132.    If your answer to interrogatory number 129 was yes, please state whether you consulted that writing in the course of evaluating [claimant's] claim.

133.    Please identify the present custodian of each writing identified in your answer to interrogatory number 132.

134.    Was the [claimant's] claim for payment under the policy submitted to any claims committee for evaluation?

135.    If your answer to interrogatory number 134 was yes, please set forth the date that [claimant's] claim was submitted to the claims committee.

136.    If your answer to interrogatory number 134 was yes, please identify each person who constituted the committee.

137.    If your answer to interrogatory number 134 was yes, please set forth the manner in which the claim was presented to the committee.

138.    If your answer to interrogatory number 134 was yes, please identify each writing relating to the submission of the claim to the committee.

139.    Please identify the present custodian of each writing identified in your answer to interrogatory number 138.

140.    Prior to your determination to deny payment of the [claimant's] claim under the policy number did you conduct any investigation to identify the reasonable expectations of the insured [or claimant] under the terms of the policy?

141. If your answer to interrogatory number 140 was yes, please set forth the nature of any investigation you conducted.

142. If your answer to interrogatory number 140 was yes, please identify each person who has knowledge of any fact relating to the investigation.

143 If your answer to interrogatory number 140 was yes, please identify each writing relating to the investigation.

144.  Please identify the present custodian of any writing identified in your answer to interrogatory number 143.

145. If your answer to interrogatory number 140 was no, please set forth the reason why you did not conducted an investigation.

**Persons Involved in Claim Evaluation**

146.   Please identify each person who participated in the determination to deny payment of the [claimant's] claim.

147.   As to each person identified in your answer to interrogatory number 146, please set forth the job classification occupied by that person.

148.   As to each person identified in your answer to interrogatory number 146, please set forth the length of time that each person had been employed by you as of the time that [claimant's] claim was denied.

149.   As to each person identified in your answer to interrogatory number 146, please set forth the nature of any specialized training possessed by that person.

150.   As to each person identified in your answer to interrogatory number 146, please set forth whether you presently employ that person, and if you do not then set forth their last known address.

151.   Please state whether the decision to deny payment of the [claimant's] claim was reviewed by any review board or similar entity prior to the time that the claimant was notified of the denial.

152.   If your answer to interrogatory number 151 was yes, please identify each member of the review board or similar entity who reviewed your initial determination.

153.   If your answer to interrogatory number 151 was yes, please set forth the date that your initial determination was reviewed.

154.   If your answer to interrogatory number 151 was yes, please set forth the manner in which each determination was reviewed.

155.   If your answer to interrogatory number 151 was yes, please identify each writing presented to the review board or similar entity.

156.   Please identify the present custodian of each writing identified in your answer to interrogatory number 155.

157.   If your answer to interrogatory number 151 was yes, please set forth the action taken by the review board or similar entity.

158.   By April 1, 2020, were you were aware of the March 9, 2020 Executive Order 103 which declared a State of Emergency as well as a Public Health Emergency throughout New Jersey?

159.   If the answer to question 158 is no, then state what effort, if any , was made to learn the answer to that question.

160.   By April 1, 2020, were you were aware of the March 21, 2020 Executive Order which indefinitely closed all New Jersey non-essential businesses?

161.   If the answer to question 160 is no, then state what effort, if any, was made to learn the answer to that question.

162.   To date, have you paid any New Jersey business interruption claims following the March 21, 2020 Executive Order?

163.   If your answer to question 162 is yes, then identify each and every claim.

164.   Do you agree that when an insured files an insurance claim, you must treat your policyholders' interests with equal regard as your own?

165.   If your answer to question 164 is no then explain why you do not feel the need treat your policyholders' interests with equal regard as your own?

166.   Do you agree that an insured files an insurance claim, you must treat the policyholders' interests with equal regard as your own because the claims process is not an adversarial process.

167.   If your answer to question 166 is no then explain why you feel that the claims process is adversarial.

## CERTIFICATION

I hereby certify that the foregoing answers to interrogatories are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I hereby certify that the copies of the reports annexed hereto provided by either treating physicians or proposed expert witnesses are exact copies of the entire report or reports provided by them; that the existence of other reports of said doctors or experts are unknown to me, and if such become later known or available, I shall serve them promptly on the propounding party.

_____

Dated

# EXHIBIT "A"

**EXECUTIVE ORDER NO. 103**

WHEREAS, Coronavirus disease 2019 ("COVID-19") is a contagious, and at times fatal, respiratory disease caused by the SARS-CoV-2 virus; and

WHEREAS, COVID-19 is responsible for the 2019 novel coronavirus outbreak, which was first identified in Wuhan, the People's Republic of China in December 2019 and quickly spread to the Hubei Province and multiple other countries; and

WHEREAS, symptoms of the COVID-19 illness include fever, cough, and shortness of breath, which may appear in as few as two or as long as 14 days after exposure, and can spread from person to person via respiratory droplets produced when an infected person coughs or sneezes; and

WHEREAS, on January 30, 2020, the International Health Regulations Emergency Committee of the World Health Organization declared the outbreak a "public health emergency of international concern," which means "an extraordinary event which is determined to constitute a public health risk to other States through the international spread of disease and to potentially require a coordinated international response," and thereafter raised its global risk assessment of COVID-19 from "high" to "very high"; and

WHEREAS, on January 31, 2020, the United States Department of Health and Human Services Secretary declared a public health emergency for the United States to aid the nation's healthcare community in responding to COVID-19; and

WHEREAS, as of March 9, 2020, according to the Centers for Disease Control and Prevention ("CDC"), there were more than 114,000 confirmed cases of COVID-19 worldwide, with over 4,000 of those cases having resulted in death; and

WHEREAS, as of March 9, 2020, there were more than 500 confirmed cases of COVID-19 in the United States, with 22 of those cases having resulted in death; and

2

WHEREAS, as of March 9, 2020, there were 11 presumed positive cases of COVID-19 in New Jersey, with 24 additional "Persons Under Investigation" spread across the counties of Bergen, Camden, Cumberland, Essex, Hunterdon, Middlesex, Monmouth, Passaic, Union, and Sussex; and

WHEREAS, as of March 9, 2020, there were 142 positive cases of COVID-19 in the State of New York and seven presumptive positive cases in the Commonwealth of Pennsylvania; and

WHEREAS, the CDC expects that additional cases of COVID-19 will be identified in the coming days, including more cases in the United States, and that person-to-person spread is likely to continue to occur; and

WHEREAS, if COVID-19 spreads in New Jersey at a rate comparable to the rate of spread in other affected areas, it will greatly strain the resources and capabilities of county and municipal governments, including public health agencies, that provide essential services for containing and mitigating the spread of contagious diseases, such as COVID-19, and the situation may become too large in scope to be handled in its entirety by the normal county and municipal operating services in some parts of this State, and this situation may spread to other parts of the State; and

WHEREAS, the spread of COVID-19 may make it difficult or impossible for citizens to obtain consumer goods and other necessities of life due to supply chain disruption and price increases, as well as hamper the delivery of essential services such as police, fire, and first aid; and

WHEREAS, the State's public bidding act, N.J.S.A. 52:34-6 et seq., provides a public exigency exemption, N.J.S.A. 52:34-10(b), that in the event of a threat to the life, health, or safety to the public, advertised bidding is not required to obtain those

3

goods and services necessary to address the public exigency where the Division of Purchase of Property provides preapproval in accordance with Treasury Circular 18-14-DPP; and

WHEREAS, in the event of a declared emergency pursuant to Treasury Circular 19-10-DPP, the threshold for delegated purchasing by individual State Departments is raised to $100,000 such that purchases at or below that amount do not require prior approval or action by DPP; and

WHEREAS, the spread of COVID-19 may disrupt the timely delivery of State contracted goods or services, the immediate delivery and fulfillment of which is necessary for the life, safety, or health of the public; and

WHEREAS, the State of New Jersey has been working closely with the CDC, local health departments, and healthcare facilities to monitor, plan for and mitigate the spread of COVID-19 within the State; and

WHEREAS, through Executive Order No. 102, which I signed on February 3, 2020, I created the State's Coronavirus Task Force, chaired by the Commissioner of the New Jersey Department of Health ("DOH"), in order to coordinate the State's efforts to appropriately prepare for and respond to the public health hazard posed by COVID-19; and

WHEREAS, it is critical to prepare for and respond to suspected or confirmed COVID-19 cases in New Jersey, to implement appropriate measures to mitigate the spread of COVID-19, and to prepare in the event of an increasing number of individuals requiring medical care or hospitalization; and

WHEREAS, the State of New Jersey also acts as an employer with tens of thousands of employees, and the spread of COVID-19 requires preparedness for staffing shortages and flexibility in work rules to ensure that its employees can fully comply with all

4

medically appropriate measures while also ensuring the continuous delivery of State services performed by Executive branch agencies; and

WHEREAS, the continuous delivery of services at the county and municipal level performed by those governments and their employees is also essential; and

WHEREAS, the spread of COVID-19 within New Jersey constitutes an imminent public health hazard that threatens and presently endangers the health, safety, and welfare of the residents of one or more municipalities or counties of the State; and

WHEREAS, it is necessary and appropriate to take action against this public health hazard to protect and maintain the health, safety, and welfare of New Jersey residents and visitors; and

WHEREAS, the facts as set forth above and consultation with the Commissioner of DOH confirms that there exists a public health emergency in the State; and

