***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| METUCHEN CENTER, INC., | : |
| Plaintiff, | : Civil Action No. 20-12584 (FLW) (TJB) |
| v. | : |
| | : **OPINION** |
| LIBERTY MUTUAL INSURANCE COMPANY, WEST AMERICAN INSURANCE COMPANY, XYZ COMPANY 1-100, | : |
| Defendants. | : |

**WOLFSON, Chief Judge**:

Plaintiff Metuchen Center, Inc. ("Plaintiff") initially filed this insurance coverage action in the Superior Court of New Jersey, Law Division, Middlesex County, seeking coverage for business losses sustained as a result of the 2019 novel coronavirus ("COVID-19") pandemic. On September 11, 2020, Defendants West American Insurance Company ("West American") and Liberty Mutual Insurance Company ("Liberty Mutual")[1] (together, "Defendants") removed the action to this Court based on the diversity of the parties. Before the Court is Plaintiff's Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 and West American's Cross-Motion for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth herein, Plaintiff's Motion is **DENIED,** and Defendant's Motion is **GRANTED**.

---

[1] Liberty Mutual was voluntarily dismissed from this action without prejudice by stipulation of the parties. (ECF No. 7.)

1

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a sporting goods and apparel company located in Sayreville, New Jersey. (Compl. ¶ 8.) Plaintiff obtained from West American an "all risk" insurance policy for the period October 1, 2019 to October 1, 2020 (the "Policy"). (*See* Finazzo Cert., Ex. B ("Policy").) The Policy provides that West American "will pay for direct physical loss of or damage to Covered Property at the premises . . . by or resulting from any Covered Cause of Loss." (*Id.* at WAP000052.) The Policy includes additional coverage for "Business Income," and provides that "West American "will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration," provided the suspension of Plaintiff's business operations is "caused by direct physical loss of or damage to property at the described premises." (*Id.* at WAP00058.) The Policy also provides for Civil Authority coverage and states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damage property.

(*Id.* at WAP000061.)

The Policy includes numerous exclusions and provides:

> [West American] will not pay for loss or damage caused directly or

2

> indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

(*Id.* at WAP000070.) Relevant here, the Policy includes an exclusion for loss or damage caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion"). (*Id.* at WAP000073.)

On March 9, 2020, New Jersey Governor Philip D. Murphy issued Executive Order 103, declaring a State of Emergency and a Public Health Emergency in response to the COVID-19 pandemic. (Compl. ¶ 9.) Thereafter, on March 21, 2020, Governor Murphy executed Executive Order 107, which ordered non-essential businesses in the State of New Jersey to close to the public. (*Id.* ¶ 10.) Plaintiff, a sporting goods apparel company, was deemed a non-essential business that was ordered to close under Executive Order 107. (*Id.*) On March 31, 2020, Plaintiff submitted a business interruption claim to West American. (*Id.* ¶ 21.) On April 2, 2020, West American denied Plaintiff's claim because it determined that there was no physical loss of, or damage to, the insured property and the Virus Exclusion barred coverage for the claim. (*Id.* ¶ 23.)

On July 7, 2020, Plaintiff filed the instant Complaint in the Superior Court of New Jersey, Law Division, Middlesex County, seeking a declaratory judgment that Plaintiff's claim is covered under the Policy and asserting claims of breach of contract and bad faith. West American removed the action to this Court on September 11, 2020 based on the diversity of the parties. These motions followed.

## II.   LEGAL STANDARDS

### a.   Rule 56 Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable [factfinder] could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331.  On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*  Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999).  In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).  There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

  **b.  Rule 12(c) Standard**

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The applicable standard on a motion made pursuant to Rule 12(c) is similar to that applied on a motion to dismiss pursuant to Rule 12(b)(6). *See Spruill v. Gillis*, 372 F.3d 218, 223 n. 2 (3d Cir.2004); *Newton v. Greenwich Twp.*, No. 12-238, 2012 WL 3715947, at *2 (D.N.J. Aug. 27, 2012) ("The difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing and the Court applies the same standard to a Rule 12(c) motion as it would to a Rule 12(b) (6) motion.") (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)).  Thus, when reviewing a motion made pursuant to Rule 12(c), a court "view[s] the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most

5

favorable to the plaintiff." *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004) (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief") (citation omitted).  Furthermore, a motion for judgment on the pleadings "should not be granted 'unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.'" *Mele*, 359 F.3d at 253 (quoting *Leamer*, 288 F.3d at 535)).