WHEREAS, New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-107 et seq., prohibits excessive price increases during a declared state of emergency, or for 30 days after the termination of the state of emergency; and

WHEREAS, the Constitution and statutes of the State of New Jersey, particularly the provisions of N.J.S.A. 26:13-1 et seq., N.J.S.A. App. A: 9-33 et seq., N.J.S.A. 38A:3-6.1, and N.J.S.A. 38A:2-4 and all amendments and supplements thereto, confer upon the Governor of the State of New Jersey certain emergency powers;

NOW, THEREFORE, I, PHILIP D. MURPHY, Governor of the State of New Jersey, in order to protect the health, safety and welfare of the people of the State of New Jersey,  DO DECLARE and PROCLAIM that a Public Health Emergency and State of Emergency exist in the State of New Jersey, and I hereby ORDER and DIRECT the following:

5

1.    I authorize and empower the State Director of Emergency Management, who is the Superintendent of State Police, in conjunction with the Commissioner of DOH, to take any such emergency measures as the State Director may determine necessary, including the implementation of the State Emergency Operations Plan and directing the activation of county and municipal emergency operations plans, in order to fully and adequately protect the health, safety and welfare of the citizens of the State of New Jersey from any actual or potential threat or danger that may exist from the possible exposure to COVID-19. The State Director of Emergency Management, in conjunction with the Commissioner of DOH, is authorized to coordinate the relief effort from this emergency with all governmental agencies, volunteer organizations, and the private sector.

2.    The State Director of Emergency Management, in conjunction with the  Commissioner of DOH, shall also supervise and coordinate all activities of all State, regional and local political bodies and agencies in order to ensure the most effective and expeditious implementation of this order, and, to this end, may call upon all such agencies and political subdivisions for any assistance necessary.

3.    Given the concurrent invocation of both a State of Emergency pursuant to <u>N.J.S.A.</u> App.A.:9-33 et seq. and a Public Health Emergency as contemplated by <u>N.J.S.A.</u> 26:13-1 et seq., I reserve the right as specifically contemplated by <u>N.J.S.A.</u> 26:13-3 to exercise the authority and powers specific to the Emergency Health Powers Act as I deem necessary and appropriate to ensure the public health for New Jersey's residents.

4.    It shall be the duty of every person or entity in this State or doing business in this State and of the members of the governing body and every official, employee, or agent of every

6

political subdivision in this State and of each member of all other governmental bodies, agencies, and authorities in this State of any nature whatsoever, to cooperate fully with the State Director of Emergency Management and the Commissioner of DOH in all matters concerning this state of emergency.

5.   The Coronavirus Task Force established under Executive Order No. 102 is continued with the Commissioner of DOH as the chair, and shall provide assistance on the State's efforts preparing for and responding to the public health hazard posed by COVID-19.

6.   I authorize and empower the executive head of any agency or instrumentality of the State government with authority to promulgate rules to waive, suspend, or modify any existing rule, where the enforcement of which would be detrimental to the public welfare during this emergency, notwithstanding the provisions of the Administrative Procedure Act or any law to the contrary for the duration of this Executive Order, subject to my prior approval and in consultation with the State Director of Emergency Management and the Commissioner of DOH.  Any such waiver, modification, or suspension shall be promulgated in accordance with N.J.S.A. App. A:9-45.

7.   All State agencies, and specifically the Departments of Banking and Insurance, Health, Human Services, Education, and the Civil Service Commission are authorized to take appropriate steps to address the public health hazard of COVID-19, including increasing access and eliminating barriers to medical care, protecting the health and well-being of students, and protecting the health and well-being of State, county, and municipal employees while ensuring the continuous delivery of State, county, and municipal services.

7

8.   I authorize and empower the State Director of Emergency Management, in conjunction with the Commissioner of DOH, to order the evacuation of all persons, except for those emergency and governmental personnel whose presence the State Director deems necessary, from any area where their continued presence would present a danger to their health, safety, or welfare because of the conditions created by this emergency.

9.   I authorize and empower the State Director of Emergency Management, in conjunction with the Commissioner of DOH, to utilize all property, equipment, and facilities owned, rented, operated, and maintained by the State of New Jersey to house and shelter persons who may need to be evacuated from a residence, dwelling, building, structure, or vehicle during the course of this emergency.

10.  I authorize and empower the Adjutant General, in accordance with N.J.S.A. 38A:2-4 and N.J.S.A. 38A:3-6.1, to order to active duty such members of the New Jersey National Guard who, in the Adjutant General's judgment, are necessary to provide aid to those localities where there is a threat or danger to the public health, safety, and welfare and to authorize the employment of any supporting vehicles, equipment, communications, or supplies as may be necessary to support the members so ordered.

11.  In accordance with the N.J.S.A. App. A:9-34 and N.J.S.A. App. A:9-51, I reserve the right to utilize and employ all available resources of the State government and of each and every political subdivision of the State, whether of persons, properties, or instrumentalities, and to commandeer and utilize any personal services and any privately-owned property necessary to protect against this emergency.

8

12. In accordance with N.J.S.A. App. A:9 40, no municipality, county, or any other agency or political subdivision of this State shall enact or enforce any order, rule, regulation, ordinance, or resolution which will or might in any way conflict with any of the provisions of this Order, or which will in any way interfere with or impede the achievement of the purposes of this Order.

13. In accordance with N.J.S.A. App. A:9-34, N.J.S.A. App. A:9-40.6, and N.J.S.A. 40A:14-156.4, no municipality or public or semipublic agency shall send public works, fire, police, emergency medical, or other personnel or equipment into any non-contiguous impacted municipality within this State, nor to any impacted municipality outside this State, unless and until such aid has been directed by the county emergency management coordinator or his or her deputies in consultation with the State Director of Emergency Management in conjunction with the Commissioner of DOH.

14. This Order shall take effect immediately and shall remain in effect until such time as it is determined by me that an emergency no longer exists.

GIVEN, under my hand and seal this 9th day of March, Two Thousand and Twenty, and of the Independence of the United States, the Two Hundred and Forty-Fourth.

[seal]                    /s/ Philip D. Murphy

                          Governor

Attest:

/s/ Matthew J. Platkin

Chief Counsel to the Governor

# EXHIBIT "B"

## EXECUTIVE ORDER NO. 107

WHEREAS, through Executive Order No. 102 (2020), which I signed on February 3, 2020, I created the State's Coronavirus Task Force, chaired by the Commissioner of the New Jersey Department of Health ("DOH"), in order to coordinate the State's efforts to appropriately prepare for and respond to the public health hazard posed by Coronavirus disease 2019 ("COVID-19"); and

WHEREAS, in light of the dangers posed by COVID-19, I issued Executive Order No. 103 (2020) on March 9, 2020, the facts and circumstances of which are adopted by reference herein, which declared both a Public Health Emergency and State of Emergency; and

WHEREAS, in accordance with N.J.S.A. App. A:9-34 and -51, I reserved the right to utilize and employ all available resources of State government to protect against the emergency created by COVID-19; and

WHEREAS, in accordance with N.J.S.A App. A:9-40, I declared that, due to the State of Emergency, no municipality, county, or any agency or political subdivision of this State shall enact or enforce any order, rule, regulation, ordinance, or resolution which will or might in any way conflict with any of the provisions of my Executive Orders, or which will in any way interfere with or impede their achievement; and

WHEREAS, to further protect the health, safety, and welfare of New Jersey residents by, among other things, reducing the rate of community spread of COVID-19, I issued Executive Order No. 104 (2020) on March 16, 2020, the facts and circumstances of which are also adopted by reference herein, which established statewide social mitigation strategies for combatting COVID-19; and

2

WHEREAS, Executive Order No. 104 (2020) limited the scope of service and hours of operation for restaurants and certain retail establishments to balance the need to allow individuals to access food and other essential materials with the need to limit unnecessary person-to-person contact; and

WHEREAS, Executive Order No. 104 (2020) deemed a subset of businesses as "essential," including grocery/food stores, pharmacies, medical supply stores, gas stations, healthcare facilities, and ancillary stores within healthcare facilities, and it authorized the State Director of Emergency Management, who is the Superintendent of State Police, to make additions, amendments, clarifications, exceptions, and exclusions to that list; and

WHEREAS, Executive Order No. 104 (2020) made clear that such essential businesses may continue operating without limits on their scope of service or hours of operation, absent further amendments by the State Director of Emergency Management; and

WHEREAS, Executive Order No. 104 (2020) and subsequent Administrative Orders issued by the State Director of Emergency Management also placed restrictions on other businesses' scope of service and hours of operation, and also placed restrictions on the size of gatherings in the State; and

WHEREAS, as of March 20, 2020, according to the Centers for Disease Control and Prevention ("CDC"), there were more than 234,000 confirmed cases of COVID-19 worldwide, with over 9,800 of those cases having resulted in death; and

WHEREAS, as of March 20, 2020, there were more than 15,000 confirmed cases of COVID-19 in the United States, with at least 201 of those cases having resulted in death; and

WHEREAS, as of March 20, 2020, there were at least 890 positive cases of COVID-19 in New Jersey, with at least 11 of those cases having resulted in death; and

3

WHEREAS, social mitigation strategies for combatting COVID-19 require every effort to reduce the rate of community spread of the disease; and

WHEREAS, the CDC has advised that COVID-19 spreads most frequently through person-to-person contact when individuals are within six feet or less of one another; and

WHEREAS, as a result, the CDC has recommended that individuals practice "social distancing" to prevent community spread of the virus; and