### c. Interpretation of Insurance Contracts Under New Jersey Law

Under New Jersey law, the determination of "the proper coverage of an insurance contract is a question of law."[2] *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Atl. Mut. Ins. Co. v. Palisades Safety & Ins. Ass'n*, 364 N.J. Super. 599, 604 (App. Div. 2003)). "An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010).  However, because insurance policies are contracts of adhesion, they "are subject to special rules of interpretation," *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 537 (1990), and "courts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992); *see Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 594 (2001) ("We give special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies.").  In a dispute over

---

[2]     The parties do not dispute that New Jersey law applies to this matter.

the interpretation of an insurance contract, the "burden is on the insured to bring the claim within the basic terms of the policy." *Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 292 N.J. Super. 365, 377 (App. Div. 1996). However, where, as here, "the insurance carrier claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing that claim." *Rosario ex rel. Rosario v. Haywood*, 351 N.J. Super 521, 530 (App. Div. 2002).

In New Jersey, the court's function in construing policies of insurance, as with any other contract, "is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 N.J. Super. 409, 416 (App. Div. 1994). In most cases, the best indication of the parties' reasonable expectations lies in the language of the insurance policy itself, *Moessner*, 121 F.3d at 903, and thus, ordinarily, "the words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias*, 168 N.J. at 595. In that regard, "[w]here the express language of the policy is clear and unambiguous, 'the court is bound to enforce the policy as it is written.'" *Rosario*, 351 N.J. Super. at 530 (quoting *Royal Ins.*, 271 N.J. Super. at 416); *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008) ("If the language is clear, that is the end of the inquiry."). This governing principle precludes courts from writing "'for the insured a better policy of insurance than the one purchased.'" *Gibson v. Callaghan*, 158 N.J. 662, 670 (1999) (citation omitted).

Additionally, in the context of an insurance policy, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt*, 202 N.J. at 441 (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997)). Because the burden is on the insurer to bring the case within an exclusion, *Chunmuang*, 151 N.J. at 95, "exclusions are ordinarily strictly construed against the insurer, and

if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." *Flomerfelt*, 202 N.J. at 442 (internal citation omitted). Nonetheless, "[i]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.* (quoting *Longobardi*, 121 N.J. at 537). In that regard, courts cannot "disregard the 'clear import and intent' of a policy exclusion," *Am. Motorists Ins. Co. v. L–C–A Sales Co.*, 155 N.J. 29, 41 (1998) (citation omitted), and "[f]ar–fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage." *Essex Ins. Co. v. New Jersey Pan–African Chamber of Commerce & Indus., Inc.*, No. A–1237–14T3, 2017 WL 4051726, at *3 (N.J. Super. Ct. App. Div. Sept. 14, 2017). "Rather, courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous." *Flomerfelt*, 202 N.J. at 442 (quoting *Stafford v. T.H.E. Ins. Co.*, 309 N.J. Super. 97, 105 (App. Div. 1998)).

## III. DISCUSSION

Plaintiff contends that it is entitled to summary judgment because (1) the Virus Exclusion is ambiguous and does not apply to its claim, and (2) the closure of Plaintiff's business by the Executive Orders constituted a "direct physical loss of or damage to its covered property." West American, however, maintains that Plaintiff is not entitled to coverage under the Policy for losses related to the COVID-19 virus and the Government Orders, because Plaintiff's claim is barred by the Virus Exclusion and that no direct physical loss or damage occurred to any property covered under the Policy

Because the Virus Exclusion applies broadly to all losses under the Policy, I first turn to whether the Virus Exclusion is ambiguous and, further, whether it applies to bar coverage. I begin with the language of the Virus Exclusion, which provides:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> . . .
>
> **j. Virus or Bacteria**
>
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Policy, at WAP000070, WAP000073.)