WHEREAS, the CDC has defined social distancing as the practice of "remaining out of congregate settings, avoiding mass gatherings, and maintaining distance (approximately 6 feet or 2 meters) from others when possible"; and

WHEREAS, to mitigate community spread of COVID-19, it is necessary to limit the unnecessary movement of individuals in and around their communities and person-to-person interactions in accordance with CDC and DOH guidance; and

WHEREAS, the best way for New Jersey residents to keep themselves, their families, and their communities safe during the COVID-19 outbreak is to stay at home as much as possible; and

WHEREAS, as of March 15, 2020, the CDC recommends that for the next eight weeks, gatherings of 50 or more people be canceled or postponed throughout the United States; and

WHEREAS, as of March 16, 2020, the White House went further than the CDC had and recommended that Americans avoid social gatherings in groups of more than 10 people; and

WHEREAS, restricting the physical presence of individuals in office environments and work sites is critical to preventing future spread of COVID-19; and

4

WHEREAS, accommodating work-from-home arrangements is an effective means to ensure continuity of operations while also limiting person-to-person contact; and

WHEREAS, the CDC has recommended employers to establish policies and practices to increase the physical distance among employees and between employees; and

WHEREAS, permitting the workforce to work from home may reduce stress on the State's child care system; and

WHEREAS, as of March 19, 2020, I have instructed all State departments and agencies to utilize work-from-home arrangements for both essential and non-essential employees wherever feasible; and

WHEREAS, given the rapidly rising incidence of COVID-19, temporarily closing non-essential retail businesses will strengthen New Jersey's efforts to slow the spread of COVID-19; and

WHEREAS, even as we institute social distancing measures, the number of COVID-19 cases in New Jersey is likely to increase for the immediate future, meaning we must take all possible steps to preserve our health care system's capacity to treat those who require emergency or intensive care; and

WHEREAS, the Constitution and statutes of the State of New Jersey, particularly the provisions of N.J.S.A. 26:13-1 et seq., N.J.S.A. App. A: 9-33 et seq., N.J.S.A. 38A:3-6.1, and N.J.S.A. 38A:2-4 and all amendments and supplements thereto, confer upon the Governor of the State of New Jersey certain emergency powers, which I have invoked;

NOW, THEREFORE, I, PHILIP D. MURPHY, Governor of the State of New Jersey, by virtue of the authority vested in me by the Constitution and by the Statutes of this State, do hereby ORDER and DIRECT:

5

1.   The operative paragraphs of Executive Order No. 104 (2020) are hereby superseded in full.  The factual findings of Executive Order No. 104 (2020) remain applicable except to the extent they are in conflict with the factual findings in this or any intervening Executive Order.

2.   All New Jersey residents shall remain home or at their place of residence unless they are 1) obtaining goods or services from essential retail businesses, as described in Paragraph 6; 2) obtaining takeout food or beverages from restaurants, other dining establishments, or food courts, pursuant to Paragraph 8; 3) seeking medical attention, essential social services, or assistance from law enforcement or emergency services; 4) visiting family or other individuals with whom the resident has a close personal relationship, such as those for whom the individual is a caretaker or romantic partner; 5) reporting to, or performing, their job; 6) walking, running, operating a wheelchair, or engaging in outdoor activities with immediate family members, caretakers, household members, or romantic partners while following best social distancing practices with other individuals, including staying six feet apart; 7) leaving the home for an educational, religious, or political reason; 8) leaving because of a reasonable fear for his or her health or safety; or 9) leaving at the direction of law enforcement or other government agency.

3.   When in public, individuals must practice social distancing and stay six feet apart whenever practicable, excluding immediate family members, caretakers, household members, or romantic partners.

4.   Individuals who have to travel pursuant to Paragraph 2 should only use public transportation only if they have no other feasible choice.  Individuals who ride public transportation should abide by best social distancing practices, including making

6

all efforts to stand or sit six feet away from other riders and frequently use sanitizing products.

5.   Gatherings of individuals, such as parties, celebrations, or other social events, are cancelled, unless otherwise authorized by any part of this Order. The State Director of Emergency Management, who is the Superintendent of the State Police, shall have the discretion to make clarifications and issue orders related to this provision.

6.   The brick-and-mortar premises of all non-essential retail businesses must close to the public as long as this Order remains in effect. Essential retail businesses, listed below, are excluded from this directive and may remain open during their normal business hours. Essential retail businesses must, wherever practicable, provide pickup services outside or adjacent to their stores for goods ordered in advance online or by phone. Additionally, online and telephonic delivery services are permitted to the extent the retail business is authorized to operate an online or telephonic delivery service under existing law. The State Director of Emergency Management, who is the Superintendent of the State Police, shall have the discretion to make additions, amendments, clarifications, exceptions, and exclusions to this list:

        a.   Grocery stores, farmer's markets and farms that sell directly to customers, and other food stores, including retailers that offer a varied assortment of foods comparable to what exists at a grocery store;

        b.   Pharmacies and alternative treatment centers that dispense medicinal marijuana;

        c.   Medical supply stores;

        d.   Retail functions of gas stations;

7

    e.   Convenience stores;

    f.   Ancillary stores within healthcare facilities;

    g.   Hardware and home improvement stores;

    h.   Retail functions of banks and other financial institutions;

    i.   Retail functions of laundromats and dry-cleaning services;

    j.   Stores that principally sell supplies for children under five years old;

    k.   Pet stores;

    l.   Liquor stores;

    m.   Car dealerships, but only to provide auto maintenance and repair services, and auto mechanics;

    n.   Retail functions of printing and office supply shops; and

    o.   Retail functions of mail and delivery stores.

7.   Any essential retail business whose brick-and-mortar premises remain open to the public shall abide by social distancing practices to the extent practicable while providing essential services.  These include all reasonable efforts to keep customers six feet apart and frequent use of sanitizing products on common surfaces.

8.   All restaurants, cafeterias, dining establishments, and food courts, with or without a liquor license, all bars, and all other holders of a liquor license with retail consumption privileges, are permitted to operate their normal business hours, but are limited to offering only food delivery and/or take-out services in accordance with their existing liquor licenses.  If alcoholic beverages are to be sold from a restaurant, dining establishment or bar with a liquor license, such sales shall be

8

limited to original containers sold from the principal public barroom. The on-premises consumption of alcohol is prohibited. All retail sales of alcoholic beverages by limited brewery licensees, restricted brewery licensees, plenary and farm winery licensees (and associated salesrooms), craft distillery licensees and cidery and meadery licensees must be in original containers and must be sold through customer pick up and/or delivered by licensees in accordance with their existing licenses.

9.   All recreational and entertainment businesses, including but not limited to the following list, must close to the public as long as this Order remains in effect. The State Director of Emergency Management, who is the Superintendent of State Police, shall have the discretion to make additions, amendments, clarifications, exceptions, and exclusions to this list:

- a.   Casino gaming floors, including retail sports wagering lounges, and casino concert and entertainment venues. Online and mobile sports and casino gaming services may continue to be offered notwithstanding the closure of the physical facility.

- b.   Racetracks, including stabling facilities and retail sports wagering lounges. Mobile sports wagering services may continue to be offered notwithstanding the closure of the physical facility.

- c.   Gyms and fitness centers and classes.

- d.   Entertainment centers, including but not limited to, movie theaters, performing arts centers, other concert venues, and nightclubs.

- e.   All indoor portions of retail shopping malls. Restaurants and other stores located within

9

shopping malls that have their own external entrances open to the public, separate from the general mall entrance, may remain open pursuant to the terms and directives of this Order for operating hours and takeout or food delivery services. All entrances and exits to the common area portions of retail shopping malls must remain closed.

f.  All places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement parks, water parks, aquariums, zoos, arcades, fairs, children's play centers, funplexes, theme parks, bowling alleys, family and children's attractions.

g.  Facilities where personal care services are performed that, by their very nature, result in noncompliance with social distancing guidelines, including but not limited to cosmetology shops; barber shops; beauty salons; hair braiding shops; nail salons; electrology facilities; spas, including day spas and medical spas, at which solely elective and cosmetic medical procedures are performed; massage parlors, tanning salons, tattoo parlors, and public and private social clubs, whether or not they serve alcohol, including but not limited to facilities owned or operated by the American Legion, Veterans of Foreign Wars, Knights of Columbus, and any other social clubs associated with community service organizations. This excludes any health facilities that provide medically necessary or therapeutic services.

10

  h.   All municipal, county, and State public libraries,
       and all libraries and computer labs at public and
       private colleges and universities.

10.   All businesses or non-profits in the State, whether
closed or open to the public, must accommodate their workforce,
wherever practicable, for telework or work-from-home arrangements.
For purposes of this order, "telework" means the practice of
working from home or alternative locations closer to home through
the use of technology that equips the individual to access
necessary materials.

11.   To the extent a business or non-profit has employees
that cannot perform their functions via telework or work-from-home
arrangements, the business or non-profit should make best efforts
to reduce staff on site to the minimal number necessary to ensure
that essential operations can continue.  Examples of employees who
need to be physically present at their work site in order to
perform their duties include, but are not limited to, law
enforcement officers, fire fighters, and other first responders,
cashiers or store clerks, construction workers, utility workers,
repair workers, warehouse workers, lab researchers, information
technology maintenance workers, janitorial and custodial staff,
and certain administrative staff.