A genuine ambiguity exists in an insurance contract "where the phrasing of the policy is so confusing that the average policyholder cannot make out of the boundaries of coverage." *Lee v. Gen. Acc. Ins. Co.*, 337 N.J. Super. 509, 513 (App. Div. 2001); *see also Zacarias*, 168 N.J. at 601 ("[I]n enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding . . . if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires a strenuous study to comprehend.") (citations omitted)). Where a genuine ambiguity exists, "courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Id*. 168 N.J. at 595; *see* also *Gibson*, 158 N.J. at 671 ("[I]nsurance polices must be construed to comport with the reasonable expectations of the insured"). However, "where the language of the policy is clear and unambiguous, 'the court is bound to enforce the policy as written.'" *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 78 (D.N.J. 2020) (quoting *Royal Ins.*, 271 N.J. Super. at 416). "[A]mbiguities will not be forced into an insurance policy nor will the words of an insurance policy be artfully construed to include a type of coverage outside the scope and nature of the policy in question." *Id*.

9

Here, I do not find the Virus Exclusion to be genuinely ambiguous. The Virus Exclusion plainly provides that West American will not pay for losses caused directly or indirectly by a virus. Courts in the State of New Jersey and this District, including this Court, have repeatedly found similar virus exclusions to be unambiguous. *See Beach Glo Tanning Studio Inc. v. Scottsdale Ins. Co.*, No. 20-13901, 2021 WL 2206077, at *6–7 (D.N.J. May 28, 2021) (holding that similar virus exclusion "is not ambiguous"); *Stern & Eisenberg, P.C. v. Sentinel Ins. Co., Ltd.*, No. 20-11277, 2021 WL 1422860, at *5 (D.N.J. Apr. 14, 2021); *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, No. 20-8393, 2021 WL 486917, at *5 (D.N.J. Feb. 10, 2021); *Eye Care Ctr. of N.J., PA v. Twin City Fire Ins. Co.*, ___ F. Supp. 3d ___, 2021 WL 457890, at *3 (D.N.J. Feb. 8, 2021); *N&S Restaurant LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 80–81 (D.N.J. 2020); *Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, No. L-2629-20, 2020 WL 7422374, at *9 (N.J. Super. Ct. Law Div. Nov. 5, 2020) ("Because the court finds the policy language, the virus exclusion, to be clear and unambiguous, any expectation of coverage by the insureds is not reasonable.").

Nevertheless, Plaintiff argues that the Virus Exclusion is ambiguous because it refers to "loss or damage," rather than to "direct physical loss," which is how the Policy defines "a "Covered Cause of Loss."[3] (Pl.'s Br., at 5–6.) In that connection, Plaintiff maintains that because the Policy does not define "loss" or "damage," the exclusion is ambiguous. Plaintiff's position is without merit. The Policy's use of the terms "loss" or "damage" plainly indicates that the Virus Exclusion is intended to apply broadly to *all* potential losses or damage that Plaintiff may incur. Indeed, Plaintiff provides no explanation as to why the Court should look to the definition of "Covered

---

[3]  In full, the Policy defines "Covered Causes of Loss" as "[d]irect physical loss unless the loss is excluded or limited under Section I – Property." (Policy, at WAP000053.)

10

Cause of Loss" to define the general terms "loss" or "damage." Rather, "in the absence of a specific definition in an insurance policy, the words must be interpreted in accordance with their ordinary, plain and usual meaning." *Boddy v. Cigna Prop. & Cas. Cos.*, 334 N.J. Super. 823, 826 (App. Div. 2000) (quoting *Daus v. Marcle*, 270 N.J. Super. 241, 251 (App. Div. 1994)). In the insurance context, the plain meaning of loss "is the 'amount of financial detriment caused by . . . an insured property's damage.'" *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 503 F. Supp. 3d 251, 256 (E.D. Pa. 2020) (alteration in original) (quoting *Loss*, *Black's Law Dictionary* (10th ed. 2009)). "Damage" is "[l]oss or injury to person or property." *Damage*, *Black's Law Dictionary* (11th ed. 2019). Reading the Policy as a whole and considering the plain meaning of the terms "loss" and "damage," I do not find the Virus Exclusion ambiguous. It is clear from the plain language of the Policy that the use of the general terms "loss" and "damage" means that the Virus Exclusion applies broadly to all types of coverage provided for under the Policy, including Covered Causes of Loss.