12.   All public, private, and parochial preschool program
premises, and elementary and secondary schools, including charter
and renaissance schools, shall remain closed to students as long
as this Order remains in effect.

13.   All institutions of higher education shall continue to
cease such in-person instruction as long as this Order remains in
effect. The Secretary of the Office of Higher Education shall have
the authority to grant a waiver to allow in-person instruction to
students on a case-by-case basis where a compelling rationale to

11

allow such access exists. The Secretary of the Office of Higher Education shall coordinate with institutions of higher education to determine appropriate student housing conditions for those students who reside in on-campus housing as their primary residence.

14.   The Commissioner of the Department of Education ("DOE"), in consultation with the Commissioner of DOH, shall be authorized to permit schools to remain open on a limited basis for the provision of food or other essential, non-educational services, or for educational or child care services if needed in emergency situations after consultation with the Commissioner of DOH. The Commissioner of DOE shall also have the authority to close any other career or training facilities over which he has oversight, after consultation with the Commissioner of DOH.

15.   The Commissioner of DOE shall continue working with each public school district, and private and parochial schools as appropriate, to ensure that students are able to continue their educations during this time period through appropriate home instruction. Local school districts, charter schools, and renaissance schools, in consultation with the Commissioner of DOE, shall have the authority and discretion to determine home instruction arrangements as appropriate on a case-by-case basis to ensure all students are provided with appropriate home instruction, taking into account all relevant constitutional and statutory obligations.

16.   The Secretary of the Department of Agriculture, in conjunction with the Commissioner of DOE, shall take all necessary actions to ensure that all students eligible for free or reduced meals shall continue to receive the services or supports necessary to meet nutritional needs during closures.

12

17.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the provision of health care or medical services to members of the public.

18.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way access to essential services for low-income residents, including but not limited to food banks.

19.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of newspapers, television, radio, and other media services.

20.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of law enforcement agencies.

21.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of the federal government, or the movement of federal officials in New Jersey while acting in their official capacity.

22.  In accordance with N.J.S.A. App. A:9-33, et seq., as supplemented and amended, the State Director of Emergency Management, who is the Superintendent of State Police, through the police agencies under his control, to determine and control the direction of the flow of vehicular traffic on any State or interstate highway, municipal or county road, and any access road, including the right to detour, reroute, or divert any or all traffic and to prevent ingress or egress from any area that, in the State Director's discretion, is deemed necessary for the protection of the health, safety, and welfare of the public, and to remove parked or abandoned vehicles from such roadways as conditions warrant.

23.  The Attorney General, pursuant to the provisions of N.J.S.A. 39:4-213, shall act through the Superintendent of State Police, to determine and control the direction of the flow of

13

vehicular traffic on any State or interstate highway, municipal or county road, and any access road, including the right to detour, reroute, or divert any or all traffic, to prevent ingress or egress, and to determine the type of vehicle or vehicles to be operated on such roadways. I further authorize all law enforcement officers to enforce any such order of the Attorney General or Superintendent of State Police within their respective municipalities.

24.  It shall be the duty of every person or entity in this State or doing business in this State and of the members of the governing body and every official, employee, or agent of every political subdivision in this State and of each member of all other governmental bodies, agencies, and authorities in this State of any nature whatsoever, to cooperate fully in all matters concerning this Executive Order.

25.  Penalties for violations of this Executive Order may be imposed under, among other statutes, N.J.S.A. App. A:9-49 and -50.

26.  This Order shall take effect on Saturday, March 21, 2020, at 9:00 p.m., and shall remain in effect until revoked or modified by the Governor, who shall consult with the Commissioner of DOH as appropriate.

GIVEN, under my hand and seal this
21st day of March,
Two Thousand and Twenty, and
of the Independence of the
United States, the Two
Hundred and Forty-Fourth.

[seal]                    /s/ Philip D. Murphy

Governor


Attest:

/s/ Matthew J. Platkin

Chief Counsel to the Governor

# EXHIBIT "C"

BUSINESSOWNERS
BP 00 03 07 13

## BUSINESSOWNERS COVERAGE FORM



Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section **II** - Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** - Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** - Liability.

### SECTION I - PROPERTY

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

(5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(6) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the buildings or structures;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:

(1) Property you own that is used in your business;

(2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b)**;

(3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

**(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2)**; and

**(5)** Exterior building glass, if you are a tenant and no Limit Of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

**2.** **Property Not Covered**

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** "Money" or "securities" except as provided in the:

**(1)** Money And Securities Optional Coverage; or

**(2)** Employee Dishonesty Optional Coverage;

**c.** Contraband, or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**e.** Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in the:

**(1)** Outdoor Property Coverage Extension; or

**(2)** Outdoor Signs Optional Coverage;

**f.** Watercraft (including motors, equipment and accessories) while afloat;

**g.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

**h.** "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

**i.** "Electronic data", except as provided under Additional Coverages - Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system; or

**j.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

**3.** **Covered Causes Of Loss**

Direct physical loss unless the loss is excluded or limited under Section I - Property.

**4.** **Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

© Insurance Services Office, Inc., 2012     BP 00 03 07 13

**(3)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

**(4)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**(5)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

  **(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

  **(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(6)** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

  **(a)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

  **(b)** Changes in or extremes of temperature;

  **(c)** Disease;

  **(d)** Frost or hail; or

  **(e)** Rain, snow, ice or sleet.

**b.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(1)** Animals, and then only if they are killed or their destruction is made necessary.

**(2)** Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

  **(a)** Glass that is part of the exterior or interior of a building or structure;

  **(b)** Containers of property held for sale; or

  **(c)** Photographic or scientific instrument lenses.

**c.** For loss or damage by theft, the following types of property are covered only up to the limits shown (unless a higher Limit Of Insurance is shown in the Declarations):

**(1)** $2,500 for furs, fur garments and garments trimmed with fur.

**(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**(3)** $2,500 for patterns, dies, molds and forms.

**5.** **Additional Coverages**

  **a.** **Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

  **(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;



**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this policy;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to Paragraph **(3)(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5)** **Examples**

**Example 1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of Loss | $50,000 |
| Amount of Loss Payable | $49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable | $10,000 |

($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13



**Example 2**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $80,000 |
| Amount of Loss Payable | $79,500 |
| | ($80,000-$500) |
| Debris Removal Expense | $40,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b.  Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c.  Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for service at each premises described in the Declarations, unless a different limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d.  Collapse**

The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**(1)** For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;



(c) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

(d) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

   (i) A cause of loss listed in Paragraph **(2)(a)** or **(2)(b)**;

   (ii) One or more of the "specified causes of loss";

   (iii) Breakage of building glass;

   (iv) Weight of people or personal property; or

   (v) Weight of rain that collects on a roof.

(3) This Additional Coverage - Collapse does **not** apply to:

(a) A building or any part of a building that is in danger of falling down or caving in;

(b) A part of a building that is standing, even if it has separated from another part of the building; or

(c) A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(4) With respect to the following property:

(a) Awnings;

(b) Gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Retaining walls; and

(h) Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

(5) If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

(a) The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

(6) This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(7) This Additional Coverage - Collapse will not increase the Limits of Insurance provided in this policy.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**(8)** The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**e.** **Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f.** **Business Income**

**(1)** Business Income

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(i)** The portion of the building which you rent, lease or occupy;

**(ii)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(iii)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

**(c)** Business Income means the:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**(ii)** Continuing normal operating expenses incurred, including payroll.

**(d)** Ordinary payroll expenses:

**(i)** Means payroll expenses for all your employees except:

**i.** Officers;

**ii.** Executives;

**iii.** Department Managers;

**iv.** Employees under contract; and

**v.** Additional Exemptions shown in the Declarations as:

- Job Classifications; or

- Employees.

**(ii)** Include:

**i.** Payroll;

**ii.** Employee benefits, if directly related to payroll;

**iii.** FICA payments you pay;

**iv.** Union dues you pay; and

**v.** Workers' compensation premiums.

**(2) Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**i.** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**ii.** 60 consecutive days after the date determined in Paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section I - Property.

© Insurance Services Office, Inc., 2012     **BP 00 03 07 13**

g. **Extra Expense**

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

(a) The portion of the building which you rent, lease or occupy;

(b) The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

(c) Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

(2) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue "operations":

(i) At the described premises; or

(ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b) To minimize the suspension of business if you cannot continue "operations".

(c) To:

(i) Repair or replace any property; or

(ii) Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage f. Business Income.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section I - Property.

h. **Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

i.   **Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1) Four consecutive weeks after the date of that action; or

(2) When your Civil Authority Coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I - Property.

j.   **Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

(1) Money orders issued by any post office, express company or bank that are not paid upon presentation; or

(2) "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

k.   **Forgery Or Alteration**

(1) We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

(2) If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3) For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

© Insurance Services Office, Inc., 2012   BP 00 03 07 13

(4) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit Of Insurance is shown in the Declarations.

**I. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs (3) through (9) of this Additional Coverage.

(3) The ordinance or law referred to in Paragraph (2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

(6) The most we will pay under this Additional Coverage, for each described building insured under Section I - Property, is $10,000. If a damaged building(s) is covered under a blanket Limit Of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment Property Loss Condition in Section I - Property do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph (6) of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

(1) We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss at the premises of a dependent property or secondary dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property or secondary dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit Of Insurance is indicated in the Declarations.

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

(a) Source of materials; or

(b) Outlet for your products.