Plaintiff additionally argues that the Virus Exclusion is ambiguous because it "does not define the scope of the exclusion" as it fails to set forth "where" the virus must be for the exclusion to apply. (Pl.'s Br., at 11.) In that regard, Plaintiffs explains that the phrasing of the Virus Exclusion would lead a reasonable person to believe that (1) "the virus must reach the insured premises in order for the exclusion to apply" and (2) "the virus exclusion does not apply to an attempt to control or prevent the spread of the virus." (*Id.*) Plaintiff's reading of the Virus Exclusion, however, finds no support in the plain language of the Policy. While Plaintiff points to other sections of the Policy that, it contends, more specifically define their scope;[4] the scope of

---

[4] For example, Plaintiff highlights the Policy's Government Action exclusion, which excludes coverage for any loss caused by "[s]eizure or destruction of property by order of governmental authority," except where the loss or damage is caused by "acts of destruction ordered

those provisions, however, has no bearing on the breadth of the Virus Exclusion, which plainly precludes coverage for any "loss or damage caused *directly or indirectly* by" a virus. That, in fact, sets the scope of the Virus Exclusion. Indeed, the provision does not suggest that the virus must be present at the insured premises for the exclusion to apply or that it does not apply when the loss stemmed from an attempt to prevent the spread of the virus. To accept such a reading of the provision would require the Court to add additional language to the Virus Exclusion that does not appear in the Policy.

      Next, Plaintiff argues that the Virus Exclusion does not apply because the COVID-19 virus was not the cause of its losses. Instead, Plaintiff maintains that "the Closure Orders, State of Emergency, Public Health Emergency, and constructive eviction" caused its losses. (Pl.'s Br., at 4.) I find this argument unpersuasive. The prefatory language of the Policy's exclusions includes an anti-concurrent clause that states "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (Policy, at WAP000070.) This clause applies to all exclusions under the Policy, including the Virus Exclusion. (*See id.*) Anti-concurrent clauses are "exclusionary language designed to avoid the 'efficient proximate cause doctrine.'" *N&S Restaurant LLC*, 499 F. Supp. 3d at 80 (internal quotation marks omitted); *see also Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, No. 20-8676, 2021 WL 1040490, at *5 (D.N.J. Mar. 18, 2021). Such clauses "exclude coverage when a prescribed excluded peril, alongside a covered peril, either simultaneously or sequentially, causes damage to the insured" and are enforceable under New Jersey law. *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 20-08595, 2021 WL 1138141, at *6 (D.N.J. Mar. 25, 2021) (quoting *N.J. Transit*

---

by governmental authority [that are] taken at the time of a fire to prevent its spread." (Pl.'s Br., at 16–17.)

*Corp. v. Certain Underwriters at Lloyd's London*, 461 N.J. Super. 440, 461 (App. Div. 2019) (internal quotation marks omitted)); *see also N&S Restaurant*, 499 F. Supp. 3d at 80 (citing *Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp.2d 349, 353 (D.N.J. 1999)); *Lam Investment Research, LLC v. Pub. Serv. Mutual Ins. Co.*, No. 12-5576, 2016 WL 6634931, at *5 (D.N.J. Apr. 1, 2016). The inclusion of an anti-concurrent clause in the Virus Exclusion means that the Policy "does not provide coverage for losses caused directly or indirectly by a virus, regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *N&S Restaurant, LLC*, 499 F. Supp. 3d at 80. Here, that means that because the COVID-19 virus led Governor Murphy to issue the Executive Orders that required the closure of Plaintiff's business, the COVID-19 virus contributed to Plaintiff's loss. As such, the Policy does not cover any claim for losses caused by the COVID-19 virus and the ensuing Executive Orders.