(3) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(4) Dependent property means property owned by others whom you depend on to:

(a) Deliver materials or services to you, or to others for your account. But services does not mean water supply services, wastewater removal services, communication supply services or power supply services;

(b) Accept your products or services;

(c) Manufacture your products for delivery to your customers under contract for sale; or

(d) Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

(5) Secondary dependent property means an entity which is not owned or operated by a dependent property and which:

(a) Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

(b) Accepts materials or services from a dependent property, which in turn accepts your materials or services.

© Insurance Services Office, Inc., 2012



A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property.

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

    **(i)** Water supply services;

    **(ii)** Wastewater removal services;

    **(iii)** Communication supply services; or

    **(iv)** Power supply services.

The secondary dependent property must be located in the coverage territory of this policy.

**(6)** The coverage period for Business Income under this Additional Coverage:

    **(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property or secondary dependent property; and

    **(b)** Ends on the date when the property at the premises of the dependent property or secondary dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(7)** The Business Income coverage period, as stated in Paragraph **(6)**, does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

    **(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

    **(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(8)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

**(1)** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**(2)** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

**(1)** We will pay:

    **(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

    **(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

**(1)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the

extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

(2) The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage - Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit Of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

(4) This Additional Coverage does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

q. **Interruption Of Computer Operations**

(1) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

(2) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) Coverage under this Additional Coverage - Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

(b) If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

(c) The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data")

© Insurance Services Office, Inc., 2012

BP 00 03 07 13



by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit Of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage - Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(7)** This Additional Coverage does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**r.** **Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

**(1)** The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot is the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

(3) The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

(4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(5) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

(6) The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage:

(a) If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense Additional Coverages is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section I - Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises:



a. **Newly Acquired Or Constructed Property**

(1) **Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at premises other than the one described, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

(2) **Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

(a) Business Personal Property, including such property that you newly acquire, at any location you acquire; or

(b) Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(3) **Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

b. **Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

c. **Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than trees, shrubs or plants which are part of a vegetated roof), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit Of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees, including temporary or leased employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**e. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit Of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section **I** - Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.2.m.(2),** Errors Or Omissions; and

**(g)** Paragraph **B.3.**

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

© Insurance Services Office, Inc., 2012     BP 00 03 07 13

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(d) Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

(2) The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

(3) Paragraph **B.** Exclusions in Section **I - Property** does not apply to this Coverage Extension except for:

(a) Paragraph **B.1.c.,** Governmental Action;

(b) Paragraph **B.1.d.,** Nuclear Hazard;

(c) Paragraph **B.1.f.,** War And Military Action;

(d) Paragraph **B.2.f.,** Dishonesty;

(e) Paragraph **B.2.g.,** False Pretense;

(f) Paragraph **B.3.;** and

(g) Paragraph **B.6.,** Accounts Receivable Exclusion.

g. **Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the buildings or structures described in the Declarations or within 100 feet of the described premises, whichever distance is greater.

(2) The limitation under Paragraph **A.4.a.(5)** also applies to property in a portable storage unit.

(3) Coverage under this Extension:

(a) Will end 90 days after the Business Personal Property has been placed in the storage unit;

(b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to Business Personal Property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form, and does not apply to loss or damage to the storage unit itself.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   a. **Ordinance Or Law**

      (1) The enforcement of or compliance with any ordinance or law:

         (a) Regulating the construction, use or repair of any property; or

         (b) Requiring the tearing down of any property, including the cost of removing its debris.

      (2) This exclusion, Ordinance Or Law, applies whether the loss results from:

         (a) An ordinance or law that is enforced even if the property has not been damaged; or

         (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

   b. **Earth Movement**

      (1) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

      (2) Landslide, including any earth sinking, rising or shifting related to such event;

      (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

      (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in Paragraphs (1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

      (5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

         (a) Airborne volcanic blast or airborne shock waves;

         (b) Ash, dust or particulate matter; or

         (c) Lava flow.

   With respect to coverage for volcanic action as set forth in 5(a), 5(b) and 5(c), all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

   This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused.

---

© Insurance Services Office, Inc., 2012

BP 00 03 07 13



**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h.** **Certain Computer-related Losses**

**(1)** The failure, malfunction or inadequacy of:

**(a)** Any of the following, whether belonging to any insured or to others:

**(i)** "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

**(ii)** "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

**(iii)** "Computer" operating systems and related software;

**(iv)** "Computer" networks;

**(v)** Microprocessors ("computer" chips) not part of any "computer" system; or

**(vi)** Any other computerized or electronic equipment or components; or

**(b)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**(2)** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above, results in a "specified cause of loss" under Section I - Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i.** **"Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot results from fire or lightning; or

**(2)** To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

**j.** **Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.**

**(3)** With respect to any loss or damage subject to the exclusion in Paragraph **(1)**, such exclusion supersedes any exclusion relating to "pollutants".

© Insurance Services Office, Inc., 2012
BP 00 03 07 13



2. We will not pay for loss or damage caused by or resulting from any of the following:

a. **Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(1) Electrical current, including arcing;

(2) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(3) Pulse of electromagnetic energy; or

(4) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

(1) An occurrence that took place within 100 feet of the described premises; or

(2) Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

b. **Consequential Losses**

Delay, loss of use or loss of market.

c. **Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

d. **Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

e. **Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

f. **Dishonesty**

Dishonest or criminal acts (including theft) by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees (including temporary or leased employees), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

(1) Applies whether or not an act occurs during your normal hours of operation;

© Insurance Services Office, Inc., 2012

**(2)** Does not apply to acts of destruction by your employees (including temporary or leased employees) or authorized representatives; but theft by your employees (including temporary or leased employees) or authorized representatives is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g.** **False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h.** **Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i.** **Collapse**

**(1)** Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **i.(1)(a)** or **i.(1)(b)**.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion **i.** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage - Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**j.** **Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**k.** **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l.** **Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

© Insurance Services Office, Inc., 2012

BP 00 03 07 13



**(7)** The following causes of loss to personal property:

   **(a)** Dampness or dryness of atmosphere;

   **(b)** Changes in or extremes of temperature; or

   **(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section I - Property.

However, we will pay for direct loss or damage caused by lightning.

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if

such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

a. We will not pay for:

(1) Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

(2) Any other consequential loss.

b. With respect to this exclusion, suspension means:

(1) The partial slowdown or complete cessation of your business activities; and

(2) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

a. Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

b. Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

c. Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

1. The most we will pay for loss or damage in any one occurrence is the applicable Limits Of Insurance of Section I - Property shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

3. The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits Of Insurance of Section I - Property:

a. Fire Department Service Charge;

b. Pollutant Clean-up And Removal;

c. Increased Cost Of Construction;

d. Business Income From Dependent Properties;

e. Electronic Data; and

f. Interruption Of Computer Operations.

**4. Building Limit - Automatic Increase**

a. In accordance with Paragraph **C.4.b.**, the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

© Insurance Services Office, Inc., 2012

**b.** The amount of increase is calculated as follows:

**(1)** Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date or any other policy change amending the Building limit by:

**(a)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

**(b)** .08, if no percentage of annual increase is shown in the Declarations; and

**(2)** Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example**

If:

The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146 365 = $3,200.

**5. Business Personal Property Limit - Seasonal Increase**

**a.** Subject to Paragraph **5.b.**, the Limit of Insurance for Business Personal Property is automatically increased by:

**(1)** The Business Personal Property - Seasonal Increase percentage shown in the Declarations; or

**(2)** 25% if no Business Personal Property - Seasonal Increase percentage is shown in the Declarations;

to provide for seasonal variances.

**b.** The increase described in Paragraph **5.a.** will apply only if the Limit Of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section **I** - Property.

**2.** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

**a.** Money and Securities;

**b.** Employee Dishonesty;

**c.** Outdoor Signs; and

**d.** Forgery or Alteration.

But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

**3.** No deductible applies to the following Additional Coverages:

**a.** Fire Department Service Charge;

**b.** Business Income;

**c.** Extra Expense;

**d.** Civil Authority; and

**e.** Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

2. **Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section I - Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within two years after the date on which the direct physical loss or damage occurred.

5. **Loss Payment**

In the event of loss or damage covered by this policy:

a. At our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation, subject to the following:

**(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(i)** The Limit of Insurance under Section I - Property that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

    **i.** Of comparable material and quality; and

    **ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

**(i)** The actual cash value of the lost or damaged property; or

**(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the full replacement cost of the property.

**Example**

The full replacement cost of property which suffers a total loss is $100,000. The property is insured for $70,000. 80% of the full replacement cost of the property immediately before the loss is $80,000 ($100,000 x .80 = $80,000). A partial loss of $25,000 is sustained. The amount of recovery is determined as follows:

Amount of recovery

$70,000 ÷ $80,000 = .875

.875 x $25,000 = $21,875

(c) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(d) We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

(e) The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

(2) If the Actual Cash Value - Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

(3) The following property at actual cash value:

(a) Used or secondhand merchandise held in storage or for sale;

(b) Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

(d) Manuscripts; and

(e) Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Tenants' improvements and betterments at:

(a) Replacement cost if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13



If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(7)** Applicable only to accounts receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to reestablish or collect;

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

6. **Recovered Property**

   If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section I - Property.

7. **Resumption Of Operations**

   We will reduce the amount of your:

   a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

   b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

8. **Vacancy**

   a. **Description Of Terms**

      (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs (a) and (b) below:

         (a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

         (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

            (i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

            (ii) Used by the building owner to conduct customary operations.