Plaintiff attempts to evade the anti-concurrent clause by arguing that the COVID-19 virus did not contribute to its loss. More specifically, Plaintiff contends that the following sequence of events caused its losses: (1) Governor Murphy issued the Executive Orders as a preventative measure to slow the spread of COVID-19, and (2) "[t]he closure orders resulted in a constructive eviction." (*Id.* at 8.) This argument, however, misses the mark. Despite Plaintiff's assertions to the contrary, there can be no doubt that the Executive Orders, which mandated the closure of Plaintiff's business, were issued in response to the COVID-19 virus, such that the Virus Exclusion applies. Indeed, as one New Jersey court has observed:

> that a virus, specifically COVID-19, was the cause of the governmental action. Since the virus is alleged to be the cause of the governmental action, and the governmental action is asserted to be the cause of the loss, plaintiff cannot avoid the clear and unmistakable conclusion that the coronavirus was the cause of the alleged damage or loss.

*Mac Prop. Grp. LLC*, 2020 WL 7422374, at *8; *see also Mattdogg, Inc. v. Phil. Indem. Ins. Co.*,

13

No. L-820-20, 2020 WL 7702634, at *4 (N.J. Super. Ct. Law Div. Nov. 17, 2020) ("The Governor issued his executive orders affecting Plaintiff's business as a direct result of COVID-19 . . . and any losses incurred therefrom are squarely within the exclusion."). Courts throughout this District, and the Country at large, have echoed the finding that "COVID-19 is the predominant cause of loss, therefore concluding the virus exclusion foreclosed coverage." *Causeway*, 2021 WL 486917, at *6; *see also Beach Glo Tanning Studio*, 2021 WL 2206077, at *7–8; *Carpe Diem Spa, Inc. v. Travelers Casualty Ins. Co. of Am.*, No. 20-14860, 2021 WL 1153171, at *3 (D.N.J. Mar. 26, 2021); *Garmany of Red Bank, Inc.*, 2021 WL 1040490, at *6 ("As such, it is clear that the 'but for' cause of Plaintiffs' losses was COVID-19—the Executive Orders and the virus are so inextricably connected that it is undeniable that the Orders were issued because of the virus."); *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, 510 F. Supp. 3d 1116, 1125 (M.D. Fl. 2021) ("The orders, as they so state, were enacted to curtail the spread of the coronavirus and would not have been issued but for the pandemic. Because the orders were the direct result of, caused by, and arose from the prime excluded peril, the exclusion applies to deny coverage."). Plaintiff makes no attempt to distinguish these authorities.

For these reasons, I find that the Virus Exclusion is unambiguous and plainly applies to bar coverage here. Accordingly, Plaintiff is not entitled to summary judgment. Rather, I find that West American is entitled to judgment on the pleadings.[5]

---

[5] Neither party includes in its briefing any argument with respect to Plaintiff's bad faith claim. Nevertheless, it is well-established that under New Jersey law, "a claimant must be able to establish a right to summary judgment, as a matter of law, for coverage before asserting a bad faith claim against an insurer for their refusal to pay a claim." *Mitra v. Principal Ins. Co.*, No. 15-1259, 2015 WL 4139015, at *3 (D.N.J. July 7, 2015) (citing *Polizzi Meats v. Aetna Life & Cas. Co.*, 931 F. Supp. 328, 339 (D.N.J. 1996). In other words, where the plaintiff cannot "establish a right to summary judgment, the bad faith claim fails." *Id.* Accordingly, because Plaintiff has not established a right to summary judgment on its coverage claim, its bad faith claim must also be dismissed.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED**. An appropriate Order accompanies this Opinion.

DATED: July 29, 2021                                         /s/ Freda L. Wolfson
                                                             Freda L. Wolfson
                                                             U.S. Chief District Judge