      (2) Buildings under construction or renovation are not considered vacant.

   b. **Vacancy Provisions**

      If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

      (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

         (a) Vandalism;

         (b) Sprinkler leakage, unless you have protected the system against freezing;

         (c) Building glass breakage;

         (d) Water damage;

         (e) Theft; or

         (f) Attempted theft.

      (2) With respect to Covered Causes of Loss other than those listed in Paragraphs (1)(a) through (1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

F. **Property General Conditions**

   1. **Control Of Property**

      Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

      The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

   2. **Mortgageholders**

      a. The term "mortgageholder" includes trustee.

      b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

      c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

© Insurance Services Office, Inc., 2012

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

   (1) Pays any premium due under this policy at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

   All of the terms of this policy will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   (1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   (2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

   At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

   (1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   (2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

3. **No Benefit To Bailee**

   No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

4. **Policy Period, Coverage Territory**

   Under Section I - Property:

   a. We cover loss or damage commencing:

      (1) During the policy period shown in the Declarations; and

      (2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

   b. The coverage territory is:

      (1) The United States of America (including its territories and possessions);

      (2) Puerto Rico; and

      (3) Canada.

G. **Optional Coverages**

   If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below:

   1. **Outdoor Signs**

      a. We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

         (1) Owned by you; or

         (2) Owned by others but in your care, custody or control.

      b. Paragraph **A.3.**, Covered Causes Of Loss and Paragraph **B.**, Exclusions in Section I - Property do not apply to this Optional Coverage, except for:

         (1) Paragraph **B.1.c.**, Governmental Action;

         (2) Paragraph **B.1.d.**, Nuclear Hazard; and

         (3) Paragraph **B.1.f.**, War And Military Action.

      c. We will not pay for loss or damage caused by or resulting from:

         (1) Wear and tear;

         (2) Hidden or latent defect;

         (3) Rust;

         (4) Corrosion; or

         (5) Mechanical breakdown.

BP 00 03 07 13                    © Insurance Services Office, Inc., 2012                    Page 33 of 61

d. The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Outdoor Signs shown in the Declarations.

e. The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

2. **Money And Securities**

a. We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee (including a temporary or leased employee) having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

(1) Theft, meaning any act of stealing;

(2) Disappearance; or

(3) Destruction.

b. In addition to the Limitations and Exclusions applicable to Section I - Property, we will not pay for loss:

(1) Resulting from accounting or arithmetical errors or omissions;

(2) Due to the giving or surrendering of property in any exchange or purchase; or

(3) Of property contained in any "money" operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

c. The most we will pay for loss in any one occurrence is:

(1) The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

(a) In or on the described premises; or

(b) Within a bank or savings institution; and

(2) The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

d. All loss:

(1) Caused by one or more persons; or

(2) Involving a single act or series of related acts;

is considered one occurrence.

e. You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

3. **Employee Dishonesty**

a. We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

(1) Cause you to sustain loss or damage; and also

(2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

(a) Any employee; or

(b) Any other person or organization.

b. We will not pay for loss or damage:

(1) Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

(2) Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph a.), "managers" or directors:

(a) Whether acting alone or in collusion with other persons; or

(b) While performing services for you or otherwise.

(3) The only proof of which as to its existence or amount is:

(a) An inventory computation; or

(b) A profit and loss computation.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**(4)** Caused by an employee if the employee had also committed theft or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the employee, learned of that theft or dishonest act prior to the policy period shown in the Declarations.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of acts;

is considered one occurrence.

**e.** If any loss is covered:

**(1)** Partly by this insurance; and

**(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

**(1)** You; or

**(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

**(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

**(1)** This Optional Coverage as of its effective date; or

**(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.**, employee means:

**(1)** Any natural person:

**(a)** While in your service or for 30 days after termination of service;

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent employee, as defined in Paragraph **(1)** above, who is on leave; or

**(b)** To meet seasonal or short-term workload conditions;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

**(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

**(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

**(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4. Equipment Breakdown Protection Coverage**

**a.** We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

**(1)** Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** Damage to any vacuum tube, gas tube, or brush; or

**(4)** The functioning of any safety or protective device.

**b.** Paragraphs **A.4.a.(1)** and **A.4.a.(2)**, Limitations, do not apply to this Optional Coverage.

**c.** With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

**(1)** Paragraph **B.2.a.**, Electrical Apparatus;

**(2)** Paragraph **B.2.d.**, Steam Apparatus; and

**(3)** Paragraph **B.2.l.(6)**, Mechanical Breakdown.

**d.** With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Signs Optional Coverage** does not apply.

**e.** If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

**f.** With respect to Additional Coverages **5.f.** Business Income and **5.g.** Extra Expense, if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

© Insurance Services Office, Inc., 2012          BP 00 03 07 13

With respect to the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

g.  With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

1.  "Computer" means:

    a.  Programmable electronic equipment that is used to store, retrieve and process data; and

    b.  Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

    "Computer" includes those used to operate production-type machinery or equipment.

h.  Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

(1)  Your last known address; or

(2)  The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**H.  Property Definitions**

1.  "Computer" means:

    a.  Programmable electronic equipment that is used to store, retrieve and process data; and

    b.  Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

    "Computer" does not include those used to operate production-type machinery or equipment.

2.  "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

3.  "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD- ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

4.  "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

5. "Manager" means a person serving in a directorial capacity for a limited liability company.

6. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

7. "Money" means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Traveler's checks, register checks and money orders held for sale to the public.

8. "Operations" means your business activities occurring at the described premises.

9. "Period of restoration":

a. Means the period of time that:

(1) Begins:

(a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

(b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

(2) Ends on the earlier of:

(a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(b) The date when business is resumed at a new permanent location.

b. Does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

10. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

11. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

12. "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

(1) The cost of filling sinkholes; or

(2) Sinking or collapse of land into man-made underground cavities.

b. Falling objects does not include loss of or damage to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13



c. Water damage means:

(1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

(2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of "specified causes of loss", such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the ground surface.

13. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

14. "Valuable papers and records" means inscribed, printed or written:

a. Documents;

b. Manuscripts; and

c. Records;

including abstracts, books, deeds, drawings, films, maps or mortgages. But "valuable papers and records" does not mean "money" or "securities".

## SECTION II - LIABILITY

### A. Coverages

1. **Business Liability**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** - Liability; and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension - Supplementary Payments.

b. This insurance applies:

(1) To "bodily injury" and "property damage" only if:

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b) The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**f.** **Coverage Extension - Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

i. Cooperate with us in the investigation, settlement or defense of the "suit";

ii. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

iii. Notify any other insurer whose coverage is available to the indemnitee; and

iv. Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides us with written authorization to:

i. Obtain records and other information related to the "suit"; and

ii. Conduct and control the defense of the indemnitee in such "suit".

**(3)** So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II** - Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(a) We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

(b) The conditions set forth above, or the terms of the agreement described in Paragraph (2)(f) above, are no longer met.

## 2. Medical Expenses

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section II - Liability. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## B. Exclusions

### 1. Applicable To Business Liability Coverage

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13



**c.** **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by an insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d.** **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.** **Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.** **Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible;

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

© Insurance Services Office, Inc., 2012   BP 00 03 07 13

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g.** **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

  (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

  (b) The operation of any of the following machinery or equipment:

    (i) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (ii) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services; and

(9) Services in the practice of pharmacy.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k.  Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II - Liability.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or any-one acting on your behalf to per-form a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental phys-ical injury to "your product" or "your work" after it has been put to its in-tended use.

o. **Recall Of Products, Work Or Im-paired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, re-call, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the mar-ket or from use by any person or or-ganization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p. **Personal And Advertising Injury**

"Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would in-flict "personal and advertising injury";

(2) Arising out of oral or written publication, in any manner, of material, if done by or at the di-rection of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period;

(4) For which the insured has as-sumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(5) Arising out of a breach of con-tract, except an implied contract to use another's advertising idea in your "advertisement";

(6) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(7) Arising out of the wrong descrip-tion of the price of goods, pro-ducts or services stated in your "advertisement";

(8) Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web sites for oth-ers; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertis-ing injury" under Paragraph **F. Liability And Medical Expenses** Definitions.

For the purposes of this exclu-sion, the placing of frames, bor-ders or links, or advertising, for you or others anywhere on the Internet, by itself, is not consid-ered the business of advertising, broadcasting, publishing or tele-casting;

(9) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;



**(10)** With respect to any loss, cost or expense arising out of any:

    **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants";

**(11)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

**(13)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q.** **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**r.** **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s.** **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** in Section **II** - Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section **II** - Liability.

2. **Applicable To Medical Expenses Coverage**

   We will not pay expenses for "bodily injury":

   a. To any insured, except "volunteer workers".

   b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. To a person injured on that part of premises you own or rent that the person normally occupies.

   d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

   f. Included within the "products-completed operations hazard".

   g. Excluded under Business Liability Coverage.

3. **Applicable To Both Business Liability Coverage And Medical Expenses Coverage - Nuclear Energy Liability Exclusion**

   This insurance does not apply:

   a. Under Business Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

         (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

         (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   b. Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

© Insurance Services Office, Inc., 2012       BP 00 03 07 13

c. Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

(1) The "nuclear material":

(a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

(b) Has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

d. As used in this exclusion:

(1) "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(2) "Hazardous properties" include radioactive, toxic or explosive properties;

(3) "Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for:

(i) Separating the isotopes of uranium or plutonium;

(ii) Processing or utilizing "spent fuel"; or

(iii) Handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(4) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(5) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self- supporting chain reaction or to contain a critical mass of fissionable material;

(6) "Property damage" includes all forms of radioactive contamination of property;

(7) "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(8) "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(9) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**(10)** "Waste" means any waste material:

   **(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

   **(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

**C. Who Is An Insured**

**1.** If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

   **(1)** "Bodily injury" or "personal and advertising injury":

   **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

   **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

   **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)**; or

   **(d)** Arising out of his or her providing or failing to provide professional health care services.

   **(2)** "Property damage" to property:

   **(a)** Owned, occupied or used by;

   **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section II - Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

**(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section II - Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

E. **Liability And Medical Expenses General Conditions**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this policy:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this policy unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Separation Of Insureds**

   Except with respect to the Limits of Insurance of Section **II - Liability**, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

F. **Liability And Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

© Insurance Services Office, Inc., 2012

2.  "Auto" means:

    a.  A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    b.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

    However, "auto" does not include "mobile equipment".

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

    c.  All other parts of the world if the injury or damage arises out of:

        (1)  Goods or products made or sold by you in the territory described in Paragraph **a.** above;

        (2)  The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

        (3)  "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

    provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

5.  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

        (1)  The repair, replacement, adjustment or removal of "your product" or "your work"; or

        (2)  Your fulfilling the terms of the contract or agreement.

9.  "Insured contract" means:

    a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b.  A sidetrack agreement;

    c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.  An elevator maintenance agreement;

    f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.



Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

© Insurance Services Office, Inc., 2012           BP 00 03 07 13

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

Page 58 of 61 &copy; Insurance Services Office, Inc., 2012 BP 00 03 07 13

**SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

         (a) Have not started; and

         (b) Have not been contracted for;

         within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.



   (5) Failure to:

      (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

      (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

1. This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

**1.** We have the right to:

  **a.** Make inspections and surveys at any time;

  **b.** Give you reports on the conditions we find; and

  **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

  **a.** Are safe and healthful; or

  **b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section I - Property.

**2.** Business Liability Coverage is excess over:

  **a.** Any other insurance that insures for direct physical loss or damage; or

  **b.** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

**1.** The first Named Insured shown in the Declarations:

  **a.** Is responsible for the payment of all premiums; and

  **b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

  **a.** Paid to us prior to the anniversary date; and

  **b.** Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

1. This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

2. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

1. Applicable to Businessowners Property Coverage:

   If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

   a. Prior to a loss to your Covered Property.



b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

   (1) Someone insured by this insurance;

   (2) A business firm:

      (a) Owned or controlled by you; or

      (b) That owns or controls you; or

   (3) Your tenant.

   You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

   This will not restrict your insurance.

2. Applicable to Businessowners Liability Coverage:

   If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

# EXHIBIT "D"


**Liberty Mutual.**
INSURANCE

Liberty Mutual Insurance
Business Lines Property Claims
PO Box 515097
Los Angeles, CA 90051-5097
1-800-499-1898 EXT 6304
Michael.Stanford02@LibertyMutual.com

RECEIVED
APR 1 6 2020
SCHENCK AGENCY

April 2, 2020

Metuchen Center Inc.
Attention: Al Douglas Jr.
10-12 Embroidery St
Sayreville, NJ 08872-1809

| Re: | Insured: | Metuchen Center Inc. |
|---|---|---|
| | Loss Location(s): | 10-12 Embroidery St |
| | | Sayreville, NJ 08872-1809 |
| | Date of Loss: | 03/31/2020 |
| | Policy Number: | BZW588998092 |
| | Policy Effective Dates: | 10/01/2019 – 10/01/2020 |
| | Claim Number: | 23799145 |
| | Underwriting Co.: | West American Insurance Company |

Dear Mr. Douglas,

This letter is to inform you that we have conducted an investigation of your claim for the reported loss of income. We have completed our review of the information provided by you or on your behalf. The following is a summary of our findings and position on coverage for the claim asserted.

The insurance policy issued to Metuchen Center Inc provides coverage subject to the policy terms and conditions. Based on our investigation and review of the policy, there is no coverage available for your loss as outlined below.

**THE CLAIM**

Our first notice of loss was on or about 03/31/2020. It was reported your business suffered an income loss due to restrictions from COVID-19.

Our investigation of your claim revealed the following relevant information:

We have determined that your Athletic apparel business was fully shutdown and has suffered loss of income due to government recommendations or restrictions on the travel of people as a preventative measure to slow the spread of COVID-19. We confirmed no direct physical loss or damage to your personal property or the building(s) or to neighboring properties.

**THE POLICY**

Page 2

With regard to your Policy, we refer you to the following relevant provisions contained in the
BUSINESSOWNERS COVERAGE FORM BP 00 03 (7/13) which states:

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights,
duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the
Declarations.

The words "we", "us" and "our" refer to the company providing this insurance.

\*\*\*

**SECTION I – PROPERTY**
**A. Coverage**
   We will pay for direct physical loss of or damage to Covered Property at the premises described in
   the Declarations caused by or resulting from any Covered Cause of Loss.

\*\*\*

   **5. Additional Coverages**

\*\*\*

    **f. Business Income**
      (1) Business Income
        (a) We will pay for the actual loss of Business Income you sustain due to the
          necessary suspension of your "operations" during the "period of restoration". The
          suspension must be caused by direct physical loss of or damage to property at the
          described premises. The loss or damage must be caused by or result from a Covered
          Cause of Loss. With respect to loss of or damage to personal property in the open or
          personal property in a vehicle, the described premises include the area within 100
          feet of such premises.

\*\*\*

    **i. Civil Authority**
    When a Covered Cause of Loss causes damage to property other than property at the described
    premises, we will pay for the actual loss of Business Income you sustain and necessary Extra
    Expense caused by action of civil authority that prohibits access to the described premises,
    provided that both of the following apply:

      (1) Access to the area immediately surrounding the damaged property is prohibited by
        civil authority as a result of the damage, and the described premises are within that area but
        are not more than one mile from the damaged property; and
      (2) The action of civil authority is taken in response to dangerous physical conditions
        resulting from the damage or continuation of the Covered Cause of Loss that caused the
        damage, or the action is taken to enable a civil authority to have unimpeded access to the
        damaged property.

    Civil Authority Coverage for Business Income will begin 72 hours after the time of the first
    action of civil authority that prohibits access to the described premises and will apply for a
    period of up to four consecutive weeks from the date on which such coverage began.

MID-L-004490-20   07/07/2020 1:10:16 PM  Pg 139 of 142 Trans ID: LCV20201176984
Case 3:20-cv-12584-FLW-TJB   Document 11   Filed 12/08/20   Page 365 of 376 PageID: 565

Page 3

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:
**(1)** Four consecutive weeks after the date of that action; or
**(2)** When your Civil Authority Coverage for Business Income ends;
whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I - Property

\*\*\*

**B. Exclusions**
  **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\*\*\*

   **j. Virus Or Bacteria**
      **(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.
      **(2)** However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.**
      **(3)** With respect to any loss or damage subject to the exclusion in Paragraph **(1)**, such exclusion supersedes any exclusion relating to "pollutants".

\*\*\*

  **2.** We will not pay for loss or damage caused by or resulting from any of the following:
   **b. Consequential Losses**
      Delay, loss of use or loss of market.

\*\*\*

   **j. Pollution**
      We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

\*\*\*

  **3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs a. through c. But if an excluded cause of loss that is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\*\*\*

   **b. Acts Or Decisions**
      Acts or decisions, including the failure to act or decide, of any person, group organization or governmental body.

Page 4

\*\*\*
## H. Property Definitions

\*\*\*
**8.** "Operations" means your business activities occurring at the described premises.

**9.** "Period of restoration":
   **a.** Means the period of time that:
      **(1)** Begins:
         **(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
         **(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage; caused by or resulting from any Covered Cause of Loss at the described premises; and
      **(2)** Ends on the earlier of:
         **(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
         **(b)** The date when business is resumed at a new permanent location.

\*\*\*
**10.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

\*\*\*

## APPLICATION OF POLICY

In an effort to alert you to the basis of the denial of coverage, we list below the grounds under which all aspects of the claim are not covered under the policy.  It is our intent to incorporate by reference all of the terms of the policy through this denial of coverage letter.  Based upon the information available to date, the grounds for the denial of coverage under the policy, or under applicable law, with respect to the claim, include, but are not limited to, the following:

The policy provides Business Income coverage when there is a suspension of your operations at the described premises and results from a covered cause of loss. The Civil Authority Additional Coverage is only applicable when access to the described premises is prohibited when there is direct physical damage to other property, not on the described premises, from a covered cause of loss. The closing of the Athletic Apparel store was not due to physical loss or damage.  The decision to suspend operations was to limit the spread of Coronavirus (COVID-19).  The policy specifically excludes losses caused by or resulting from a virus and from contamination.

Based on the above we find no coverage under the terms and conditions of your policy for the costs claimed in connection with your asserted claim and therefore deny your claim.  In view of the absence of coverage, we make no comment relative to the amount of loss or damage but include those issues within the rights reserved.

If you have any questions about the content of this letter or the terms and provisions of your policy of insurance, please do not hesitate to call me.

Page 5

The foregoing is not intended to waive any defenses which are now, or which may hereafter become available to us. The foregoing does not constitute a waiver of any term, condition, or exclusion of the insurance policy or any rights and defenses under the policy, and we hereby expressly reserve all of our rights and defenses thereunder.

It is also our duty to advise you that this letter concludes the handling of your claim. As such, your attention is drawn to your Businessowners Coverage Form BP 00 03 (7/13) and contains the following provision;

***

**E. Property Loss Conditions**

***

**4. Legal Action Against Us**

No one may bring a legal action against us under this coverage part unless:

    **a.** There has been full compliance with all of the terms of this Coverage Part; and
    **b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

***

We would like to notify you of the Internal Appeals Process (IAP) that can be utilized if there is a dispute involving liability, coverage and / or the amount of your claim. To initiate an appeal, you must submit a letter outlining the facts relevant to your claim and your position regarding liability, coverage and / or damages. The letter should be addressed as follows:

Presidential Service Team
Liberty Mutual Group
175 Berkley Street
Mailstop J021
Boston, MA 02116

A committee of company employees who are at a supervisory level or higher will review the appeal. The review will be completed within ten (10) business days of receipt of your letter and written notice will be sent within three business days of the decision. The IAP does not waive or alter any of the terms or conditions of our policy, nor does it extend any statutes of limitation or suit limitation provisions.

If after seeking review by the New Jersey Internal Appeal Panel for the Company, you may seek further review of this decision. Please contact the New Jersey State Insurance Claims Ombudsman at the following address:

Department of Banking and Insurance
Office of Insurance Claims Ombudsman
PO Box 472
Trenton, NJ 08625-0427
Phone: 800-446-7467
Fax: 609-292-2431
E-mail: ombudsman@dobi.state.nj.us

Page 6

If there is anything inaccurate in this letter, please let us know immediately.  If you have any questions, please contact me at 1-844-499-1898 Ext.6304.

Sincerely,

*Michael Stanford*

Michael Stanford
Property Adjuster

Cc:    THE SCHENCK AGENCY INC
        PO Box 351,
        Metuchen, NJ 08840

# Civil Case Information Statement

**Case Details: MIDDLESEX | Civil Part Docket# L-004490-20**

**Case Caption:** METUCHEN CENTER, INC . VS LIBERTY
MUTUAL INSUR A

**Case Initiation Date:** 07/07/2020

**Attorney Name:** MICHAEL JAMES DEEM

**Firm Name:** R. C. SHEA & ASSOCIATES

**Address:** 244 MAIN STREET PO BOX 2627
TOMS RIVER NJ 08754

**Phone:** 7325051212

**Name of Party:** PLAINTIFF : Metuchen Center, Inc.

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** OTHER INSURANCE CLAIM (INCLUDING
DECLARATORY JUDGMENT ACTIONS)

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Metuchen Center, Inc.?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

07/07/2020                                                                              /s/ MICHAEL JAMES DEEM
Dated                                                                                      Signed

# EXHIBIT "E"


**Liberty Mutual**
INSURANCE

Liberty Mutual Insurance
Business Lines Property Claims
PO Box 515097
Los Angeles, CA 90051-5097
1-800-499-1898 EXT 6304
Michael.Stanford02@LibertyMutual.com

RECEIVED

APR 16 2020

SCHENCK AGENCY

April 2, 2020

Metuchen Center Inc.
Attention: Al Douglas Jr.
10-12 Embroidery St
Sayreville, NJ 08872-1809

Re:      Insured:                    Metuchen Center Inc.
         Loss Location(s):           10-12 Embroidery St
                                     Sayreville, NJ 08872-1809
         Date of Loss:               03/31/2020
         Policy Number:              BZW588998092
         Policy Effective Dates:     10/01/2019 – 10/01/2020
         Claim Number:               23799145
         Underwriting Co.:           West American Insurance Company

Dear Mr. Douglas,

This letter is to inform you that we have conducted an investigation of your claim for the reported loss of income. We have completed our review of the information provided by you or on your behalf. The following is a summary of our findings and position on coverage for the claim asserted.

The insurance policy issued to Metuchen Center Inc provides coverage subject to the policy terms and conditions. Based on our investigation and review of the policy, there is no coverage available for your loss as outlined below.

**THE CLAIM**

Our first notice of loss was on or about 03/31/2020. It was reported your business suffered an income loss due to restrictions from COVID-19.

Our investigation of your claim revealed the following relevant information:

We have determined that your Athletic apparel business was fully shutdown and has suffered loss of income due to government recommendations or restrictions on the travel of people as a preventative measure to slow the spread of COVID-19. We confirmed no direct physical loss or damage to your personal property or the building(s) or to neighboring properties.

**THE POLICY**

With regard to your Policy, we refer you to the following relevant provisions contained in the BUSINESSOWNERS COVERAGE FORM BP 00 03 (7/13) which states:

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations.

The words "we", "us" and "our" refer to the company providing this insurance.

\*\*\*

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

\*\*\*

#### 5. Additional Coverages

\*\*\*

##### f. Business Income

(1) Business Income

(a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

\*\*\*

##### i. Civil Authority

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:
**(1)** Four consecutive weeks after the date of that action; or
**(2)** When your Civil Authority Coverage for Business Income ends;
whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I - Property

**\*\*\***

**B. Exclusions**
  **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**\*\*\***

  **j. Virus Or Bacteria**
    **(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.
    **(2)** However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.**
    **(3)** With respect to any loss or damage subject to the exclusion in Paragraph **(1)**, such exclusion supersedes any exclusion relating to "pollutants".

**\*\*\***

  **2.** We will not pay for loss or damage caused by or resulting from any of the following:
    **b. Consequential Losses**
      Delay, loss of use or loss of market.

**\*\*\***

  **j. Pollution**
    We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss".  But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**\*\*\***

  **3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs a. through c. But if an excluded cause of loss that is listed in Paragraphs a.  through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**\*\*\***

  **b. Acts Or Decisions**
    Acts or decisions, including the failure to act or decide, of any person, group organization or governmental body.

Page 4

\*\*\*
**H. Property Definitions**

\*\*\*
    **8.** "Operations" means your business activities occurring at the described premises.

    **9.** "Period of restoration":
        **a.** Means the period of time that:
            **(1)** Begins:
                **(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
                **(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage; caused by or resulting from any Covered Cause of Loss at the described premises; and
            **(2)** Ends on the earlier of:
                **(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
                **(b)** The date when business is resumed at a new permanent location.

\*\*\*
    **10.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

\*\*\*

**APPLICATION OF POLICY**

In an effort to alert you to the basis of the denial of coverage, we list below the grounds under which all aspects of the claim are not covered under the policy.  It is our intent to incorporate by reference all of the terms of the policy through this denial of coverage letter.  Based upon the information available to date, the grounds for the denial of coverage under the policy, or under applicable law, with respect to the claim, include, but are not limited to, the following:

The policy provides Business Income coverage when there is a suspension of your operations at the described premises and results from a covered cause of loss. The Civil Authority Additional Coverage is only applicable when access to the described premises is prohibited when there is direct physical damage to other property, not on the described premises, from a covered cause of loss. The closing of the Athletic Apparel store was not due to physical loss or damage.  The decision to suspend operations was to limit the spread of Coronavirus (COVID-19).  The policy specifically excludes losses caused by or resulting from a virus and from contamination.

Based on the above we find no coverage under the terms and conditions of your policy for the costs claimed in connection with your asserted claim and therefore deny your claim.  In view of the absence of coverage, we make no comment relative to the amount of loss or damage but include those issues within the rights reserved.

If you have any questions about the content of this letter or the terms and provisions of your policy of insurance, please do not hesitate to call me.

Page 5

The foregoing is not intended to waive any defenses which are now, or which may hereafter become available to us. The foregoing does not constitute a waiver of any term, condition, or exclusion of the insurance policy or any rights and defenses under the policy, and we hereby expressly reserve all of our rights and defenses thereunder.

It is also our duty to advise you that this letter concludes the handling of your claim. As such, your attention is drawn to your Businessowners Coverage Form BP 00 03 (7/13) and contains the following provision;

\*\*\*

**E. Property Loss Conditions**

\*\*\*

**4. Legal Action Against Us**

No one may bring a legal action against us under this coverage part unless:

**a.** There has been full compliance with all of the terms of this Coverage Part; and
**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

\*\*\*

We would like to notify you of the Internal Appeals Process (IAP) that can be utilized if there is a dispute involving liability, coverage and / or the amount of your claim. To initiate an appeal, you must submit a letter outlining the facts relevant to your claim and your position regarding liability, coverage and / or damages. The letter should be addressed as follows:

Presidential Service Team
Liberty Mutual Group
175 Berkley Street
Mailstop J021
Boston, MA 02116

A committee of company employees who are at a supervisory level or higher will review the appeal. The review will be completed within ten (10) business days of receipt of your letter and written notice will be sent within three business days of the decision. The IAP does not waive or alter any of the terms or conditions of our policy, nor does it extend any statutes of limitation or suit limitation provisions.

If after seeking review by the New Jersey Internal Appeal Panel for the Company, you may seek further review of this decision. Please contact the New Jersey State Insurance Claims Ombudsman at the following address:

Department of Banking and Insurance
Office of Insurance Claims Ombudsman
PO Box 472
Trenton, NJ 08625-0427
Phone: 800-446-7467
Fax: 609-292-2431
E-mail: ombudsman@dobi.state.nj.us

Page 6

If there is anything inaccurate in this letter, please let us know immediately.  If you have any questions, please contact me at 1-844-499-1898 Ext.6304.

Sincerely,

*Michael Stanford*

Michael Stanford
Property Adjuster

Cc:    THE SCHENCK AGENCY INC
        PO Box 351,
        Metuchen, NJ 08840